UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JERICHO GROUP, LTD.,                             :
                                                 :
                    Plaintiff,                   :
                                                 :
                                                 :
          - against -                            :       No. 07-CV-1792 (RCC) (DCF)
                                                 :
                                                 :       ECF CASE
MIDTOWN DEVELOPMENT, L.P., EDWARD                 :
   IMPERATORE and MAURICE STONE,                 :
                                                 :
                                                 :
                    Defendants.                  :
----------------------------------------------------------------X


DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND

Fredrick E. Sherman (FS 5442)
Todd R. Geremia (TG 4454)
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939

Alfred D. Lerner (AL 5927)
George Berger (GB 8924)
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York  10103-0084
Telephone:  (212) 977-9700

Attorneys for Defendants,
Midtown Development, L.P., Edward
Imperatore, and Maurice Stone

**TABLE OF CONTENTS**

<b>Page</b>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 1

ARGUMENT ................................................................................................................. 5

    I.     THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION ........ 5

          A.     This Is an Action By a New York Corporation Against a
                 Partnership Comprised of Citizens From States Other Than New
                 York ............................................................................................................. 5

                1.     The Individual Defendants Are Citizens of New Jersey ................ 6

                2.     Midtown Is a Partnership Comprised of Members All of
                        Whom Are Citizens of States Other Than New York .................... 6

                       a.     Midtown's Only Limited Partner Is a Citizen of
                            Pennsylvania ..................................................................... 7

                       b.     Midtown's General Partner Is Comprised of Two
                            Partnerships That Are Citizens of States Other Than
                            New York ........................................................................... 7

                            i.     Hadrian Is a Citizen of New Jersey and
                                   Pennsylvania ........................................................ 7

                          ii.     WR West Side Is a Citizen of Several States,
                                   But Not New York ................................................. 8

          B.     The Court Should Permit Defendants to Amend the Notice of
                   Removal to Supplement Their Allegations of Diversity Jurisdiction ...... 13

    II.     THERE IS NO BASIS FOR THE COURT TO ABSTAIN FROM
          EXERCISING ITS DIVERSITY JURISDICTION HERE ................................. 15

          A.     A Court May Abstain Only in Truly "Exceptional Circumstances,"
                   Not Present Here ...................................................................................... 15

          B.     Colorado River Abstention Does Not Apply Here Because There Is
                   No Complaint Pending in the State Court ................................................. 17

          C.     In Any Event, None of the Factors Weigh in Favor of Abstention
                   Here .......................................................................................................... 18

                1.     No Court Has Asserted Jurisdiction Over Midtown's
                        Property ............................................................................... 19

                  2.     This Court Is As Convenient a Forum as New York County
                        Supreme Court .................................................................... 20

                  3.     There Is No Risk of Piecemeal Litigation Because Jericho's
                        Complaint in the State Court Action Has Been Dismissed .......... 20

                  4.     The "Order in Which Jurisdiction Is Obtained" Is Irrelevant
                        Because Jericho's Complaint in the State Court Action Has
                        Been Dismissed .................................................................. 22

**TABLE OF CONTENTS**
**(continued)**

**Page**

5.   The Issues of State Law Here Are Not Novel or Complex.......... 23

6.   Midtown's Rights Will Be Protected in This Court..................... 24

CONCLUSION.................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page**

## CASES

*Abercrombie v. Andrew Coll.*,
    438 F. Supp. 2d 243 (S.D.N.Y. 2006)....................................................19, 20, 21

*Allstate Ins. Co. v. Longwell*,
    735 F. Supp. 1187 (S.D.N.Y. 1990)...............................................................18

*In re Am. Motor Club, Inc.*,
    109 B.R. 595 (E.D.N.Y. 1990) ......................................................................19

*Ankenbrandt v. Richards*,
    504 U.S. 689 (1992)................................................................................ 15-16

*In re Asbestos Litig.*,
    963 F. Supp. 247 (S.D.N.Y. 1997)...........................................................21, 24

*Bazak Int'l Corp. v. William Wedeen & Co.*,
    496 F. Supp. 847 (S.D.N.Y. 1980)..................................................................8

*Burford v. Sun Oil Co.*,
    319 U.S. 315 (1943)......................................................................................16

*CBS Inc. v. Snyder*,
    762 F. Supp. 71 (S.D.N.Y. 1991)............................................................14, 15

*Carden v. Arkoma Assocs.*,
    494 U.S. 185 (1990)............................................................................6, 11, 12

*Carruthers v. Flaum*,
    388 F. Supp. 2d 360 (S.D.N.Y. 2005).............................................................23

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)................................................................................ passim

*County of Allegheny v. Frank Mashuda Co.*,
    360 U.S. 185 (1959)......................................................................................16

*Cox v. Livingston*,
    407 F.2d 392 (2d Cir. 1969).....................................................................14, 15

*Dittmer v. County of Suffolk*,
    146 F.3d 113 (2d Cir. 1998)...........................................................................17

*Dyotherm Corp. v. Turbo Mach. Co.*,
    48 F.R.D. 380 (E.D. Pa. 1969).........................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
    160 F.3d 925 (2d Cir. 1998)............................................................................................9

*Estee Lauder Cos. v. Batra*,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006)..........................................................................24

*Grow Group, Inc. v. Jandernoa*,
    No. 94 Civ. 5679, 1995 WL 60025 (S.D.N.Y. Feb. 10, 1995) ....................................14, 15

*Grupo Dataflux v. Atlas Global Group*,
    541 U.S. 567, 582 (2004).............................................................................................12

*Handelsman v. Bedford Village Assocs. Ltd. P'ship*,
    213 F.3d 48 (2d Cir. 2000)....................................................................................6, 8, 12

*Jericho Group, Ltd. v. Midtown Dev., L.P.*,
    820 N.Y.S. 2d 241 (1st Dep't 2006) ................................................1, 2, 3, 5, 17, 21, 23

*Kirkbridge v. Cont'l Cas. Co.*,
    933 F.2d 729 (9th Cir. 1991) ........................................................................................17

*Law Enforcement Ins. Co., Ltd. v. Corcoran*,
    807 F.2d 38 (2d Cir. 1986)......................................................................................24, 25

*Marco Island Ltd. P'ship v. Wallace Assocs. Consulting Group, Inc.*,
    No. 92C 865, 1992 WL 59111 (N.D. Ill. Mar. 13, 1992) .................................................14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    341 F. Supp. 2d 351 (S.D.N.Y. 2004)...........................................................................18

*Minot v. Eckardt-Minot*,
    13 F.3d 590 (2d Cir. 1994)......................................................................................15, 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)........................................................................................................19

*Prosperity Realty, Inc. v. Haco-Canon*,
    724 F. Supp. 254 (S.D.N.Y. 1989)...........................................................................23, 24

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
    160 F.3d 925 (2d Cir. 1998)............................................................................................9

*Strawbridge v. Curtiss*,
    7 U.S. (Cranch) 267 (1806).............................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page

*Stuart v. Adelphi Univ.*,
   No. 94 Civ. 4698, 1994 WL 455181 (S.D.N.Y. Aug. 19, 1994) ...............................14, 15

