UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JERICHO GROUP, LTD.,                      :

         Plaintiff,            :

         - against -          :    No. 07-CV-1792 (RCC) (DCF)

                      :    ECF CASE

MIDTOWN DEVELOPMENT, L.P., EDWARD   :
IMPERATORE and MAURICE STONE,     :

         Defendants.     :

---------------------------------------------------------------X

## DECLARATION OF ARTHUR E. IMPERATORE, SR.

I, ARTHUR E. IMPERATORE, SR., declare as follows:

1.     Midtown Development, L.P. ("Midtown"), which is a defendant in the above-captioned action, is a limited partnership organized under New York law.

2.     Since May 28, 1987, pursuant to a Second Amendment to Certificate of Limited Partnership of Midtown Development, L.P., Midtown's only general partner has been Jerrart Venture.

3.     Jerrart Venture is a general partnership organized under Illinois law.

4.     Jerrart Venture's only partners are WR West Side Associates and Hadrian Properties Ltd.

5.     I am a limited partner in Hadrian Properties Ltd., a limited partnership organized under New Jersey law.  A copy of the Limited Partnership Agreement of Hadrian Properties Ltd., dated March 18, 1987, is attached hereto as Exhibit A.

6.     Since 1995, the only general partners of Hadrian Properties, Ltd. have been Hadrian Properties LLC and Fafner Enterprises, Inc.  Since 1992, the only limited partners of

Hadrian Properties Ltd. have been me, India H. Imperatore, Arthur E. Imperatore, Jr., and Edward G. Imperatore.

7.     I was a general partner of Hadrian Properties Ltd. under the Limited Partnership Agreement of Hadrian Properties Ltd., dated March 18, 1987. In 1995, I assigned my entire general partnership interest in Hadrian Properties Ltd. to Hadrian Properties LLC, a limited liability company under New Jersey law. A formal assignment, assumption of general partnership duties, and consent to the assignment and transfer of my entire general partnership interest in Hadrian Properties Ltd. to Hadrian Properties LLC was executed in 1995.

8.     I am the sole member of Hadrian Properties LLC.

9.     I am a citizen of the United States of America.

10.    My domicile is in the State of New Jersey, and my home address is 38 King Avenue, Weehawken, New Jersey. That was also my home address for all of February and March of 2007. For all of February and March of 2007, I intended, and still intend now, for my domicile to remain in the State of New Jersey.

11.    Fafner Enterprises, Inc. is a New Jersey corporation, with its principal place of business in Edgewater, New Jersey.

12.    India H. Imperatore is domiciled in the State of Pennsylvania.

13.    Armand Pohan was the trustee of the Arthur E. Imperatore, Jr. 1985 Income Trust. Armand Pohan's domicile is in the State of New Jersey.

14.    In December 1992, the entire limited partnership interest of the Arthur E. Imperatore, Jr. 1985 Income Trust was assigned to Arthur E. Imperatore, Jr., the beneficiary of the trust, and Arthur E. Imperatore, Jr. then assumed the rights and duties of a limited partner in Hadrian Properties Ltd., with the consent of the general partners of Hadrian Properties Ltd. An

Assignment and Assumption of Limited Partnership Interest and Consent of General Partners,

which was executed on December 26, 1992, is attached hereto as Exhibit B.

15.    Edward G. Imperatore is domiciled in the State of New Jersey.

16.    I declare under penalty of perjury that the foregoing is true and correct.


Executed within the United States on April ⸝⸍, 2007.

ARTHUR E. IMPERATORE, SR.

# EXHIBIT A
# TO IMPERATORE, SR. DECLARATION

LIMITED PARTNERSHIP AGREEMENT

OF

HADRIAN PROPERTIES LTD.

Dated:  MARCH *18*, 1987

McCarter & English
Counselors at Law
550 Broad Street
Newark, New Jersey 07102

TABLE OF CONTENTS

                                                                    Page

ARTICLE I        - FORMATION, NAME, OFFICE AND PURPOSES

        1.1   Formation                                        2
        1.2   Name                                             2
        1.3   Offices                                          2
        1.4   Purposes                                         2

ARTICLE II       - CAPITAL AND LOANS

        2.1   Initial Capital                                  3
        2.2   Ownership by Partner of Partnership              4
        2.3   Advances to Partnership                          4
        2.4   Percentage Interests in Capital                  5
        2.5   Capital Accounts                                 5
        2.6   Additional Capital                               6

ARTICLE III      - DISTRIBUTIONS AND ALLOCATIONS OF
                   PROFITS AND LOSSES

        3.1   Profits and Losses                               6
        3.2   Income Account                                   6
        3.3   Withdrawals                                      7

ARTICLE IV       - MANAGEMENT

        4.1   General Management                               8
        4.2   Limitation of Powers and Affirmative Acts       10
        4.3   Bank Accounts                                   10
        4.4   Compensation and Outside Activities             10
        4.5   Holding of Property                             11
        4.6   Participation by Limited Partners               13

ARTICLE V        - LIABILITY

        5.1   Liability of the Partnership                     13
        5.2   Limited Liability of Limited Partners            13
        5.3   Indemnification                                 14

ARTICLE VI       - ACCOUNTING

        6.1   Books and Records                               14
        6.2   Fiscal Year                                     15
        6.3   Reports                                         15

ARTICLE VII     - TERM AND DISSOLUTION

       7.1  Term                                            15
       7.2  Death or Incapacity of a Limited Partner        15
       7.3  Dissolution                                     16
       7.4  Death, etc. of General Partners                 17
       7.5  Distribution on Liquidation                     18

ARTICLE VIII    - ASSIGNMENTS

       8.1  Binding Effect and Benefit of this Agreement    22
       8.2  Investment Representations                       22
       8.3  Transfers                                        23

ARTICLE IX      - GENERAL PROVISIONS

       9.1  Certificates, etc.                               31
       9.2  Power of Attorney                                32
       9.3  Insurance Coverage                               32
       9.4  Partners' Relationship Inter Se                  33
       9.5  Integration                                      33
       9.6  Notices                                          33
       9.7  Miscellaneous                                    34
       9.8  Amendment                                        34

LIMITED PARTNERSHIP AGREEMENT
OF
HADRIAN PROPERTIES LTD.