*Tucker v. First Md. Sav. & Loan, Inc.*,
   942 F.2d 1401 (9th Cir. 1991) .........................................................................18

*USX Corp. v. Adriatic Ins. Co.*,
   345 F.3d 190 (3d Cir. 2003)...........................................................................14

*United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden
   Square, Inc.*,
   30 F.3d 298 (2d Cir. 1994).........................................................................5-6

*United National Ins. Co. v. Waterfront N.Y. Realty Corp.*,
   907 F. Supp. 663 (S.D.N.Y. 1995)...........................................................11, 12

*Village of Westfield v. Welch's*,
   170 F.3d 116 (2d Cir. 1999)..................................................................18, 19, 20

*Wells Fargo Bank N.W., N.A. v. TACA Int'l Airlines, S.A.*,
   314 F. Supp. 2d 195 (S.D.N.Y. 2003) .............................................................9

*W.J. Nolan & Co. v. Midway Fed. Credit Union*,
   913 F. Supp. 806 (S.D.N.Y. 1996)...................................................................23

*Woodford v. Comty. Action Agency of Greene County, Inc.*,
   239 F.3d 517 (2d Cir. 2001)............................................................................22

**STATUTES**

28 U.S.C. § 1332(a) ....................................................................................1, 6, 15, 25

28 U.S.C. § 1332(c)(1).......................................................................................6, 7

28 U.S.C. § 1653.................................................................................................14

805 Ill. Comp. Stat. 210/101(6) ...........................................................................11

805 Ill. Comp. Stat. 210/301 ...............................................................................11

805 Ill. Comp. Stat. 215/1401 .............................................................................11

N.J. Stat. Ann. 14A:12-9(2) ..................................................................................8

N.J. Stat. Ann. 14A:12-1(a)(g)..............................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

N.Y. C.P.L.R. § 5513(a) ........................................................................................................17

N.Y. C.P.L.R. § 6501 ..........................................................................................................19

N.Y. C.P.L.R. § 6516(c) .......................................................................................................20

Defendants Midtown Development, L.P., Edward Imperatore, and Maurice Stone submit this memorandum of law in opposition to plaintiff Jericho Group, Ltd.'s motion to remand this action to the Supreme Court of the State of New York, New York County.

## INTRODUCTION

Jericho's remand motion should be denied. This action was properly removed from state court because the Court has subject matter jurisdiction over it pursuant to 28 U.S.C. § 1332(a), due to the parties' diverse citizenship. Jericho is a New York corporation with a principal place of business in New York. And, as shown in the declarations accompanying defendants' opposition to this motion, all of the individual defendants and constituent partners of Midtown are citizens of states other than New York. Jericho also contends that this Court should abdicate its "virtually unflagging obligation" to exercise its jurisdiction and remand this case under the *Colorado River* abstention doctrine, due to what Jericho contends is "a concurrent state court proceeding" where it is asserting the same claims as in this case. But all of the claims and allegations asserted by Jericho in that concurrent proceeding have already been *dismissed* by New York's Appellate Division, First Department. *See Jericho Group, Ltd. v. Midtown Dev., L.P.*, 820 N.Y.S. 2d 241 (1st Dep't 2006). There thus is no complaint pending in the state court, as the New York County Supreme Court itself has expressly acknowledged, and no basis for this Court to remand under the "exceptional," "narrow" and rarely invoked *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 818-19 (1976).

## BACKGROUND

Jericho acknowledges in its motion papers that this action seeks "essentially the same relief as in the Original Action, based on the same transaction." Docket No. 6, Affidavit of Herbert Rubin ("Rubin Aff.") ¶ 6. Both this case and Jericho's now-dismissed "Original Action"

claim that Midtown breached a contract to sell to Jericho two parcels of undeveloped real property in Manhattan. *See* Rubin Aff., Ex. A; Declaration of Todd R. Geremia ("Geremia Decl."), Ex. A at 37 ¶ 3. In June 2002, Jericho entered into an "AS IS" contract to purchase this property for $28 million, but then cancelled that contract at the end of a 75-day due diligence period and requested and promptly thereafter received the return of its $250,000 down payment. Geremia Decl., Ex. A at 79 ¶¶ 28, 29(a); *id.* at 80 ¶ 29(b), 112-16; *see also id.* at 47 ¶¶ 43-45. Two years later, after the value of Midtown's property had dramatically increased in value, Jericho brought this opportunistic lawsuit. Jericho claimed that Midtown breached the parties' contract and purportedly committed a "fraud" in connection with it by allegedly not giving Jericho certain documents and failing to make a laundry list of representations about the property, even though the contract expressly provided that Midtown was "ma[king] no representations [and was] unwilling to make any representations" about the property and Jericho similarly agreed that it would *not* rely on any representations by Midtown. *See* Geremia Decl., Ex. A at 53-54 ¶ 72; *id.* at 77 ¶ 25; *id.* at 88 ¶ 38.

Midtown moved to dismiss Jericho's complaint in the state court, on among other grounds that a party may not seek specific performance of a contract that it cancelled. *See* Geremia Decl., Ex. A at 34-35. The Supreme Court, per Justice Charles Ramos, denied Midtown's motion from the bench. *See* Rubin Aff., Ex. C. In a unanimous decision, the Appellate Division, First Department, reversed Justice Ramos's order, with costs to Midtown; dismissed each cause of action asserted in the complaint on multiple, independent grounds; and ordered the Clerk to enter a judgment of dismissal for Midtown, which was duly entered in September 2006. *See Jericho*, 820 N.Y.S. 2d at 243.

On Jericho's claims for specific performance or damages due to Midtown's alleged failure to provide certain documents to Jericho, the Appellate Division ruled, first, that the "assertions in this complaint, brought two years subsequent to the cancellation of the agreement, do not support Jericho's allegation that Midtown breached the contract." *Id*. at 246.  Second, the Court ruled that "[a]n additional ground for dismissal of the first and third causes of action is the settled rule that a party cannot seek specific performance of a cancelled real estate contract." *Id*. The First Department noted that, if Midtown had "willfully or deliberately breached its obligations," Jericho's "first two causes of action would not have been barred by its termination of the contract and recovery of its down payment." *Id*.  After noting this, however, the Court expressly held on a third alternative ground that Jericho's allegations of breach "are either contradicted by the documentary evidence submitted on the motion or premised on a misreading of Midtown's obligations" under the contract.  *Id*. (internal citation omitted).

The Appellate Division also ruled that Jericho could not assert a cause of action for fraud because "Jericho's allegations that Midtown intended to breach a contractual obligation do[] not support an action for fraud." *Id*. at 247.  Alternatively, the Court ruled that there "was no evidence of actionable fraud" and noted in that regard that "Jericho made requests for documents on the eve of the expiration [of the contractual due diligence] period which could have been made much earlier." *Id*.  Finally, the Court dismissed Jericho's claim for damages, on yet another alternative ground that the contract "limits Midtown's liability for breach to return of Jericho's down payment," as well as Jericho's claims that Midtown should be held in breach of a non-existent amendment to the contract to extend the 75-day due diligence period.  *Id*. at 246-47.