This LIMITED PARTNERSHIP AGREEMENT made on March *18*,
1987 (hereinafter the "Agreement") by and among FAFNER ENTERPRISES
INC., a New Jersey corporation, with offices at 2100 88th Street,
North Bergen, New Jersey 07047 ("Fafner") and ARTHUR E.
IMPERATORE, residing at 10 Claremont Road, Fort Lee, New Jersey
07024 ("Imperatore") as General Partners (hereinafter referred to
collectively as "General Partners" or individually as "General
Partner") and Imperatore, INDIA H. IMPERATORE, residing at One
Veteran's Way, Edgewater, New Jersey 07020 (hereinafter "India"),
EDWARD G. IMPERATORE, residing at 105 Serpentine Road, Tenafly,
New Jersey 07670 (hereinafter "Edward") and ARMAND POHAN, residing
at 373 Walnut Street, Englewood, New Jersey (hereinafter "Pohan"),
as Trustee under a Trust Agreement dated December 30, 1985 and
called the "ARTHUR E. IMPERATORE, JR. 1985 INCOME TRUST" as
Limited Partners (hereinafter sometimes referred to individually
as "Limited Partner" and collectively as "Limited Partners").  The
General Partners and the Limited Partners are hereinafter
sometimes referred to individually as "Partner", and collectively
as "Partners".

## W I T N E S S E T H :

WHEREAS, the parties hereto desire to form a New Jersey
limited partnership pursuant to and in accordance with the

10,124/39

provisions of the New Jersey Uniform Limited Partnership Law
(1976), N.J.S.A. 42:2A-1, et seq.;

NOW, THEREFORE, for and in consideration of the mutual
covenants herein contained, the parties hereto covenant and agree
as follows:

ARTICLE I

FORMATION, NAME, OFFICE AND PURPOSES

Section 1.1.    Formation.  The parties hereto have
formed a limited partnership (hereinafter the "Partnership") under
the New Jersey Uniform Limited Partnership Law (1976), N.J.S.A.
42:2A-1, et seq.

Section 1.2.    Name.  The name of the Partnership shall
be "Hadrian Properties Ltd., a limited partnership."

Section 1.3.    Offices.  The principal office and place
of business of the Partnership shall be c/o A-P-A Transport Corp.,
2100 88th Street, North Bergen, New Jersey 07047.  The Partnership
may have such additional offices or places of business as the
General Partners shall deem advisable.

Section 1.4.    Purposes.  The general purposes of the
Partnership are to purchase, hold, mortgage, build upon, improve,
alter, repair, rent, lease and otherwise deal in real and personal
property, including engaging in the business of owning, leasing,
managing and otherwise dealing with residential and commercial

MID 00814

real estate, with improvements thereon, in New Jersey, New York and in such other states as deemed advisable by the General Partners. The Partnership may engage in such other business or businesses permitted by the New Jersey Uniform Limited Partnership Law (1976) or by the limited partnership laws of any and all other states in which the Partnership is qualified or may be qualified to do business as may from time to time be deemed advisable by the General Partners.

## ARTICLE II

### CAPITAL AND LOANS

Section 2.1.   Initial Capital.  The initial capital of the Partnership shall consist of the sum of $10,000.00 and shall be paid to the Partnership in cash simultaneously with the execution of this Agreement. The aggregate contribution to the initial capital of the Partnership by the General Partners shall be the sum of $4031.00. The initial capital contribution of each General Partner shall be equal to the dollar amount set forth opposite the name of each on Schedule A annexed hereto.

The aggregate contribution to the initial capital of the Partnership of the Limited Partners shall be the sum of $5969.00. The initial capital contribution of each Limited Partner shall be equal to the dollar amount set forth opposite his or her name on Schedule A annexed hereto.

MID 00815

Section 2.2.   <u>Ownership by Partner of Partnership</u>.
Each Partner shall have and own an undivided interest in the
Partnership in accordance with the terms hereof; provided,
however, that no Partner shall have any right of partition with
respect to any property or assets of the Partnership including,
without limitation, its land and buildings.

Section 2.3.   <u>Advances to Partnership</u>.  Any Partner may
from time to time, with the consent of the General Partners,
advance money to the Partnership by loan, upon such interest rate
and other terms as shall be agreed upon at that time by such
Partner and the General Partners.

The parties to this Agreement hereby expressly agree
that all such loans to the Partnership by any Partner shall be,
and shall be deemed to be for all purposes, on a non-recourse
basis; i.e, the liability of the Partnership as to principal,
interest or any other cost or charge which may become due and
payable under any such loan shall be limited wholly and solely to
the property and assets of the Partnership and the Partner
advancing such loan shall not be entitled to any deficiency claim,
nor shall such Partner be entitled to seek or obtain a judgment
against the General Partners hereunder, it being the intention
that the General Partners hereunder shall have no personal
liability under any such loans made to the Partnership by any
Partner.

-4-

Section 2.4.    <u>Percentage Interests in Capital</u>.    The interests of the Partners in the capital of the Partnership shall be equal to the total of the percentages set forth in accordance with Section 3.1 of this Agreement on Schedule B annexed hereto. The aforementioned percentages shall not be changed without the consent of the General Partners and the consent of Limited Partners holding at least ninety (90) percent of the total interests of all Limited Partners.

Section 2.5.    <u>Capital Accounts</u>.    Unless otherwise determined by the General Partners from time to time and at any time, no interest shall be paid by the Partnership with respect to the capital of the Partners.  An individual "capital account" shall be maintained for each Partner.  For purposes of this Agreement, the·term "capital account" of any Partner as of any date shall mean the amount of cash or property contributed by such Partner to the capital of the Partnership, properly adjusted in accordance with generally accepted accounting principles to reflect any additions or withdrawals of such capital, including, but not limited to, a contribution to capital from the income accounts of the Partners pursuant to Section 3.2 hereof.  Except as expressly hereinafter provided, (1) no Partner shall be entitled to withdraw any amount from his capital account in the Partnership; and (2) the General Partners shall make no distribution of the property of the Partnership to any Partner with respect to his capital interest in the Partnership.

-5-

Section 2.6.    <u>Additional Capital</u>.  The Partners may agree to contribute additional capital to the Partnership from time to time, including, but not limited to, a contribution to capital from the income accounts of the Partners pursuant to Section 3.2 hereof, and, in such an event, such additional capital shall be contributed by each Partner in accordance with his respective proportionate interest in profits and losses as set forth in Section 3.1 hereof.

ARTICLE III

<u>DISTRIBUTIONS AND ALLOCATIONS OF PROFITS AND LOSSES</u>

Section 3.1.    <u>Profits and Losses</u>.  Unless otherwise adjusted by mutual agreement of the Partners or by a transfer of partnership interests as among the Partners, the net profits or net losses of the Partnership shall be distributable or chargeable, as the case may be, at least annually, to each of the Partners in the proportions set forth in Schedule B annexed hereto.