Jericho made a motion for reargument in the First Department, on the principal basis that so-called newly discovered evidence required the Court to "vacate and recall its Decision."

Geremia Decl., Ex. B ¶¶ 3, 8.  In its opposition, Midtown showed, among other things, that the "newly discovered evidence" on which Jericho's motion was based was *not* new, but was known to Jericho for *years* before it filed its complaint and actually in Jericho's possession for at least *eight months* before the Appellate Division issued its final order of dismissal.  Geremia Decl., Ex. C ¶¶ 18-26.  Moreover, Jericho's purportedly new evidence did not show that Midtown breached the contract or committed a fraud in connection with it.  *See id.*

Jericho responded by withdrawing its motion.  *See* Geremia Decl., Ex. D.  Jericho did this, it said, "[t]o avoid loss of time, and with due concern for prudent use of the Court's resources."  *Id.*  After withdrawing its motion, however, Jericho made all of the same arguments, on the basis of the same "newly discovered evidence," in a motion to vacate the judgment before Justice Ramos.  Geremia Decl., Ex. E.  Jericho made its motion to the Supreme Court even though Jericho's theory was that its purportedly newly discovered evidence would have led the *Appellate Division* to reach a different result on Midtown's appeal.  *See* Geremia Decl., Ex. B ¶ 8.  In an unusual decision, Justice Ramos vacated the judgment on the ground that Midtown purportedly committed a "fraud on the Court" by arguing to the Appellate Division that Midtown had complied with its obligations under the contract when, according to Justice Ramos, Jericho's post-judgment arguments and evidence showed that Midtown had not.  *See* Rubin Aff., Ex. E at 11-15.  The Supreme Court expressly acknowledged, however, that Jericho's evidence was not "newly discovered" and that, in fact, Jericho had notice of it for years before it filed its complaint.  Rubin Aff., Ex. E at 11.

Midtown promptly appealed from Justice Ramos's order vacating the judgment and perfected its appeal on March 19, 2007, for the First Department's June Term.  *See* Geremia Decl., ¶ 3 & Ex. F.  The First Department's decision on Midtown's appeal will control whether

this action may properly proceed any further or will be precluded.  There is, however, no longer any complaint pending in the state court action.  Indeed, the Supreme Court denied Jericho's request for leave to "amend" its already-dismissed complaint "because there is no complaint pending before this Court, having been dismissed by the Appellate Division."  Rubin Aff., Ex. E at 17.  Justice Ramos "welcome[d]" Jericho to attempt to overcome this significant impediment by "fil[ing] a new complaint in a new action."  *Id*.  Two days after Justice Ramos's order was entered, that is exactly what Jericho did, and it also promptly filed a request that Justice Ramos be assigned to the new action, which he was.  *See* Rubin Aff., Ex. A; Geremia Decl., Ex. G. Jericho's new action re-asserts *all* of the same claims that the Appellate Division has already dismissed and additionally seeks a declaratory judgment that Jericho did not cancel the contract (Rubin Aff., Ex. A ¶¶ 115-62), even though the Appellate Division has already ruled that "Jericho cancelled the contract and recovered its down payment."  *Jericho*, 820 N.Y.S.2d at 246. Within a week of when Jericho filed its new action, defendants removed it to this Court.  *See* Rubin Aff., Ex. G ¶ 2.  Jericho thereafter made this motion to remand the case back to the New York County Supreme Court and Justice Ramos.

## ARGUMENT

## I.    THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION

### A.    This Is an Action By a New York Corporation Against a Partnership Comprised of Citizens From States Other Than New York

Jericho first seeks to have defendants prove that this action was properly removed on the basis of the diversity of citizenship of plaintiff and defendants.  *See* Rubin Aff. ¶ 18 (stating that case should be remanded "[u]nless Midtown can show . . . that the Court ha[s] diversity jurisdiction").  In this opposition, defendants have proved that the parties were of diverse citizenship both when this action was filed and when it was removed.  *See United Food &*

*Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc*., 30 F.3d 298, 301 (2d Cir. 1994) (for a removed case, parties must be diverse when action is filed and when it is removed). Plaintiff's complaint and defendants' answer establish that Jericho is a New York corporation with its principal place of business in Brooklyn. Rubin Aff., Ex. A ¶ 1; Docket No. 3, Answer ¶ 1. Jericho is thus a citizen of New York. *See* 28 U.S.C. § 1332(c)(1). And, as the declarations accompanying this opposition show, defendants are two individual citizens of New Jersey and a partnership with constituent members each of whom is a citizen of a state other than New York. This Court therefore properly has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity under the rule of *Strawbridge v. Curtiss*, 7 U.S. (Cranch) 267 (1806).

### 1. The Individual Defendants Are Citizens of New Jersey

Defendants Edward Imperatore and Maurice Stone are both citizens of New Jersey, as their declarations show. *See* Edward Imperatore Decl. ¶¶ 2-3; Maurice Stone Decl. ¶¶ 2-3.

### 2. Midtown Is a Partnership Comprised of Members All of Whom Are Citizens of States Other Than New York

Defendant Midtown Development, L.P. is a limited partnership organized under New York law. *See* Edward Imperatore Decl. ¶ 6 & Ex. B thereto. Under *Carden v. Arkoma Associates*, 494 U.S. 185, 196 (1990), the citizenship of a partnership is determined by the citizenship of all of its partners, not by the state under whose laws it is organized or the location of its place of business or property. *See also Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000) ("[F]or purposes of diversity jurisdiction, limited partnerships have the citizenship of each of its general and limited partners."). Midtown's only general partner is comprised of constituent partnerships each of which is a citizen of states other than New York, and Midtown's only limited partner is a corporation that is a citizen of Pennsylvania.

### a.    Midtown's Only Limited Partner Is a Citizen of Pennsylvania

Midtown's only limited partner is Consolidated Rail Corporation, as successor in interest to CRC Properties, Inc.  *See* Edward Imperatore Decl. ¶¶ 7-8 & Ex. C thereto.  Consolidated Rail Corporation is a Pennsylvania corporation with its principal place of business in Philadelphia.  *See id.*  Consolidated Rail Corporation is therefore deemed a citizen of Pennsylvania.  *See* 28 U.S.C. § 1332(c)(1).