Section 3.2.    <u>Income Account</u>.  An individual income account shall be maintained for each Partner for bookkeeping purposes.  Profits and losses shall be credited or charged to the individual income accounts as of the close of the fiscal year, as soon after the close of such year as such profits and losses can be determined.  Any credit balance in any individual income

-6-

MID 00818

account shall be deemed a debt owed to the Partner and any debit balance in any individual income account shall be deemed a debt owed to the Partnership; provided that the General Partners, with the concurrence of a majority in interest of all Limited Partners (i.e. the concurrence of Limited Partners holding as a group more than a 50% interest in profits and losses pursuant to Section 3.1 hereof), may transfer, on a proportionate basis as to all Partners, from time to time and at any time, such part or all of the credit balances in the income accounts to the capital accounts of the Partners, in which event the transferred amounts will no longer be deemed a debt owed to the Partners.  No interest shall be paid by the Partnership with respect to the income accounts of the Partners, except if so determined by the General Partners. Each individual income account shall be adjusted to reflect distributions of income to the Partner involved and any additions or reductions to the capital accounts that affect the income account as may be required by generally accepted accounting principles or as a result of a transfer of credit balances to the capital accounts.

Section 3.3.  <u>Withdrawals</u>.  The General Partners may distribute from time to time and at any time such part or all of the net credit balance in each Partner's individual income account as the General Partners may determine in their absolute discretion; provided that the proportionate part distributed shall be uniform as to all Partners.

-7-

ARTICLE IV

MANAGEMENT

Section 4.1.   General Management.   Imperatore shall be
the initial Managing Partner of the Partnership.  The Managing
Partner shall have general supervision over the business and
administrative matters of the Partnership, and all decisions
affecting the Partnership shall be his ultimate obligation and
responsibility.  Should there be any disagreement as between the
General Partners as to any matter or decision, the Managing
Partner shall have all of the rights and powers of a general
partner as provided in the New Jersey Uniform Limited Partnership
Law (1976) and as otherwise provided by law, and any action taken
by the Managing Partner shall constitute the act of and serve to
bind the Partnership.  In dealing with the Managing Partner acting
on behalf of the Partnership, no person shall be required to
inquire into the authority of such Managing Partner to bind the
Partnership.  While it has been agreed among the Partners that the
powers of management are to be exclusively in the Managing
Partner, it is recognized that the act of any other General
Partner, including the execution in the Partnership's name of any
instrument, or apparently carrying on the business of the
Partnership in the usual way will bind the Partnership, unless the
person with whom such other General Partner is dealing has

-8-

knowledge of his lack of authority.  After the withdrawal, death, legal incompetency or bankruptcy of Imperatore, Fafner shall be the Managing Partner.

The powers of the Managing Partner shall include, without limitation, the following:

(a)  To engage personnel;

(b)  To engage independent attorneys, accountants, or other such persons as may be deemed necessary or advisable;

(c)  To open, maintain, and close bank accounts, and to draw checks and other orders for the payment of money;

(d)  To borrow money and to make, issue, accept, endorse, and execute promissory notes, drafts, bills of exchange and other instruments and evidences of indebtedness, all without limit as to amount, and to secure the payment thereof by mortgage, hypothecation, pledge, or other assignment of or arrangement of security interest in all or any part of the property then owned or thereafter acquired by the Partnership;

(e)  To take such actions and incur such expense on behalf of the Partnership as may be necessary or advisable in connection with the conduct of the affairs of the Partnership;

(f)  To enter into, make, perform and execute such contracts, agreements, and other undertakings as may be deemed necessary or advisable for the conduct of the affairs of the Partnership; and

-9-

(g)  To purchase, sell, mortgage, build upon, improve, alter, repair, rent, lease and otherwise deal in real and personal property on behalf of the Partnership.

Section 4.2.   <u>Limitation of Powers and Affirmative Acts</u>.  The General Partners shall not do any act which would make it impossible to carry on the ordinary business of the Partnership as set forth in Section 1.4 hereof, and shall not make any distribution or take any action in violation of this Agreement or the New Jersey Uniform Limited Partnership Law (1976).

Section 4.3.   <u>Bank Accounts</u>.  Checks shall be drawn on the Partnership bank account for Partnership purposes only and shall be signed by one of the General Partners or any employee of the Partnership authorized by the Managing Partner.

Section 4.4.   <u>Compensation and Outside Activities</u>.  The Managing Partner shall devote such time as is reasonably deemed necessary in his absolute discretion to manage the affairs and business of the Partnership and he shall be entitled to receive a management fee for his services to the Partnership.  Each of the Partners consents and agrees that any of the Partners may engage in and/or possess an interest in other business ventures of every nature and description, independently or with others, including, but not limited to, the ownership, financing, leasing, operation, management, sale and development of real and personal property; and neither the Partnership nor the Partners, as such, shall have

-10-

any rights by virtue of this Agreement in and to said independent
ventures or to the income or profits derived therefrom.  The fact
that a Partner, or a member of his or her family, is employed by
or is directly or indirectly interested in or connected with any
person, firm or corporation employed by the Partnership to render
or perform a service, or from whom the Partnership may buy
merchandise or other property, or to or from whom the Partnership
shall lease its property or any portion thereof, shall not
prohibit a General Partner from executing a lease with or
employing such person, firm or corporation or from otherwise
dealing with such person, firm or corporation, and neither the
Partnership nor any of the Partners, as such, shall have any
rights in or to any income or profits derived therefrom by such
person, firm or corporation.

Section 4.5.    Holding of Property.  Property owned by
the Partnership shall be held in the name of the Partnership.
Subject to provisions of this Agreement, the Managing Partner
shall have the right, power and authority without regard to the
term hereof, for and on behalf of the Partnership, to lease, sell,
mortgage, convey, assign, exchange, hypothecate, pledge, refin-
ance, grant easements on or dedicate any real or personal property
of the Partnership, to convey such property in fee simple by deed,
mortgage or otherwise, and to create straw corporations to act as
straw parties and nominees solely for and on behalf of the Part-

-11-

nership.  In no event shall any party dealing with a General
Partner in his or her capacity as General Partner, with respect to
any property of the Partnership, or to whom any such property, or
any part thereof, shall be conveyed, contracted to be sold,
leased, mortgaged, or refinanced by the General Partner for and on
behalf of the Partnership, be obligated to see that the terms of
this Agreement have been complied with, or be obligated to inquire
into the necessity or expediency of any act or action of the
General Partner, or be obligated or privileged to inquire into any
of the terms of this Agreement.  Every contract, agreement, deed,
mortgage, lease, or other instrument or document executed by a
General Partner in its capacity as General Partner, with respect
to any property or business activity of the Partnership, shall be
conclusive evidence in favor of any and every person relying
thereon or claiming thereunder that:

   (a)  At the time or times of the execution and
delivery thereof, the Partnership was in full force and effect,

   (b)  Such instrument or document was duly executed
in accordance with the terms and provisions of this Agreement and
is binding upon the Partnership and all of the Partners hereof,
and

   (c)  The General Partners or any of them, were duly
authorized and empowered to execute and deliver any and every such
instrument or document for and on behalf of the Partnership.