### b.    Midtown's General Partner Is Comprised of Two Partnerships That Are Citizens of States Other Than New York

Jerrart Venture is Midtown's only general partner.  *See* Edward Imperatore Decl. ¶ 5; Edward W. Ross Decl. ¶ 2; Arthur E. Imperatore, Sr. Decl. ¶ 2.  Jerrart Venture is an Illinois general partnership.  *See* Edward Imperatore Decl. ¶ 5 & Ex. A thereto.  It has only two partners: WR West Side Associates ("WR West Side"), a limited partnership organized under Illinois law, and Hadrian Properties Ltd. ("Hadrian"), a limited partnership organized under New Jersey law.  *See id.*; *see also* Arthur E. Imperatore, Sr. Decl. ¶¶ 4-5 & Ex. A thereto; Edward W. Ross Decl. ¶¶ 4-5 & Ex. A thereto.[1]

### i.    Hadrian Is a Citizen of New Jersey and Pennsylvania

Each of the constituent members of Hadrian is a citizen of a state other than New York.  Hadrian's only general partners are Hadrian Properties LLC and Fafner Enterprises, Inc.  *See*

---

[1]  Jericho contends that defendant Edward Imperatore gave "inconsistent" testimony when, at a deposition in the state court action, he was asked to recite from memory and without being shown any documents who "the principal owners, the individuals, who are the principal owners of Midtown directly or indirectly."  Rubin Aff., Ex. H. at 20.  In fact, Mr. Imperatore accurately recited that Jerrart owns Midtown with Conrail, that Conrail is a 5% owner of Midtown, that Hadrian is a general partner of Jerrart, and that WR West Side owns the "balance" of Midtown after accounting for the interests of Hadrian and Conrail.  *See id.* at 20-22.  In response to a poorly formed question ("Yourself and any other family, Imperatores, family members, what percent of the Midtown deal do you own?"), Mr. Imperatore stated at a different point that Jerrart owns less than half of Midtown, but all that matters for present purposes is that Mr. Imperatore accurately identified the constituent partners of Midtown.  *See id.*

Arthur E. Imperatore, Sr. Decl. ¶ 6.  Hadrian Properties LLC is a limited liability company organized under New Jersey law.  *See id.* ¶ 7.  The citizenship of a limited liability company is, as with a partnership, determined by the citizenship of all its members.  *See Handelsman*, 213 F.3d at 51-52.  The sole member of Hadrian Properties LLC is Arthur E. Imperatore, Sr., who is a citizen of New Jersey.  *See* Arthur E. Imperatore, Sr. Decl. ¶¶ 8-10.

Fafner Enterprises, Inc. is a New Jersey corporation with its principal place of business in Edgewater, New Jersey.  *See* Armand Pohan Decl. ¶ 3.  Its certificate of incorporation was revoked by the New Jersey State Treasurer in January 2007 (*see id.*), but at the time Jericho filed its complaint and at the time of removal—and still now—Fafner Enterprises, Inc. could sue and be sued under New Jersey law.  *See* N.J. Stat. Ann. 14A:12-9(2)(e) & 12-1(1)(a)(g).  It is therefore deemed a citizen of the State of New Jersey.  *See Dyotherm Corp. v. Turbo Mach. Co*., 48 F.R.D. 380, 384 (E.D. Pa. 1969); *see also Bazak Int'l Corp. v. William Wedeen & Co.*, 496 F. Supp. 847, 848-49 (S.D.N.Y. 1980).

Hadrian's only limited partners are Arthur E. Imperatore, Sr., India H. Imperatore, defendant Edward G. Imperatore, and Arthur E. Imperatore, Jr.  *See* Arthur E. Imperatore, Sr. Decl. ¶ 6.  India Imperatore is a citizen of Pennsylvania (India Imperatore Decl. ¶¶ 1-2), and Edward G. Imperatore and Arthur E. Imperatore, Jr. are both citizens of New Jersey.  *See* Edward Imperatore Decl. ¶¶ 2-3; Arthur E. Imperatore, Jr. Decl. ¶¶ 1-2.

Accordingly, for purposes of determining diversity of citizenship, Hadrian is deemed a citizen of New Jersey and Pennsylvania.

## ii.     WR West Side Is a Citizen of Several States, But Not New York

WR West Side's only general partners are Edward W. Ross and the Jerrold Wexler Declaration of Trust dated October 15, 1990.  *See* Edward W. Ross Decl. ¶ 6.  Edward Ross is a

citizen of Illinois.  *See id.* ¶¶ 7-8.  The citizenship of a trust is determined by the citizenship of its trustee, provided that the trustee has the power to hold, manage, and dispose of assets for the benefit of the trust's beneficiaries.  *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998); *Wells Fargo Bank N.W., N.A. v. TACA Int'l Airlines, S.A.*, 314 F. Supp. 2d 195, 199 (S.D.N.Y. 2003).  The sole trustee of the Jerrold Wexler Declaration of Trust dated October 15, 1990 is Martin F. Hauselman, a citizen of Illinois.  *See* Martin Hauselman Decl. ¶¶ 1-3.  Mr. Hauselman has the power to hold, manage, and dispose of assets for the benefit of the trust.  *See id.* ¶ 2.

Pursuant to the only amendment to the WR West Side partnership agreement, WR West Side's only limited partners are R-WIN Venture, the Jerrold Wexler Revocable Trust dated January 29, 1992, the Susan Wexler Trust Number 18, the Tanya Wexler Trust Number 18, Ira Kipnis, Irving J. Markin, and Edward G. Imperatore.  *Se*e Edward W. Ross Decl. ¶¶ 5-6 & Ex. A.

R-WIN venture is an Illinois partnership.  *See id.* ¶ 10.  Its only members are Edward Ross, Renee Ross, Ilene Ross, Nancy Ross Agostini—each of whom is an Illinois citizen—and William Ross, who is a citizen of Florida.  *See id.*; *see also* Declarations of Renee Ross, Ilene Ross, Nancy Ross Agostini, and William Ross.

The sole trustee of the Jerrold Wexler Revocable Trust dated January 29, 1992 is Susan Wexler Mazzoni.  *See* Edward W. Ross Decl. ¶ 11; *see also* Susan Wexler Mazzoni Decl. ¶ 2. Ms. Wexler Mazzoni is a citizen of Illinois and has the power to hold, manage, and dispose of assets for the benefit of the trust.  *See* Susan Wexler Mazzoni Decl. ¶¶ 1-3.

The sole trustee of the Susan Wexler Trust Number 18 is Gregory Ciokajlo.  *See* Edward W. Ross Decl. ¶ 12; *see also* Gregory Ciokajlo Decl. ¶ 2.  Mr. Ciokajlo is a citizen of Illinois and

is empowered to hold, manage, and dispose of assets for the benefit of the trust. *See* Gregory Ciokajlo Decl. ¶¶ 1-3

The Tanya Wexler Trust Number 18 was terminated in 1997. *See* Edward W. Ross Decl. ¶ 13; *see also* Tanya Wexler Decl. ¶ 2. Upon termination, all of the rights and interests of the Tanya Wexler Trust Number 18 in WR West Side were assigned to Tanya Wexler. *See* Tanya Wexler Decl. ¶ 2. Tanya Wexler is a citizen of New York. *See* Tanya Wexler Decl. ¶¶ 1, 3. However, although she is treated as a limited partner in WR West Side for all purposes— including for purposes of tax reporting—Tanya Wexler is not formally a limited partner in WR West Side. *See* Edward W. Ross Decl. ¶ 14.