-12-

The manner of holding title to any property of the Partnership, or any part thereof, shall be solely for the convenience of the Partnership; accordingly, no spouse, heir, legal representative, successor or assign of any Partner shall have any right, title, or interest in and to any property of the Partnership by reason of the manner in which title shall be held; and all such property, including, without limitation, its land and buildings, shall be treated as property of the Partnership subject to the terms of this Agreement.

Section 4.6.   <u>Participation by Limited Partners</u>.  The Limited Partners, in their position as Limited Partners, shall take no part in the conduct or control of the Partnership and its business and shall have no right or authority to act for, or bind the Partnership.

### ARTICLE V

### <u>LIABILITY</u>

Section 5.1.   <u>Liability of the Partnership</u>.  Any liability of the Partnership shall be satisfied out of the assets of the Partnership (including the proceeds of any liability insurance which the Partnership may recover).

Section 5.2.   <u>Limited Liability of Limited Partners</u>.  The liability of the Limited Partners in all respects shall be

-13-

MID 00825

limited to the capital contribution paid or agreed to be paid by such Limited Partner.

Section 5.3.    Indemnification.    The Partnership shall indemnify and hold harmless each General Partner and any agents of the General Partners (herein the "Indemnified Parties"), from and against any loss, expense, damage or injury suffered or sustained by them by reason of any act, omission or alleged act or omission arising out of the General Partners' activities on behalf of the Partnership or in furtherance of the interests of the Partnership, including, but not limited to, any judgment, award, settlement, reasonable attorney's fees and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding or claim; provided that the act, omission or alleged act or omission upon which such actual or threatened action, proceeding or claim is based was not performed or omitted fraudulently or in bad faith or as a result of wanton and willful misconduct or gross negligence by such Indemnified Party.

ARTICLE VI

ACCOUNTING

Section 6.1.    Books and Records.    At the principal office of the Partnership there shall be kept true, exact, and complete books of account in which shall be entered fully and accurately each and every transaction of the Partnership.

-14-

Section 6.2.    <u>Fiscal Year</u>.  The fiscal year and the taxable year of the Partnership shall be the calendar year.

Section 6.3.    <u>Reports</u>.  Within ninety (90) days after the end of each fiscal year, there shall be prepared and transmitted to each Partner a statement showing each Partner's share of the income, gain, losses, deductions and credits of the Partnership for such year for income tax purposes, which share shall be in proportion to their respective interest in profits and losses as provided for in Section 3.1 and set out on Schedule B annexed hereto.

ARTICLE VII

<u>TERM AND DISSOLUTION</u>

Section 7.1.    <u>Term</u>.  The term of this Partnership shall continue until April 30, 2079, or until prior dissolution as provided herein.  The Partnership may be continued beyond April 30, 2079, with the consent of all partners.

Section 7.2.    <u>Death or Incapacity of a Limited Partner</u>. The Partnership shall not terminate and dissolve upon the death or legal incapacity of a Limited Partner.  Rather, such Limited Partner's executor, administrator or legal representative shall have the rights of a Limited Partner for the purpose of settling or administering his or her estate, and his or her heir, legatee or legal representative shall have the right to become a substitute

-15-

Limited Partner by executing an amendment to this Agreement, and as provided by law, agreeing to be bound by all the terms and conditions hereof and to assume all the obligations of the deceased or incapacitated Limited Partner hereunder. The application of this Section 7.2 is specifically limited by the terms of Section 8.3(d) herein.

Section 7.3.    Dissolution.    The Partnership shall be dissolved upon the first to occur of the following:

(a)    The decision of the General Partners to dissolve the Partnership, which decision shall bind the Partnership;

(b)    The sale, abandonment or disposal by the Partnership of all or substantially all of its assets and the discontinuation of all business activity by the Partnership;

(c)    The entry of a final judgment, order or decree of a court of competent jurisdiction adjudicating the Partnership to be a bankrupt, and the expiration of the period, if any, allowed by applicable law in which to appeal therefrom;

(d)    The withdrawal, death, dissolution, legal incompetency or bankruptcy of any General Partner (except as otherwise provided in Section 7.4 hereof); and

(e)    The termination of the term of this Partnership unless otherwise extended.

In the event of dissolution of the Partnership, the rights of the Partners shall be in accordance with the provisions of Sections 7.4 and 7.5 hereof.

MID 00828

Section 7.4.   <u>Death, etc. of General Partners</u>.   Upon the withdrawal, death, legal incompetency, dissolution, insolvency or bankruptcy of any General Partner, he or his personal representative, heir, successor, guardian, receiver, assignee or trustee shall become a Limited Partner hereunder, and shall have all rights, responsibilities and limitations provided by law and under the provisions of this Agreement for Limited Partners and shall in all respects be treated as a Limited Partner; the remaining General Partner shall continue the business of the Partnership. However, in the event of the withdrawal, death, legal incompetency, dissolution, insolvency or bankruptcy of the remaining General Partner, or in the event of the withdrawal, death, legal incompetency, dissolution, insolvency or bankruptcy of all of the General Partners, the Partnership shall be dissolved and the Partnership's assets shall be distributed in liquidation and the rights of each distributee shall be governed in all respects by the provisions of Section 7.5 hereof, unless sixty (60) percent of all Limited Partners (i.e., Limited Partners holding as a group 60% or more of the total percentage interests of all Limited Partners in profits and losses of the Partnership pursuant to Section 3.1 hereof) elect one or more successor General Partners, on such terms and conditions as agreed upon by such consenting Limited Partners, including, but not limited to, the amount of capital contributions to be required from any successor General

-17-

Partner, and each such General Partner elects to continue the
business of the Partnership.  If such election is made to continue
the Partnership business, written notice of such election shall be
given to all Limited Partners and to the withdrawing General
Partner or to the personal representative, heir, successor,
guardian, or trustee of the deceased, legally incompetent, dis-
solved, insolvent or bankrupt General Partner.  In the event of
such election the withdrawing General Partner, or the personal
representative, heir, successor, guardian, receiver, assignee or
trustee of the deceased, legally incompetent, dissolved, insolvent
or bankrupt General Partner, shall become a Limited Partner
hereunder, and shall have all rights, responsibilities, and
limitations provided by law and under the provisions of this
Agreement for Limited Partners and shall in all respects be
treated as a Limited Partner.  Upon each conversion hereunder of a
General Partner's interest to that of a Limited Partner's
interest, the Partnership shall have an Amended Certificate of
Limited Partnership executed and filed in accordance with law.