The WR West Side agreement provides that, upon termination of a trust that is a limited partner, the "legally authorized representative"—in this case Tanya Wexler, as the assignee of the trust's interests—"shall succeed to all of the rights" of the trust as a limited partner. *See* Edward W. Ross Decl., Ex. A ¶ 9(h) ("Upon the . . . dissolution or cessation to exist as a legal entity of a Limited Partner not an individual, the legally authorized representative shall succeed to all of the rights granted by this Agreement to such Limited Partner."). Under the partnership agreement, however, the beneficiary of the trust does not formally become a substitute limited partner in WR West Side unless and until the partnership agreement is amended or a counterpart to it is executed. *See id.*, Ex. A ¶ 9(j)(iii) ("[I]n the event such Partner's Interest passes as aforesaid ['from the dissolution and liquidation . . . of a trust'], the recipients of such Interest shall be and become substitute Limited Partners upon execution of a counterpart or Amendment to this Agreement.").

The WR West Side partnership agreement has not been amended, and no counterpart to it has been executed, since December 1992. *See* Edward W. Ross Decl. ¶ 5. Tanya Wexler thus

was not formally a limited partner in WR West Side at the time Jericho filed its complaint and at

the time of removal.  Under Illinois law, a "'Limited partner' means a person who has been

admitted to a limited partnership as a limited partner *in accordance with the partnership

agreement*."  805 Ill. Comp. Stat. 210/101(6) (emphasis added); *see also id*. 210/301 ("[A]

person who acquires a partnership interest . . . [as] an assignee of a partnership interest may be

admitted as an additional limited partner as provided in the partnership agreement . . . .").[2]  For

diversity purposes, Tanya Wexler's New York citizenship is therefore not considered for

purposes of determining the citizenship of WR West Side, as this Court has previously held in an

analogous context.  *See United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp*., 907 F. Supp. 663,

669-71 (S.D.N.Y. 1995) (even though deceased partner's estate "possesses all the rights of a

limited partner," "estate was not a substituted limited partner in Waterfront as the requirements

of Paragraph 7.4(b) of the Agreement [among others, that '[t]he admission of [a] transferee as a

substituted Limited Partner shall be effected by an amendment'] were not met"; "[b]ecause the

estate was not a limited partner at the time the Recovery action was filed, the citizenship of the

estate need not be considered for diversity purposes").

The Supreme Court's decision in *Arkoma* is instructive.  There, the Court expressly

*rejected* an approach that would seek to determine the citizenship of a partnership by inquiring

into who the "real part[ies] to the controversy" are.  494 U.S. at 193-95 ("The dissent asserts . . .

'(t)he real party to the controversy approach' . . . .  Not a single case the dissent discusses, either

old or new, supports that assertion.").  Instead, the Court ruled that the citizenship of a

_____

[2]  For limited partnerships formed under Illinois law before January 1, 2005, the
provisions of the Revised Uniform Limited Partnership Act, cited above, are in effect until
January 1, 2008.  *See* 805 Ill. Comp. Stat. 215/1401 ("Effective January 1, 2008, the following
Act is repealed: the Revised Uniform Limited Partnership Act as amended and in effect
immediately before the effective date of this Act [January 1, 2005].").

partnership "depends on the citizenship of 'all the members.'" *Id.* at 195-96 (citation omitted). Accordingly, notwithstanding Tanya Wexler's rights and interests in WR West Side, for the purpose of determining the citizenship of WR West Side she is not formally deemed a substitute limited partner of WR West Side. *See United Nat'l Ins. Co.*, 907 F. Supp. at 671 (noting that, under *Arkoma*, "a court must only consider the citizenship only of members of the partnership"); *see generally Grupo Dataflux v. Atlas Global Gro*up, L.P., 541 U.S. 567, 582 (2004) ("Uncertainty regarding the question of jurisdiction is particularly undesirable . . . .").

The remainder of WR West Side's limited partners are also not citizens of New York. Ira Kipnis was a citizen of Illinois. *See* Edward W. Ross Decl. ¶ 15. Before he died in May 2002, his limited partnership interest in WR West Side was assigned to the Ira A. Kipnis Living Trust dated February 26, 2002. *See id.* ¶¶ 15-16. In August 2003, the rights and interests of that trust in WR West Side were assigned to Javid LLC. *See id.* ¶16; *see also* David Kipnis Decl. ¶ 4. The assignment was accompanied by a formal consent to assignment and substitution of limited partner, which was executed by Javid LLC and a general partner of WR West Side. *See* Edward W. Ross Decl. ¶ 16 & Ex. D thereto; *see also* David Kipnis Decl. ¶ 4 & Ex. A thereto. Javid LLC is a limited liability corporation organized under Illinois law. *See* David Kipnis Decl. ¶ 3; *see also* Jeffrey Wolfson Decl. ¶ 3. As noted, the citizenship of a limited liability company is determined by the citizenship of all its members. *See Handelsman*, 213 F.3d at 51-52. Javid LLC has only two members, and neither is a citizen of New York: David Kipnis, who is a citizen of Illinois, and Jeffrey Wolfson, who is a citizen of Michigan. *See* Edward W. Ross Decl. ¶ 17; *see also* David Kipnis Decl. ¶¶ 1-3; Jeffrey Wolfson Decl. ¶¶ 1-3.

Irving Markin was a citizen of Illinois before he passed away in October 2001. *See* Edward W. Ross Decl. ¶ 18. From December 1995 until December 2005, Irving Markin's rights

and interests in WR West Side were held in the Irving J. Markin Revocable Trust. *Id.* By assignments dated December 2005, all of the rights and interests in the Irving J. Markin Revocable Trust were assigned to Anna Garber, Kate Coleman, and Jack Markin. *Id.* & Ex. E thereto. As with Tanya Wexler, the WR West Side partnership agreement has not been amended to make these individuals formally limited partners of WR West Side. *Id.* In any event, none is a citizen of New York: Anna Garber is a citizen of Massachusetts, Kate Coleman is a citizen of Illinois, and Jack Markin is a citizen of Wisconsin. *Id.*; *see also* Declarations of Anna Garber, Kate Coleman, and Jack Markin.

Finally, as noted above, Edward G. Imperatore is a citizen of New Jersey. *See* Edward Imperatore Decl. ¶¶ 2-3. Thus, in sum, while there are many individuals and entities with interests in WR West Side, none of its partners is a citizen of New York for purposes of determining the citizenship of WR West Side. As set forth above, plaintiff and defendants are therefore diverse, and this Court has subject matter jurisdiction over this action.