      Section 7.5.   <u>Distribution on Liquidation</u>.  Upon the
dissolution of the Partnership by means of occurrences described
in Section 7.3(a)-(c) and (e) hereof, and in the case of Section
7.3(d) hereof in the absence of an election to continue the busi-
ness of the Partnership, the General Partners or the legal agents
or representatives of the Partnership shall proceed to liquidate

-18-

its assets (including, but not limited to, a sale of all or part of the Partnership's assets to one or more corporations or other partnerships), wind up its affairs, and apply and distribute interests in Partnership property in a manner to take into account such priorities, to the extent consistent with the requirements of the New Jersey Uniform Limited Partnership Law (1976):

     (a)  To the payment of the debts and liabilities of the Partnership and the expenses of liquidation in the order of priority as provided by law, and to the setting up of any reserves which the General Partners or such legal agents or representatives shall deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership.  Said reserves may be paid over by the General Partners or such legal agents or representatives to a bank or an attorney at law, to be held in escrow for the purpose of paying any such contingent or unforeseen liabilities or obligations and, at the expiration of such period as the General Partners or such legal agents or representatives shall deem advisable, of distributing the balance in the manner provided in the following subparagraphs of this Section 7.5 in like order of priority;

     (b)  To the repayment of loans made to the Partnership pursuant to Section 2.3 hereof by any General or any Limited Partner on a proportionate basis;

MID 00831

(c)  To the repayment to the Limited Partners of their capital contribution to the extent not previously repaid;

(d)  To the repayment to the General Partners of their capital contribution to the extent not previously repaid;

(e)  To the Limited Partners an amount equal to the balance of their capital and income accounts referred to in Sections 2.5 and 3.2 hereof, respectively;

(f)  To the General Partners an amount equal to the balance of their capital and income accounts referred to in Sections 2.5 and 3.2 hereof, respectively; and

(g)  Any balance to the Partners in proportion to their respective proportionate interest in profits.  A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of its liabilities so as to en-able the General Partner or such legal agents or representatives to minimize the normal losses attendant upon such a liquidation. The provisions of Section 3.1 hereof relating to the allocation of income, gain, loss, deduction or credit of the Partnership shall be applicable during the period of liquidation and winding up.

In liquidating the assets of the Partnership, the General Partners or such legal agents or representatives may in their absolute discretion transfer and convey the legal ownership to all or part of the Partnership assets to one or more corpora-tions in exchange for stock of or securities of each such

-20-

corporation and thereafter, distribute such stock or securities to the Partners in liquidation of their interests hereunder. In addition, the General Partners or such legal agents or representatives may, with the consent of a majority of all Limited Partners (i.e., Limited Partners holding as a group more than 50% of the total percentage interests of all Limited Partners in profits and losses of the Partnership pursuant to Section 3.1 hereof), transfer and convey the legal ownership to all or part of the Partnership assets to one or more general or limited partnerships in exchange for general or limited partnership interests of each such partnership and thereafter, distribute such partnership interests to the Partners in liquidation of their interest hereunder.

The General Partners or such legal agents or representatives shall furnish each Partner with a statement audited by a responsible firm of public accountants showing the manner in which the proceeds of liquidation of the Partnership have been distributed.

No Partner shall be liable to the Partnership or to any other Partner for any negative balance in his capital account as said capital account is constituted immediately prior to the aforesaid distributions except to the extent that such negative balance is attributable to an erroneous overpayment to any Partner.

-21-

MID 00833

The Partnership shall terminate when all assets owned by the Partnership shall have been disposed of and the net proceeds, after satisfaction of liabilities to creditors, shall have been distributed among the Partners as aforesaid.  The establishment of any reserves in accordance with the provisions of subparagraph (a) above shall not have the effect of extending the term of the Partnership.

ARTICLE VIII

ASSIGNMENTS

Section 8.1.    Binding Effect and Benefit of this Agreement.  Subject to the provisions of Section 9.8 hereof, this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, heirs, executors, administrators, and assigns, as the case may be.

Section 8.2.    Investment Representations.  Each Partner represents and warrants to the Partnership that he or she has acquired or is acquiring his or her interest in the Partnership for investment and not with a view to the transfer, resale or distribution thereof and that his or her interest shall not be sold, pledged, encumbered, offered, assigned, transferred or otherwise disposed of in violation of the Securities Act of 1933, as amended, the regulations promulgated by the Securities and Exchange Commission, or the New Jersey Securities Act or Real

MID 00834

Estate Syndication Offerings Law or any other applicable state "blue sky" law. The General Partners may require a favorable opinion of counsel as a condition precedent to approval of any such transaction. Each Partner shall indemnify and hold the Partnership harmless for all costs and expenses, including reasonable attorneys' fees, incurred by the Partnership as a result of a breach hereof by such Partner.

Section 8.3.    Transfers.

(a) Except as provided in Article VII hereof, the General Partners shall have no right to transfer an interest in the Partnership. Any Limited Partner shall have the right to transfer all or any part of his interest in the Partnership, upon securing the prior written consent of the General Partners and upon complying with the provisions of subparagraph 8.3(b) below.

(b) In the event any Limited Partner (the "optionor") receives a bona fide written offer to purchase all or any part of his or her limited partnership interest, he or she shall not accept such offer until he or she has first given the option to each General and each of the other Limited Partners (the "optionees") to purchase said interest at the same terms (except for price, which shall be determined pursuant to subsection 8.3(c), below) and none of such options has been exercised. Notice of such option shall be given to each of the optionees by certified mail, return receipt requested, enclosing a copy of the

-23-

bona fide written offer and giving the optionees 45 days within

which to exercise the options so given, unless all optionees sign

a written waiver of said 45 day waiting period.  Exercise of such

options shall be in writing by certified mail to the optionor at

his or her address on the books of the Partnership, return receipt

requested, and shall be effective upon receipt so long as mailed

within the 45-day period.  In the event that two or more optionees

exercise the option, the limited partnership interest shall be

assigned to them in such proportions as their respective shares of

the Partnership profits then held bears to the total shares of

Partnership profits of all such optionees.  In the event that no

Partner exercises the said option, the optionor shall not accept

such bona fide written offer until he or she has then given the

option to the Partnership to purchase said interest at the

purchase price provided in and calculated pursuant to subsection

8.3(c) below, and the Partnership has not exercised said option.

Notice of such option shall be given to the Partnership by

certified mail, return receipt requested, enclosing a copy of the

bona fide written offer and giving the Partnership 45 days within

which to exercise the option, or to waive the option in writing

prior to the expiration of said 45 day period.  Exercise of such

option shall be in writing by certified mail to the optionor at

his or her address on the books of the Partnership, return receipt

requested, and shall be effective upon receipt so long as mailed

-24-

within the 45-day period.  In the event that neither any Partner nor the Partnership exercises the said option, the optionor shall be free to accept the above-mentioned bona fide written offer and transfer his or her limited partnership interest or part thereof, but no such assignee shall become a substituted Limited Partner unless and until the General Partners have consented to the transfer as provided for in subparagraph 8.3(a) above and this Agreement and the Certificate of Limited Partnership filed with the Secretary of State shall have been amended in accordance with law.  Any other Partner who exercises an option to purchase such a limited partnership interest shall, however, become a substituted Limited Partner to the extent of such purchase, and this Agreement and the Certificate of Limited Partnership shall be amended in accordance with the law to reflect the foregoing.  No Limited Partner may accept an oral offer to buy his interest.