### B. The Court Should Permit Defendants to Amend the Notice of Removal to Supplement Their Allegations of Diversity Jurisdiction

Plaintiff implies in its brief that, because the Notice of Removal does not fully describe the citizenship of all of Midtown's constituent partners,[3] the Court should remand this case regardless of whether the parties are in fact diverse. Jericho Br. 7-8. The only case Jericho cites for this unstated notion does not support it. *See Marco Island Ltd. P'ship v. Wallace Assocs. Consulting Group, Inc.*, No. 92 C 865, 1992 WL 59111, at *4 n.2 (N.D. Ill. Mar. 13, 1992) (court

---

[3] Defendants' Amended Notice of Removal states that Arthur Imperatore and Edward Ross are general partners of Midtown. *See* Rubin Aff., Ex. G ¶ 6. Defendants seek to clarify this allegation in their proposed Second Amended Notice of Removal by stating, as defendants have proved in this opposition, that Midtown's only general partner is Jerrart Venture, which in turn is comprised of two limited partnerships of which Arthur Imperatore and Edward Ross are, respectively, general partners and that include no members who are citizens of New York. *See* Geremia Decl., Ex. J.

found it "unnecessary to address plaintiffs' technical argument" that case should be remanded for failure "to allege sufficient jurisdictional facts about the citizenship of [certain] limited partnerships"). And it is not the law. Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *See also CBS Inc. v. Snyder*, 762 F. Supp. 71, 75 (S.D.N.Y. 1991) (party may amend notice of removal under this provision to "set forth more specifically grounds for removal which were imperfectly stated in the original petition"). This provision is "to be construed liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist." *Cox v. Livingston*, 407 F.2d 392, 393 (2d Cir. 1969) (internal quotation marks omitted); *see also Grow Group, Inc. v. Jandernoa*, No. 94 Civ. 5679, 1995 WL 60025, at *3 (S.D.N.Y. Feb. 10, 1995) ("Amendment of a notice of removal should be subject to the same liberal rules employed in testing the sufficiency of other pleadings.").

As set forth above and in defendants' proposed Second Amended Notice of Removal (*see* Geremia Decl., Ex. J), the Court has diversity jurisdiction over this action. Thirty days after the complaint has been served, a party is no longer permitted to amend a notice of removal to add an entirely *new* ground for subject matter jurisdiction. *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 & n.11 (3d Cir. 2003); *Stuart v. Adelphi Univ.*, No. 94 Civ. 4698, 1994 WL 455181, at *1 (S.D.N.Y. Aug. 19, 1994). But defendants are not proposing to add a new ground for subject matter jurisdiction. Rather, by their proposed amendment to the Notice of Removal, defendants seek leave of the Court to supplement their allegations of diversity to demonstrate that the Court has jurisdiction over this action on the *same ground* asserted in the original Notice of Removal: diversity of citizenship. *See Adelphi Univ.*, 1994 WL 455181, at *1 ("Courts generally agree that such leave [to amend a notice of removal] should be given [where] the proposed amendments . . .

14

serve to clarify what was contained in the original notice of removal."). Such requests to clarify a notice of removal are routinely granted and, we respectfully submit, should be granted here because the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). *See generally Cox*, 407 F.2d at 393; *see also, e.g.*, *Grow Group*, 1995 WL 60025, at *2 (denying plaintiff's motion to remand and granting defendants leave to amend notice of removal where "[d]efendants' jurisdictional allegations in the Notice of Removal [were] not absent but [were] defective, and may be properly clarified by amendment"); *Adelphi*, 1994 WL 455181, at *2 (denying motion to remand and granting defendant leave to amend notice of removal); *Snyder*, 762 F. Supp. at 73 (same).

## II. THERE IS NO BASIS FOR THE COURT TO ABSTAIN FROM EXERCISING ITS DIVERSITY JURISDICTION HERE

### A. A Court May Abstain Only in Truly "Exceptional Circumstances," Not Present Here

Jericho's other basis for seeking a remand is that, under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Court should "abstain" from exercising its jurisdiction because there is, according to Jericho, "a concurrent state proceeding" where Jericho is asserting the same claims. Jericho Br. 8. Not only is this premise false, because there is no complaint pending in state court, but Jericho's brief does not address the extraordinarily limited scope of the *Colorado River* abstention doctrine.

"It is axiomatic that abstention from the exercise of federal jurisdiction is the exception, not the rule. Abstention should be rarely invoked, because the federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Minot v. Eckardt-Minot*, 13 F.3d 590, 593 (2d Cir. 1994) (internal quotation marks and ellipses omitted; quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992), and *Colorado River*, 424 U.S. at 817). "[T]he reasons for abstention must be strong to justify a decision to remand a case properly removed from state

court . . . ."  *Id.* (remanding under the abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because custody dispute presented issue of whether New York would recognize a novel tort of "custodial interference").

As the *Colorado River* decision itself expressly stated, "'The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'"  424 U.S. at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).  Further still, as rare as it is for a federal court to dismiss or remand a case under one of the handful of recognized abstention doctrines, the Supreme Court has made clear that abstention on the ground of a concurrent state proceeding—the basis invoked by Jericho here—is even *more* limited than abstention on other grounds   *See id.* at 818 ("[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention."); *see also id.* at 819 ("Only the clearest of justifications will warrant dismissal" under the *Colorado River* doctrine.)

Jericho has not come close to showing that the Court should make an exception for this commercial case and exercise the "rarely invoked," "considerably limited," and "narrow" authority to abstain under the doctrine of *Colorado River*.  Indeed, that doctrine does not even apply here, because *Jericho's complaint in the state court action has been dismissed*.  In any event, contrary to Jericho's arguments, *every one* of the factors to be considered on this motion weighs in favor of this Court exercising its "virtually unflagging obligation…to exercise [its] jurisdiction."  *Colorado River*, 424 U.S. at 817.

**B.**     *Colorado River* **Abstention Does Not Apply Here Because There Is No Complaint Pending in the State Court**

"The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdiction[].'" *Dittmer v. County of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998) (quoting *Kirkbridge v. Cont'l Cas. Co.*, 933 F.2d 729, 734 (9th Cir. 1991), and holding that district court abused its discretion in abstaining where record showed no "contemporaneous exercise of concurrent jurisdictions"). That necessary precondition is lacking here.

There is no complaint pending in the state court. Jericho's complaint in the state court action was *dismissed* by the Appellate Division, *see Jericho*, 820 N.Y.S. 2d at 243, and Jericho withdrew its motion for reargument of the appeal and its alternative motion for leave to appeal to New York's Court of Appeals. *See* Geremia Decl., Ex. D. The Supreme Court later vacated the judgment entered by the New York County Clerk at the Appellate Division's direction, but in doing so the lower court expressly noted that "there is no complaint pending before this Court, having been dismissed by the Appellate Division." Rubin Aff., Ex. E at 17. Indeed, it was because there was no complaint pending that the Supreme Court denied Jericho's motion to amend its complaint, just as it denied Jericho's request for a preliminary injunction on the ground that "no action is pending." *Id.* Jericho also did not appeal from the Supreme Court's order denying its motion to amend the complaint, and Jericho's time to do so has now expired. *See* N.Y. C.P.L.R. § 5513(a) (appeal must be taken within thirty days of notice of entry of order).

Jericho did accept the Supreme Court's invitation "to file a new complaint in a new action." Rubin Aff., Ex. E at 17. But that action was timely removed by defendants to this Court. *See* Rubin Aff., Ex. G ¶ 2. While the Appellate Division's decision on Midtown's appeal from the order vacating the judgment will control whether Jericho may properly proceed with

this action, there no longer is *any* complaint pending in the New York County Supreme Court. *See Allstate Ins. Co. v. Longwell*, 735 F. Supp. 1187, 1192 (S.D.N.Y. 1990) (*Colorado River* abstention is "predicated on the existence of pending state litigation on parallel issues" and is inapplicable where "there is no longer anything pending in the state courts"). In sum, "[t]his case was removed from state court to federal court. As a result the case will be heard in only one forum. Because a precondition to abstention is lacking, the Court need not address the 'exceptional circumstances' [plaintiff] raises." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 341 F. Supp. 2d 351, 362 (S.D.N.Y. 2004).