(c)  The purchase price payable under subsection 8.3(b) by any Partner or by the Partnership shall be the Appraised Value of the limited partnership interest.

The term "Appraised Value" shall mean the highest price in terms of money that the partnership interest will bring to a seller if offered for sale in the open market and that allows a reasonable amount of time to find a buyer who has knowledge of the value of the partnership interest, neither buyer nor seller being under compulsion to buy or sell.

MID 00837

The Appraised Value of the partnership interest shall be determined as provided in this subparagraph 8.3(c):

The optionor shall give notice ("Initiating Notice") thereof to the optionee that desires to purchase the interest ("Responding Party") which notice shall include an appointment of a first appraiser (the "First Appraiser").

Within thirty (30) days after the service of the Initiating Notice, the Responding Party shall give written notice to the Initiating Party appointing the second appraiser (the "Second Appraiser"). If the Second Appraiser is not so appointed within the time above specified, then the appointment of the Second Appraiser shall be made as hereinafter provided for the appointment of a third appraiser in a case where the First Appraiser and Second Appraiser are unable to agree upon the third appraiser.

The First Appraiser and Second Appraiser so appointed shall meet promptly after the Second Appraiser is appointed and shall agree upon the appointment of a third appraiser (the "Third Appraiser"). In the event they are unable to agree upon such appointment of a Third Appraiser within thirty (30) days after the appointment of the Second Appraiser, then either party, on behalf of both parties, may request the appointment of the Third Appraiser by the American Arbitration Association, Newark, New Jersey.

MID 00838

In the event of the failure, refusal or inability of any appraiser to act, a new appraiser shall be appointed in his stead, which appointment shall be made in the same manner as hereinbefore provided for the appointment of such appraiser so failing, refusing or being unable to act.

Each party shall pay the fees and expenses of the original appraiser appointed by such party, or in whose stead, as above provided, such appraiser was appointed. The fees and expenses of the Third Appraiser, and all other expenses, if any, shall be borne equally by both parties (and each party will bear all of its own costs and expenses in connection with this appraisal proceeding).

Any appraiser designated to serve in accordance with the provisions of this letter shall: (i) take an oath of impartiality upon accepting the appointment; and (ii) be qualified to appraise partnership interests of the type covered by this Agreement.

The appraisers shall determine the fair market value of the partnership interest by a decision contained in a report as of the date ("Valuation Date"), which is the last day of the month in which the Initiating Notice is given.

A decision joined in by two of the three appraisers shall be the appraisal of the appraisers.

The fair market value of the partnership interest shall be determined within ninety (90) days from the date the Third Appraiser has been appointed.

MID 00839

After reaching a decision, the appraisers shall serve the written appraisal report upon the parties to the proceeding.

If, for any reason, the appraisers fail to issue a report concurred in by at least two appraisers within ninety (90) days after the appointment of the Third Appraiser, then the Third Appraiser shall make his appraisal, which shall be determinative, by selecting either the Appraised Value submitted by the First Appraiser or the Appraised Value submitted by the Second Appraiser.

(d)  Notwithstanding anything contained in this Agreement to the contrary, and notwithstanding the provisions contained in Section 7.2 specifically, any and all Limited Partner's interests in the Partnership owned or acquired by any person, corporation, partnership, trust, or any other entity, other than Imperatore, India, Arthur E. Imperatore, Jr. or any trust for Arthur E. Imperatore, Jr. (hereinafter called a "Nonqualified Partner"), shall be subject to a nonassignable, unqualified call option held by the Partnership to purchase at any time all of the Limited Partner's interests owned or held by such Nonqualified Partner at any time, whether or not the Partnership has previously exercised its call option with respect to that Nonqualified Partner.  The Partnership shall exercise its call option at the request of any General Partner and/or at the request

MID 00840

of Limited Partners representing at least fifty (50) percent of the total interests of all Limited Partners.

The transfer of all the Limited Partner's interests owned by any such Nonqualified Partner shall be completed and accomplished in the books of the Partnership and by any and all necessary filings with the Secretary of State of New Jersey and in any other jurisdictions in which the Partnership is qualified to do business within ten (10) days of receipt of written notice by the Nonqualified Partner of such exercise by the Partnership.

The purchase price of the Limited Partner's interests purchased by the Partnership pursuant to its call option herein shall be the price computed under subsection 8.3(c) of this Agreement.

.(e)  Notwithstanding anything contained in this Agreement to the contrary, the General Partner's interest in the Partnership held by Fafner shall be subject to the Partnership's nonassignable, unqualified call option to purchase all of Fafner's General Partner's interest in the Partnership immediately if (i) there occurs a transfer of the stock of Fafner, whether by sale, exchange, gift, bequest or any other transfer of interest, if, following such transfer, any stock interest in Fafner is held by any individual other than Pohan or by any business entity other than one owned 100 percent by Pohan, or (ii) Pohan withdraws from

-29-

MID 00841

Fafner, abandons his stock in Fafner, dies or is declared legally incompetent.

Upon the occurrence of any of the events described above, the Partnership shall exercise its call option respecting Fafner's General Partner's interest in the Partnership at the request of any General Partner other than Fafner or at the request of Limited Partners representing at least fifty (50) percent of the total interest of all Limited Partners.

The transfer of all the General Partner's interest of Fafner pursuant to this subsection shall be completed and accomplished in the books of the Partnership and by any and all necessary filings with the Secretary of State of New Jersey and any other jurisdiction in which the Partnership is qualified to do business within ten (10) days of receipt of written notice by Fafner of such exercise by the Partnership.

The purchase price of Fafner's General Partner's interest purchased by the Partnership pursuant to its call option herein shall be the price computed under subsection 8.3(c) of this Agreement.

(f)  Nothing contained in this Section 8:3, how-ever, shall prevent the interest of a Limited Partner from being (i) transferred or disposed of by will or intestacy; or (ii) transferred or disposed of with the prior written consent of the General Partners by inter vivos gift to or for the benefit of the

MID 00842

Limited Partner's immediate family or immediate family interests. Any and all Limited Partner's interests transferred pursuant to this subsection shall remain subject to the Partnership's call option, as provided in subsection 8.3(d) herein.

For purposes of this subsection, "immediate family" shall mean the spouse, child, father, mother, sister or brother of the Limited Partner and issue of any such persons; and "immediate family interests" shall mean a trust created for the benefit of any member or members of the immediate family, a charitable foundation created by any member or members of the immediate family and a corporation or partnership the majority of the capital or stock interest of which is owned by any member or members of the immediate family.

(g)  In the case of the transfer of a Partner's interest at any time other than the end of the fiscal year of the Partnership, the distributive shares of profits or losses of the Partnership shall be allocated between the transferor and transferee in the ratio of the number of days in such year before and after such transfer.