On this ground alone, without even weighing the factors set forth below, Jericho's motion should be denied. *See also Tucker v. First Md. Sav. & Loan, Inc*., 942 F.2d 1401, 1408 (9th Cir. 1991) ("*Colorado River* abstention is simply not appropriate nor justified"; "there was a case filed in an Arizona state court that was removed to federal court on the basis of diversity jurisdiction" and "[t]his cause of action is the only one pending.").

## C.    In Any Event, *None* of the Factors Weigh in Favor of Abstention Here

Even if the Court were to consider whether this case presents the requisite "exceptional circumstances" for an abstention-based remand, a remand would not be warranted here. *All six* of the pertinent factors under *Colorado River* weigh in favor of this Court exercising its jurisdiction, even before applying the rule that the balancing of factors must be "heavily weighted in favor of the exercise of jurisdiction." *See Village of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) ("To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

### 1.    No Court Has Asserted Jurisdiction Over Midtown's Property

Jericho contends that "the New York State Supreme Court has assumed jurisdiction over the subject property from the outset of the initial litigation."  Jericho Br. 10.  That is not true. Jericho asserted a claim for specific performance of a contract to sell real property, but the state court action was an *in personam* action against Midtown; it was not *in rem* against Midtown's property.  *See Village of Westfield*, 170 F.3d at 122 ("This action was not an in rem action and did not involve jurisdiction over property.  We have held that the absence of a res 'point[s] toward the exercise of federal jurisdiction.'") (citation omitted); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 259 (S.D.N.Y. 2006) ("[N]o court has assumed jurisdiction over the property at issue in this action by virtue of Plaintiff filing the action.  Instead, . . . the Property presumptively belongs to [defendant] unless a court agrees with [plaintiff's] claim that the Deed is invalid.").

Moreover, even if Jericho's claim for specific performance against Midtown were to be regarded improperly as a claim *in rem* against Midtown's property, it would be *this Court*, not the state court, that would have jurisdiction over the property.  Jericho filed a notice of pendency against Midtown's property in the state court action.  *See* Geremia Decl., Ex. H.  Under New York law, the effect of the notice is that any party purchasing Midtown's property during the litigation would take it subject to Jericho's claim for specific performance against Midtown.  *See* N.Y. C.P.L.R. § 6501.  A notice of pendency does not give a court formal control or "jurisdiction" over the subject property, as Jericho contends.  *See In re Am. Motor Club, Inc.*, 109 B.R. 595, 597 (E.D.N.Y. 1990) ("A notice of pendency does not prevent a sale of the property and does not create a lien or encumbrance on the property.  It merely allows the plaintiff to . . . put[] the world on constructive notice that the property is the subject of a pending lawsuit.").  But, even assuming it did, the *notice of pendency in the state court action was*

*cancelled* in light of the Appellate Division's final order of dismissal. *See* Geremia Decl., Ex. I.

And, under New York law, a notice of pendency cannot be revived in an action once it has been

cancelled, unless the case is one for foreclosure which Jericho's was not. *See* N.Y. C.P.L.R.

§ 6516(c).

Shortly after commencing its new action—which is this case—Jericho filed another

notice of pendency against Midtown's property. *See* Rubin Aff., Ex. F. Defendants have of

course removed this action, however. The "pending action" for purposes of the notice of

pendency is thus *this case*, not the action in which Justice Ramos's order vacating the judgment

is currently on appeal to the First Department. Accordingly, if any court can be said to have

jurisdiction over Midtown's property by virtue of Jericho's notice of pendency, it is this Court,

not the state court. Any way the Court views this factor, it weighs against abstention.

### 2.    This Court Is As Convenient a Forum as New York County Supreme Court

Jericho concedes that this Court is as convenient a forum as the New York County

Supreme Court which is located across the street. *See* Jericho Br. 10. Jericho contends that this

factor weighs only "slightly against abstention." *Id.* The cases do not treat this factor as lightly

as Jericho suggests, but in any event it plainly does *not* favor abstention. *See Village of

Westfield*, 170 F.3d at 122 ("We have held that where the federal court is 'just as convenient' as

the state court, that factor favors retention of the case in federal court.") (citation omitted);

*Abercrombie*, 438 F. Supp. 2d at 259 ("[T]he federal forum is no less convenient than the state

forum would be, as both courts are located in New York City.")

### 3.    There Is No Risk of Piecemeal Litigation Because Jericho's Complaint in the State Court Action Has Been Dismissed

There is no risk of piecemeal litigation if this Court asserts jurisdiction over the claims

asserted by Jericho. Again, there is no complaint pending in the state court. The Appellate

Division dismissed Jericho's complaint, the Supreme Court acknowledged that it has no authority to reinstate the complaint, and for that reason the Supreme Court denied Jericho's motion to amend its already-dismissed complaint.  *See Jericho*, 820 N.Y.S.2d at 243; Rubin Aff., Ex. E at 17.  Thus, although the Appellate Division's order on Midtown's appeal from the lower court's order vacating the judgment will control whether Jericho may properly proceed with this action, there is no risk of duplicative or piecemeal litigation if this Court retains this case because there is no complaint pending in the state court.  *See Abercrombie*, 438 F. Supp. 2d at 259 (court would not abstain from considering suit under *Colorado River* where plaintiff "ha[d] not established the essential element that there are parallel proceedings"); *see generally In re Asbestos Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997) ("[A]ny case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to *Colorado River* would be the rule, not the exception, in cases involving parallel proceedings in state and federal court.") (internal quotation marks omitted).

In its entire brief, Jericho mentions this glaring defect in its flawed abstention theory only once, when it states, "If the Appellate Division affirms the vacatur of the judgment, logic dictates that it will also vacate its dismissal of the complaint in the Original Action."  Jericho Br. 11. Logic does not so dictate.  The Appellate Division has been made aware that defendants have removed Jericho's newly filed lawsuit to federal court and also has been made aware that Jericho's new action re-asserts *all* of the same claims that Jericho asserted in its original, now-dismissed action.  *See* Brief for Defendant-Appellant, *Jericho Group, Ltd. v. Midtown Dev., L.P.*, No. 0113274/2004, 2007 WL 1046202, at *17-*19 (1st Dep't Mar. 19, 2007).  As noted, Jericho itself concedes that this lawsuit seeks "essentially the same relief as in the Original Action, based

on the same transaction." Rubin Aff. ¶ 6. And Jericho has not appealed from the lower court's order denying its motion for leave to amend its complaint in that original action. *See* Geremia Decl. ¶ 4.