ARTICLE IX

GENERAL PROVISIONS

Section 9.1.    Certificates, etc..  The General Partners shall promptly have prepared and executed a Certificate of Limited

-31-

MID 00843

Partnership in substantially the same form set forth in Exhibit
"A" hereto, as well as all legally required amendments to
fictitious name or other applications, registrations,
publications, certificates, and affidavits for filing with the
proper governmental authorities and see to the proper
advertisement, publication, and filing thereof for record.

Section 9.2.   Power of Attorney.  Each Limited Partner
hereby makes, constitutes, and appoints the Managing Partner, with
full power of substitution, his or her true and lawful attorney
for him or her and in his or her name, place and stead and for his
or her use and benefit, to sign, file, and record the Certificate
of Limited Partnership in substantially the form set forth in
Exhibit "A" hereto, or any further amendment thereof required
under the New Jersey Uniform Limited Partnership Law (1976) or any
other relevant state's law, and to sign, execute, certify,
acknowledge, file, and record any other instrument referred to in
Section 9.1 hereof or required of the Partnership or Partners by
law in New Jersey, or any other jurisdiction.

Section 9.3.   Insurance Coverage.  The Partnership
shall maintain employment, fire, casualty, liability, product
liability and property damage insurance in amounts customary with
the venture to be undertaken by the Partnership and consistent
with sound commercial practice.

-32-

Section 9.4.   <u>Partners' Relationship Inter Se</u>.  Nothing herein contained shall be construed to constitute any Limited Partner the agent of any other Partner, except as expressly provided herein, or in any manner limit the Partners in the carrying on of their own respective business or activities.

Section 9.5.   <u>Integration</u>.  This Agreement and the Certificate of Limited Partnership represent the entire understanding of the parties with respect to the subject matter hereof.  No termination, revocation, waiver, modification, or amendment of this Agreement or the Certificate of Limited Partnership shall be binding unless in writing and signed by each of the Partners.

Section 9.6.   <u>Notices</u>.  All notices required under this Agreement shall be in writing, duly signed by the party giving such notice and transmitted by prepaid registered or certified mail as follows:

(a)   If given to the Partnership or to the General Partners, to the then principal place of business of the Partnership;

(b)   If given to the Limited Partners, to their respective addresses set forth in this Agreement, or to such other address as a Limited Partner may hereafter designate by written notice to the Partnership.

MID 00845

Section 9.7.  <u>Miscellaneous</u>.  Each of the individual parties hereto represents and warrants that he or she is over the age of eighteen (18) years.  Except as herein otherwise provided to the contrary, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their personal representatives and assigns.  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person or persons may require. Paragraph titles or captions contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision hereof.  This Agreement contains the whole understanding of the parties, and shall be construed in accordance with the laws of the State of New Jersey.

Section 9.8.  <u>Amendment</u>.  This Agreement and the Certificate of Limited Partnership may be amended or modified only by an instrument in writing signed (in counterparts or otherwise) by the Partners.

IN WITNESS WHEREOF, the undersigned have executed this

MID 00846

Agreement on the day and year first above written.

Witness:

_signature_

_signature_

_signature_

_signature_

Witness:

_signature_

Attest:

_signature_
DOMINICK R. ALESSO, Secretary

LIMITED PARTNERS

_signature_ (L.S.)
ARTHUR E. IMPERATORE

_signature_ (L.S.)
INDIA H. IMPERATORE

_signature_ (L.S.)
ARMAND POHAN, Trustee of the
Arthur E. Imperatore, Jr.
1985 Income Trust

_signature_ (L.S.)
EDWARD G. IMPERATORE

_signature_
ARTHUR E. IMPERATORE,
General Partner

FAFNER ENTERPRISES INC.,
General Partner

_signature_
ARMAND POHAN, President

-35-

MID 00847

SCHEDULE A

| General Partner | Initial Capital Contribution | |
|---|---|---|
| FAFNER ENTERPRISES INC., a<br>  Jersey corporation | $2,500.00 | |
| Arthur E. Imperatore | $1,531.00 | |
| | | $ 4,031.00 |
| **Limited Partners** | | |
| Arthur E. Imperatore | $  400.00 | |
| India H. Imperatore | $2,500.00 | |
| Arthur E. Imperatore, Jr.<br>  1985 Income Trust | $2,500.00 | |
| Edward G. Imperatore | $  569.00 | $ 5,969.00 |
| | | $10,000.00 |

SCHEDULE B

| General Partner | Percentage Share |
|---|---|
| FAFNER ENTERPRISES INC., a New Jersey corporation | 25.00 |
| Arthur E. Imperatore | 15.31 |

| Limited Partners | |
|---|---|
| Arthur E. Imperatore | 4.00 |
| India H. Imperatore | 25.00 |
| Arthur E. Imperatore, Jr. 1985 Income Trust | 25.00 |
| Edward G. Imperatore | 5.69 |
| | 100% |

CERTIFICATE OF LIMITED PARTNERSHIP
HADRIAN PROPERTIES LTD.

STATE OF NEW JERSEY )
                    :ss.
COUNTY OF BERGEN    )

We, the undersigned, desiring to form a Limited
Partnership pursuant to the New Jersey Uniform Limited Partnership
Law (1976), N.J.S.A. 42:2A-1, et seq., certify as follows:

1.    The name of the partnership is "HADRIAN
PROPERTIES LTD., a limited partnership" (the "Partnership").

2.    The general purposes of the Partnership are to
purchase, hold, mortgage, build upon, improve, alter, repair,
rent, lease and otherwise deal in real and personal property,
including engaging in the business of owning, leasing, managing
and otherwise dealing with real estate, with improvements thereon.
The Partnership may engage in such other business or businesses
permitted by the New Jersey Uniform Limited Partnership Law (1976)
as may from time to time be deemed advisable by the General
Partners.

3.    The principal place of business of the
Partnership is c/o A-P-A TRANSPORT CORP., 2100 88th Street, North
Bergen, New Jersey 07047.  The Partnership's registered agent at
such address is Arthur E. Imperatore.

10124/40                          MID 00850

4.    (a)   The name and place of residence of each General Partner interested in the Limited Partnership is as follows:

| Name | Place of Residence |
|------|--------------------|
| Arthur E. Imperatore | 10 Claremont Road<br>Fort Lee, New Jersey 07024 |
| Fafner Enterprises Inc. | 2100 88th Street<br>North Bergen, New Jersey 07047 |

(b)   The name and place of residence of the Limited Partners interested in the Limited Partnership are:

Names and Addresses

Arthur E. Imperatore
10 Claremont Road
Fort Lee, New Jersey

India H. Imperatore
One Veteran's Way
Edgewater, New Jersey 07020

Edward G. Imperatore
105 Serpentine Road
Tenafly, New Jersey 07670

Armand Pohan
as Trustee under Trust
Agreement dated December 30,
1985 and called the "Arthur E.
Imperatore, Jr. 1985 Income
Trust"

5.    The term for which the Partnership is to exist is March __, 1987 to April 30, 2079, unless terminated earlier or otherwise extended.