In these circumstances, there is no reason to expect that, if the Appellate Division were to affirm Justice Ramos's order vacating the judgment, the Court would order the parties to litigate Jericho's claims in state court. There is only one complaint pending in which Jericho is asserting claims arising out of its cancelled contract with Midtown, and that is the complaint before this Court. The "avoidance of piecemeal litigation" factor thus weighs against Jericho's request for an abstention-based remand. *Cf. Woodford v. Cmty. Action Agency of Greene County, Inc*., 239 F.3d 517, 524 (2d Cir. 2001) (reversing abstention order; "the primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes," but "[n]o . . . risk of inconsistency can arise" where "each plaintiff offered to 'stay or even withdraw' her overlapping state-court claims").

### 4.    The "Order in Which Jurisdiction Is Obtained" Is Irrelevant Because Jericho's Complaint in the State Court Action Has Been Dismissed

For similar reasons, the factor regarding the "order in which the actions were filed" weighs against abstention, or is at a minimum irrelevant. Jericho commenced its first action in September 2004, but that action was dismissed nearly two years later. There is thus only one action for purposes of this factor and, accordingly, no basis for making a meaningful determination of which court can stake a claim to being the "first" to obtain jurisdiction over the *only* pending complaint. Of course, in the removal context, the state court necessarily is the first to obtain jurisdiction over the action, but that does not mean a federal court should abstain from deciding every case that is removed to it. *Cf. W.J. Nolan & Co. v. Midway Fed. Credit Union*,

913 F. Supp. 806, 809 (S.D.N.Y. 1996) ("[T]his court declines to penalize petitioners for obtaining jurisdiction in the Southern District of New York only after respondent filed suit in [state court]," because "a petition to compel arbitration will always follow commencement of litigation by an opposing party."). To the contrary, a federal court has a "virtually unflagging obligation" to exercise its jurisdiction. *See Colorado River*, 424 U.S. at 817.

### 5.  The Issues of State Law Here Are Not Novel or Complex

Jericho concedes that "the state law issues presented here are neither novel nor particularly complex." Jericho Br. 12. That is correct, and it weighs heavily against abstention. Indeed, the Appellate Division dismissed each of the claims that Jericho is re-asserting in this action on multiple, independent bases, each of them well-established under principles of New York's law of contracts and fraud. *See Jericho*, 820 N.Y.S. 2d at 246-47.

It is a truism that state law will provide the rule of decision in a diversity case, but abstention is not thereby favored in *every* diversity case. *See Prosperity Realty, Inc. v. Haco-Canon*, 724 F. Supp. 254, 257 (S.D.N.Y. 1989) ("The fact that state law provides the rule of decision in this case, a truism in diversity cases, does not militate strongly *against* the exercise of federal jurisdiction, because no novel or unique state law issues are involved.") (emphasis in original). To the contrary, where, as in this case, the issues of state law are not novel or complex, there is no basis for a plaintiff to invoke "exceptional circumstances" and request that a federal court abstain from deciding the plaintiff's case. *See id.*; *see also Carruthers v. Flaum*, 388 F. Supp. 2d 360, 377 (S.D.N.Y. 2005) ("[T]he presence of state law issues will weigh in favor of abstention only in rare circumstances," and *not* where "the state law issues are neither novel nor particularly complex."). This factor thus weighs in favor of the Court exercising its diversity jurisdiction and rejecting Jericho's request for a remand. *See Law Enforcement Ins. Co., Ltd. v. Corcoran*, 807 F.2d 38, 42 (2d Cir. 1986) ("While state rather than federal law

provides the rule of decision in this diversity case, only elementary contract principles, rather than novel or obscure state law issues, are involved.").

### 6.    Midtown's Rights Will Be Protected in This Court

Finally, Midtown's rights will be protected in this Court.  Jericho contends that this factor favors abstention because the "State Court will adequately protect Midtown's rights."  Jericho Br. 12.  That is not how this factor works.  The possible inadequacy of a state court forum provides a "strong reason" for a federal court to retain jurisdiction, but "the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River*."  *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 169 (S.D.N.Y. 2006) (holding that this factor was "largely neutral" where the state court would "adequately protect [plaintiff's] interests") (internal quotation marks omitted); *see also In re Asbestos Litig.*, 963 F. Supp. at 253 ("[T]he adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River*."); *Prosperity Realty*, 724 F. Supp. at 257 ("The danger that a state court will not protect a party's rights 'is significant only if it militates in favor of federal jurisdiction.'") (citation omitted).

Moreover, the Second Circuit has made clear that, in applying abstention doctrines, courts may not disregard a removing party's federal right to have a lawsuit brought against it adjudicated in a federal forum and has warned courts to guard against even the "possibility" that a defendant may be treated unfairly in state court:

> The possibility of prejudice to out-of-state litigants which provides whatever diminishing justification for federal diversity jurisdiction remains, suggests that courts should be wary of using judicially-crafted abstention doctrines to deny out-of-state litigants a federal forum that they prefer.

*Minot*, 13 F.3d at 593; *see also Corcoran*, 807 F.2d at 41  ("[S]o long as Congress chooses to have us exercise diversity jurisdiction, we must do so unflaggingly.").  The Court therefore is not called upon here to form a definitive view on whether Midtown has been or will be treated

unfairly in the New York County Supreme Court.  The fact that Midtown has exercised its right to remove this diversity action to federal court and the mere *possibility* of unfair treatment in the state court, based on the record here, weigh in favor of rejecting Jericho's request for an abstention-based remand.

* * *

There is, in sum, no balancing for this Court to undertake on Jericho's request for a remand.  That there is not even a complaint pending in the state court makes *Colorado River* abstention wholly inapplicable at the threshold.  Moreover, not one of the six factors to be considered in the analysis favors abstention.  This case does not present *any* reason, let alone the requisite exceptional circumstances, to remand it to state court.

<h2 style="text-align:center">CONCLUSION</h2>

The Court should therefore deny Jericho's motion to remand this action and grant defendants leave to file their proposed Second Amended Notice of Removal, to supplement their allegations establishing the Court's jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

Dated: New York, New York
           April 13, 2007

Respectfully submitted,

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939

By:    / s / Todd R. Geremia
       Fredrick E. Sherman (FS 5442)
       Todd R. Geremia (TG 4454)

—and—

PHILLIPS NIZER LLP
Alfred D. Lerner (AL 5927)
George Berger (GB 8924)
666 Fifth Avenue
New York, New York  10103-0084
Telephone:  (212) 977-9700

Attorneys for Defendants,
Midtown Development, L.P., Edward
Imperatore, and Maurice Stone

**CERTIFICATE OF SERVICE**

On April 13, 2007, the foregoing DEFENDANTS' MEMORANDUM OF LAW IN

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND was served on the following counsel

for plaintiff through the Court's CM/ECF system:

> Charles A. Crum
> HERZFELD & RUBIN, P.C.
> 40 Wall Street
> New York, New York  10005
>
> *Attorneys for Plaintiff,*
> *Jericho Group, Ltd.*

Dated: New York, New York
      April 13, 2007

                           _____/ s / Todd R. Geremia_____
                                       Todd R. Geremia