6.    The amount of cash contributed by each Limited Partner is set forth on Schedule A hereto; no other property has been contributed.

7.    There is no additional contribution agreed to be made by any of the Limited Partners, except that with the

    MID 00851

concurrence of a majority in interest of all Partners, Partnership income may be transferred from the income account to the capital account of each Partner.

8.  At the time of liquidation of the Partnership, the initial contributions of Limited Partners are to be returned.

9.  The share of profits or other compensation by way of income, which each Limited Partner shall receive by reason of his contribution, is as set forth in Schedule A hereto.

10. A Limited Partner's interest in the Partnership may be (i) transferred or disposed of by will or intestacy; or (ii) transferred or disposed of with the prior written consent of the General Partners by inter vivos gift to or for the benefit of the Limited Partner's immediate family or immediate family interests. After receipt of a bona fide written offer to purchase, any Limited Partner has the right to transfer all or any part of his interest in the Partnership, but only after he has first offered in writing to sell such interest, or part thereof, first to the other Partners and then to the Partnership. Upon such offer, the other Partners and then the Partnership has the option, for a period of forty-five (45) days each, to purchase such interest, or part thereof at the purchase price set forth in the Limited Partnership Agreement. In the event of a transfer, the transferee is to execute an addendum to the Certificate of Limited Partnership, agreeing to be bound by all the terms and

conditions thereof, and to assume all the obligations of the transferor Partner.  Until and unless any such transferee shall execute such an addendum and unless and until the General Partners have consented to the transfer, the transferee shall be an assignee only and shall not have the rights of a substitute Limited Partner.  A Limited Partner's interest may not be sold, transferred, assigned, pledged, encumbered or otherwise hypothecated in any other manner.  The Partnership shall have and retain a non-assignable, unqualified call option to purchase at any time all of the interest of any Limited Partner other than Arthur E. Imperatore, India H. Imperatore, Arthur E. Imperatore, Jr. or any trust established for Arthur E. Imperatore, Jr. Additionally, the Partnership shall have and retain a non-assignable, unqualified call option to purchase the General Partner's interest held by Fafner Enterprises Inc.  if Armand Pohan retains less than 100% of the stock interest in Fafner Enterprises Inc., if he withdraws from the corporation or abandons his stock in the corporation or if he dies.

      11.  There is no right given to the partners to admit additional limited partners, except as provided herein.

      12.  No Limited Partner has any priority over any other Limited Partner, as to contributions or as to compensation by way of income.

MID 00853

13.  Upon the withdrawal, death, legal incompetency, dissolution or bankruptcy of a General Partner, the other General Partner shall continue the business of the Partnership. In the event of the withdrawal, death, legal incompetency, dissolution or bankruptcy of all General Partners, the Partnership shall be dissolved and liquidated, unless sixty (60) percent of all Limited Partners elect one or more successor General Partner(s) and such General Partner elects to continue the business of the Partnership.

14.  A Limited Partner does not have the right to demand and receive property other than cash in return for his contribution.

IN WITNESS WHEREOF, the undersigned have duly signed, sealed and acknowledged this Certificate of Limited Partnership as of the _13th_ day of March __, 1987.

Witness:

_____

Attest:

_____
DOMINICK R. ALESSO,
Secretary

GENERAL PARTNERS

_____
ARTHUR E. IMPERATORE

FAFNER ENTERPRISES, INC.

_____
ARMAND POHAN, President

-5-                    MID 00854

Witness:

_(signature)_
_____

_(signature)_
_____

_(signature)_
_____

_(signature)_
_____

LIMITED PARTNERS:

_(signature)_
_____
ARTHUR E. IMPERATORE

_(signature)_
_____
INDIA H. IMPERATORE

_(signature)_
_____
ARMAND POHAN, Trustee of the
Arthur E. Imperatore, Jr. 1985
Income Trust

_(signature)_
_____
EDWARD G. IMPERATORE

-6-        MID 00855

SCHEDULE A

| General Partners | Cash Contributed by General Partners | Share of Profits of General Partners |
|---|---|---|
| Arthur E. Imperatore | $1,531.00 | 15.31% |
| Fafner Enterprises Inc. | 2,500.00 | 25.00 |

| Limited Partners | Cash Contributed by Limited Partners | Share of Profits of Limited Partners |
|---|---|---|
| Arthur E. Imperatore | 400.00 | 4.00 |
| India H. Imperatore | 2,500.00 | 25.00 |
| Arthur E. Imperatore, Jr. 1985 Income Trust | 2,500.00 | 25.00 |
| Edward G. Imperatore | 569.00 | 5.69 |

# EXHIBIT B
# TO IMPERATORE, SR. DECLARATION

HADRIAN PROPERTIES LTD.
Assignment and Assumption of Limited Partnership Interest
and Consent of General Partners

1. **Assignment**. Armand Pohan, as sole trustee of the Arthur E. Imperatore, Jr. 1985 Income Trust dated December 30, 1985 (the "Trust"), which Trust owns a 25 percent limited partnership interest (the "Interest") in Hadrian Properties Ltd., a limited partnership organized under the laws of the State of New Jersey ("Hadrian"), hereby assigns, transfers and conveys the entire right, title and interest to the Interest owned by the Trust to Arthur E. Imperatore, Jr.

2. **Assumption**. Arthur E. Imperatore, Jr. hereby (a) assumes and hereby covenants and agrees to pay, perform and discharge punctually and promptly when the same shall be due and payable, or performable, as the case may be, all costs, expenses, liabilities and duties in any way related to or connected with the Interest and (b) agrees to be bound by the Limited Partnership Agreement of Hadrian Properties Ltd. dated March 18, 1987, and any amendments thereto (the "Limited Partnership Agreement").

3. **Consent**. Arthur E. Imperatore and Armand Pohan, general partners of Hadrian, hereby consent, pursuant to Paragraph (f) of Section 8.3 of the Limited Partnership Agreement, to the assignment and transfer of the Interest owned by the Trust to Arthur E. Imperatore, Jr., as set forth above.

4. **Effective Date**. The assignment and assumption set forth herein shall be effective immediately.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands on this 26th day of December, 199 2.

_____
Witness

_____
ARMAND POHAN, Trustee
of the Arthur E. Imperatore,
Jr. 1985 Income Trust

_____
Witness

_____
ARTHUR E. IMPERATORE, JR.

_____
Witness

_____
ARTHUR E. IMPERATORE, General
Partner of Hadrian Properties
Ltd.

_____
Witness

_____
ARMAND POHAN, General Partner
of Hadrian Properties Ltd.