UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JERICHO GROUP, LTD.,                              :
                                                  :
                        Plaintiff,                :
                                                  :
                                                  :
        - against -                               :        No. 07-CV-1792 (RCC) (DCF)
                                                  :
                                                  :        ECF CASE
MIDTOWN DEVELOPMENT, L.P., EDWARD                 :
IMPERATORE and MAURICE STONE,                     :
                                                  :
                                                  :
                        Defendants.               :
-------------------------------------------------------------X

## DECLARATION OF EDWARD W. ROSS

I, EDWARD W. ROSS, declare as follows:

1.      Midtown Development, L.P. ("Midtown"), which is a defendant in the above-
captioned action, is a limited partnership organized under New York law.

2.      Since May 28, 1987, pursuant to a Second Amendment to Certificate of Limited
Partnership of Midtown Development, L.P., Midtown's only general partner has been Jerrart
Venture.

3.      Jerrart Venture is a general partnership organized under Illinois law.

4.      Jerrart Venture's only partners are WR West Side Associates and Hadrian
Properties Ltd.

5.      I am a general partner in WR West Side Associates, a limited partnership
organized under Illinois law.  A copy of the WR West Side Associates Agreement and
Certificate of Limited Partnership, dated February 2, 1987 and a First Amendment to WR West
Side Associates Limited Partnership Agreement, dated December 28, 1992, are attached hereto
as Exhibit A.  There have been no further amendments or counterparts to the WR West Side

Associates Agreement and Certificate of Limited Partnership since the First Amendment, dated December 28, 1992.

6.    Pursuant to the First Amendment to WR West Side Associates Agreement, dated December 28, 1992, the only general partners of WR West Side Associates are me and the Jerrold Wexler Declaration of Trust dated October 15, 1990. Pursuant to that same amendment, the only limited partners of WR West Side Associates are R-WIN Venture, the Jerrold Wexler Revocable Trust dated January 29, 1992, the Susan Wexler Trust Number 18, the Tanya Wexler Trust Number 18, Ira A. Kipnis, Irving J. Markin, and Edward G. Imperatore.

7.    I am a citizen of the United States of America.

8.    My domicile is in the State of Illinois, and my home address is 1240 North Lake Shore Drive, Number 29 A/B, Chicago, Illinois. That was also my home address for all of February and March of 2007. For all of February and March of 2007, I intended, and still intend now, for my domicile to remain in the State of Illinois.

9.    Martin F. Hauselman is the trustee of the Jerrold Wexler Declaration of Trust dated October 15, 1990. His domicile is in the State of Illinois.

10.    R-WIN Venture is a limited partnership organized under Illinois law. I am a partner in R-WIN Venture. The only other partners in R-WIN Venture are Renee Ross, Ilene Ross, Nanci Ross Agostini, and William Ross. Renee Ross, Ilene Ross, Nanci Ross Agostini, and I are all domiciled in the State of Illinois. William Ross is domiciled in the State of Florida.

11.    Susan Wexler Mazzoni is the trustee of the Jerrold Wexler Revocable Trust dated January 29, 1992. Her domicile is in the State of Illinois.

12.    Gregory Ciokajlo is the trustee of the Susan Wexler Trust Number 18. His domicile is in the State of Illinois.

13.    The Tanya Wexler Trust Number 18 has terminated.  The co-trustees of the Tanya

Wexler Trust Number 18 were Philip Rootberg, whose domicile is in the State of Illinois, and

Howard R. Koven.  Mr. Koven is deceased, but his domicile was in the State of Illinois.

14.    By letter dated September 10, 1999, WR West Side was informed that the Tanya

Wexler Trust Number 18 had terminated and that all of the rights and interests of the Tanya

Wexler Trust Number 18 in WR West Side Associates were assigned to Tanya Wexler.  A copy

of that September 10, 1999 letter is attached hereto as Exhibit B.  Although the WR West Side

Associates partnership agreement and certificate of partnership have not been amended since

December 1992, Tanya Wexler is treated as a limited partner in WR West Side Associates for all

purposes, including for purposes of tax reporting.  Tanya Wexler is domiciled in the State of

New York.

15.    Ira A. Kipnis was domiciled in the State of Illinois.  In March 2002, Mr. Kipnis's

rights and interests in WR West Side Associates were assigned to the Ira A. Kipnis Living Trust

dated February 26, 2002.  An Assignment of Limited Partnership Interest and Substitution as

Limited Partner and Consent to Assignment and Substitution and Power of Attorney for this

assignment are attached hereto as Exhibit C.  Ira A. Kipnis and later Alfred R. Lipton, in

succession, were the sole trustees of the Ira A. Kipnis Living Trust dated February 26, 2002.  Mr.

Lipton is domiciled in the State of Illinois.

16.    Mr. Kipnis passed away in May 2002.  On August 11, 2003, the rights and

interests of the Ira A. Kipnis Living Trust dated February 26, 2002 in WR West Side Associates

were assigned to Javid LLC, a limited liability company organized under Illinois law.  Javid LLC

and I, as a general partner of WR West Side Associates, executed a formal consent to assignment

and substitution of limited partner on August 11, 2003.  That Consent to Assignment and

Substitution and Power of Attorney, together with an Assignment of Limited Partnership Interest and Substitution as Limited Partner, are attached hereto as Exhibit D.

17.    David Kipnis and Jeffrey Wolfson are the sole members of Javid LLC.  David Kipnis is domiciled in the State of Illinois.  Jeffrey Wolfson is domiciled in the State of Michigan.

18.    Irving J. Markin was domiciled in the State of Illinois and passed away in October 2001.  From December 1995 until it was terminated in December 2005, Irving Markin's rights and interests in WR West Side Associates were held in the Irving J. Markin Revocable Trust. The trustee of the Irving J. Markin Revocable Trust was Benjamin J. Randall, whose domicile is in the State of Illinois.  By assignments dated December 30, 2005, all of the rights and interests of the Irving J. Markin Revocable Trust in WR West Side Associates were assigned to Anna Garber, Kate Coleman, and Jack Markin.  A copy of those assignments, and a February 21, 2006 letter transmitting them to WR West Side, are attached hereto as Exhibit E.  Although the WR West Side Associates partnership agreement and certificate of limited partnership have not been amended since December 1992, Anna Garber, Kate Coleman, and Jack Markin are treated as limited partners in WR West Side Associates for all purposes, including for purposes of tax reporting.  Anna Garber is domiciled in the State of Massachusetts.  Kate Coleman is domiciled in the State of Illinois.  Jack Markin is domiciled in the State of Wisconsin.

19.    Edward G. Imperatore is domiciled in the State of New Jersey.

20.    I declare under penalty of perjury that the foregoing is true and correct.


Executed within the United States on April _11_, 2007.

EDWARD W. ROSS

# EXHIBIT A
# TO ROSS DECLARATION

10/05/2005 11:49 FAX                    JUPITER REALTY CORP                    ☒002

87150106

87150106

# WR WEST SIDE ASSOCIATES
## AGREEMENT AND
## CERTIFICATE OF LIMITED PARTNERSHIP

This Document prepared by
Ira A. Kipnis
919 North Michigan Avenue
Chicago, Illinois  60611

MID 00857

0/05/2005 11:49 FAX                    JUPITER REALTY CORP                    ☒003

## 3 7 1 5 0 1 0 6

# WR WEST SIDE ASSOCIATES
## AGREEMENT AND
### CERTIFICATE OF LIMITED PARTNERSHIP

THIS AGREEMENT AND CERTIFICATE OF LIMITED PARTNERSHIP (the "Agreement") of WR WEST SIDE ASSOCIATES, an Illinois limited partnership (the "Partnership"), is entered into and executed as of the 2nd day of February, 1987 by and between Jerrold Wexler, and Edward W. Ross, as general partners ("General Partners") and those limited partners of the Partnership designated on Exhibit A attached hereto and made a part hereof. "Partners" without designation as to "General" or "Limited" include the General Partners and the Limited Partners.

### RECITALS:

WHEREAS, the parties desire to form a limited partnership pursuant to the Uniform Limited Partnership Act of the State of Illinois ("ULP") for the purposes and on the terms and conditions hereinafter set forth.

1. The Partners hereby form a limited partnership pursuant to the provisions of the ULPA under the name "WR WEST SIDE ASSOCIATES" or such other name as may hereafter be adopted. All transactions of the Partnership shall be carried on in such name. The General Partners and the Limited Partners shall be the parties designated aforesaid. The addresses of the Partners are set forth on the signature pages hereof. The Partners agree to execute such certificates or documents and do such filings and recordings in the appropriate offices in the States of Illinois and New York as may be required in order to comply with all applicable laws. A Limited Partner may change such address by written notice to the General Partners which notice shall be effective upon receipt.

2. __Purpose.__ The purpose of the Partnership shall be to carry on the business of investing in real property by directly or indirectly acquiring and holding an interest in the Property or in a general or limited partnership owning or acquiring the Property and improving, developing, holding for investment, maintaining, operating, mortgaging, managing, leasing, exchanging, otherwise exploiting and ultimately disposing of the Property; to engage in any other lawful activity permitted under the Act; and to invest in other properties and investments and to engage in any and all activities related and incidental thereto as may be deemed appropriate by the General Partners.

3. __Place of Business and Principal Office.__ The principal place of business of the Partnership is 15th Floor, 919 North Michigan Avenue, Chicago, Illinois 60611, or at such other place within the State of Illinois as the General Partners may designate by notice to the Limited Partners.

0 7 1 5 0 1 0 6

4. <u>Definitions and Glossary of Terms</u>. The following definitions shall be applicable to the terms set forth below as used in this Agreement:

(a)    ADDITIONAL CAPITAL means contributions to the capital of the Partnership made pursuant to Section 6(b).

(b)    ADDITIONAL LIMITED PARTNERS means any Limited Partners of the Partnership admitted subsequent to the date of this Agreement pursuant to the provisions of Section 8(f) hereof.

(c)    AFFILIATE means any Person directly or indirectly through one or more intermediaries, that controls, is controlled by or is under common control with another specified Person or entity, as the case may be.

(d)    CAPITAL ACCOUNT means the separate capital account maintained for each Partner maintained in accordance with Section 6(g) hereof.

(e)    CAPITAL CONTRIBUTION means the aggregate amount of investment in the Partnership, including both initial and Additional Capital contributions, by a Partner or all Partners, as the case may be.

(f)    CASH FLOW means the Partnership's cash funds provided from operations, without deduction for depreciation, but after deduction of cash funds used to pay all other expenses, debt principal and interest payments, capital improvements and replacements, and management and administration fees.

(g)    FINANCIAL STATEMENTS means the Partnership's balance sheets, statements of income, statements of partners' equity and statements of changes in financial position, prepared in accordance with generally accepted accounting principles.

(h)    INTEREST means each Partner's percentage interest in the Partnership as set forth in Exhibit A hereto.

(i)    NET CAPITAL PROCEEDS means all amounts received from a sale, mortgage or refinancing of a mortgage, foreclosure, abandonment, condemnation or other disposition or encumbrance of all or substantially all of the interest of the Partnership in the Property or any portion thereof, any insurance proceeds for reimbursement of a loss as a result of a fire, flood or other casualty to all or substantially all of the Property, less all expenses and tax liabilities attributable to such Net Capital Proceeds, any mortgage or other indebtedness or portion thereof satisfied out of such Net Capital Proceeds, the cost of any improvement, repair or replacement of such property, and any addition to the Reserves, and excluding dispositions of personal

2

10/05/2005 11:50 FAX                    JUPITER REALTY CORP                    ☑005

0 7 1 5 0 1 0 6

property and equipment in the ordinary course of business. Any item included or deducted in determining Net Capital Proceeds shall not be included or deducted in determining Cash Flow.

(j)   NET WORTH means the excess of total assets over total liabilities as determined by generally accepted accounting principles, except that if any of such assets have been depreciated, then the amount of depreciation relative to any particular asset may be added to the depreciated cost of such asset to compute total assets, provided that the amount of depreciation may be added only to the extent that the amount resulting after adding such depreciation does not exceed the fair market value of such asset.

(k)   PARTICIPANT means the holder of an Interest in the Partnership.

(l)   PARTNERSHIP means WR West Side Associates, an Illinois limited partnership.

(m)   PERSON means any natural person, partnership, corporation, trust, association or other legal entity.

(n)   PROFITS or LOSSES means the net profits or losses of the Partnership for federal tax purposes.

(o)   PROPERTY means the real estate located in New York, New York, legally described in Exhibit B hereto, and all improvements now or hereafter constructed thereon.

(p)   PROPERTY MANAGEMENT FEE means the fee paid for day-to-day professional management services in connection with the Partnership's property or investments.

(q)   RESERVES means such amounts set aside at the reasonable discretion of the General Partners to pay for repairs, maintenance, improvements, or contingent or unforeseeable liabilities or obligations which the General Partners deem necessary or appropriate for the operation and protection of the Partnership.

(r)   STANDARD REAL ESTATE COMMISSION means that real estate or brokerage commission paid for the purchase or sale of property which is reasonable, customary and competitive in light of the size, type and location of property.

5.   Term.   The term of the Partnership shall commence February 2, 1987 and shall continue until December 31, 2037, or unless and until all of the assets of the Partnership are sooner converted to cash or its equivalent, or unless and until sooner terminated in accordance with the terms of this Agreement or as otherwise provided by law.

3

MTD 00860

10/05/2005 11:30 FAX                     JUPITER REALTY CORP                          ☑006

3 7 1 5 0 1 0 6

### 6. Capital Contributions and Capital Account.

(a)    Each Partner has made an initial capital contribution in cash equal to the sum of $1,000.00 multiplied by that Partner's Interest as set forth in Exhibit A hereto.

(b) (1)    The General Partners have advised all of the Limited Partners that the Partnership in the future may need additional funds for the cost of operating and improving the Property and other Partnership purposes.  The Limited Partners acknowledge that Additional Capital Contributions may be required from them in accordance with their respective Interests not only for operating capital, but for any proposed Partnership purpose.  When the General Partners, in the exercise of their sole discretion, determine that Additional Capital Contributions are necessary for the purpose of operating capital, the operation of the business and affairs of the Partnership, financing any deficits, or for the making of any capital or other improvements to the Property, or for any other proper Partnership purpose, and if the General Partners shall determine that such funds can best be obtained by additional equity capital or by bank or other borrowings requiring the several, but not joint, guarantees of all Partners, then such additional funds or guarantees shall be made and/or furnished by the General Partners and the Limited Partners in proportion to their Interests and the General Partners shall proceed as set forth below.

(2)    The General Partners shall notify in writing each of the Limited Partners (each of the Partners who are required to make Additional Capital Contributions are referred to sometimes hereafter as "Contributing Partners") of the need for the Additional Capital Contributions, the amount of funds necessary, the intended use of the proceeds, the desired method of financing (whether by borrowing or additional equity capital), the amount of additional funds, or the amount of guaranty liability, required from each Contributing Partner, and such other information as the General Partners shall deem necessary.  The decision as to the method of borrowing or acquiring such Additional Capital Contributions shall be made by the General Partners in their sole and unconfined discretion and such decision, once made, shall be binding upon all of the Contributing Partners.

(3)    Within 15 days after delivery of the aforesaid notice by the General Partners, each Contributing Partner shall by notice in writing delivered to the Partnership (i) agree to contribute the required Additional Capital Contribution in cash, or agree to guarantee his proportionate share of the additional borrowings, as the case may be, in proportion to his Interest; or (ii) notify the Partnership of his refusal to contribute or guarantee (a "Declining Partner").  If any Contributing Partner

4

MTD 00861

10/05/2005 11:30 FAX                    JUPITER REALTY CORP                        ☒007

3 7 1 5 0 1 0 6

shall fail to respond to the initial notice from the General
Partners within said 15 day period, such failure shall be deemed
to be a refusal to participate on the part of the Contributing
Partner failing to respond.

(4) If any Contributing Partner shall fail to
contribute to the Partnership the Additional Capital Contribution
required to be contributed under this Section 6(b) or guarantee
his proportionate share of the additional borrowings (the
"Deficiency"), the General Partners may, in their discretion,
exercise any one or more of the following remedies on behalf of
the Partnership:

(i) Pursue any available remedy or remedies
against the defaulting Contributing Partner in law or in
equity; or, alternatively;

(ii) Advise the non-defaulting Partners that they
may elect, in such proportion as they may determine, to
make such additional contribution by giving notice to
the General Partners of their intention to make such
Additional Capital Contributions within ten (10) days
after receipt of such advice. In the event two (2) or
more Partners desire to make such contribution and are
unable to agree as to the apportionment thereof, each
such Partner shall be entitled to make such contribution
in the ratio that his Interest bears to the total Profit
Interest Percentages of the Partners desiring to make
such contribution. In the event a Partner makes such
contribution, or part thereof, the Partner making such
contribution, to the extent thereof, shall become an
assignee of the Declining Partner's interest under the
Uniform Limited Partnership Act on a pro rata basis.

(iii) Notwithstanding anything to the contrary
herein, the General Partners shall not have the right to
elect the remedy set forth in Section 6(b)(4)(i) above,
against a Declining Partner after such Partner has made
total Additional Capital Contributions equal to the sum
of $2,000,000.00 multiplied by his Interest, but the
General Partners shall continue to have the right to
proceed against such Declining Partner under the remedy
set forth in Section 6(b)(4)(ii).

(iv) No creditor of the Partnership shall have any
rights as a third party beneficiary, or otherwise, by
virtue of any provisions of this Agreement, nor any
right to enforce payment of any Additional Capital
Contributions by any Partner. Anything to the contrary
herein expressed or implied notwithstanding, no Limited
Partner shall be personally liable for any of the debts
of the Partnership or any of the liabilities thereof

MID 00862

10/05/2005 11:50 FAX    JUPITER REALTY CORP    🗎008

3 7 1 5 0 1 0 6

beyond the amount required to be contributed to the capital of the Partnership.

(c)  In the event that the maker of a loan or the issuer of a standby loan commitment to the Partnership secured or to be secured by a mortgage on the Property has a right to an equity interest in the Partnership whether in the form of a limited partnership interest or otherwise, the Interest of each Partner shall be reduced pro-rata to the extent necessary to satisfy such lender's right, such reduction to take place at the time said lender is to acquire its equity interest.

(d)  Each Partner's Interest shall be stated after his name in Exhibit A attached hereto.

(e)  if any Partner advances any funds to the Partnership in excess of his Capital Contribution, the amount of any such advance shall neither enlarge such Partner's Capital Account nor increase his Interest in Profits, Losses, Cash Flow or Net Capital Proceeds but shall be an obligation of the Partnership to such Partner, except that such advances shall be payable or collectable only from Partnership assets and the General Partners shall not be obligated to repay any part thereof unless specifically agreed upon in writing.

(f)  Interest earned on Partnership funds shall inure to the benefit of the Partnership, and Limited Partners individually shall not receive interest on funds contributed by them. No Limited Partner shall be entitled to withdraw any part of his Capital Contribution until dissolution of the Partnership.

(g)  A separate capital account shall be maintained for each Partner in accordance with the following provisions, which are intended to comply with the Treasury Regulations §1.704-1(b) and which shall be interpreted and applied in a manner consistent with such Regulations:

(i)  There shall be credited to the Capital Account of each Partner (1) all cash contributions of such Partner to the Partnership, (2) the fair market value of property contributed to the Partnership (net of liabilities assumed by the Partnership and liabilities to which such contributed property is subject), (3) such Partner's share of profits (including income exempt from tax and gain on sale or disposition of Partnership property), (4) the amount of any liabilities of the Partnership assumed by the Partner, and (5) the amount of any basis increase in Partnership property attributable to investment credit recapture allocated to such Partner (the aggregate of such credits is hereinafter sometimes referred to as the "Partner's Capital Credits"). There shall be debited to the Capital Account of each Partner (1) distributions to such Partner of Cash Flow and Net

6

MID 00863

10/05/2005 11:50 FAX                    JUPITER REALTY CORP                              ☑009

8 7 1 5 0 1 0 6

Capital Proceeds, (2) the fair market value of property distributed to such Partner (net of liabilities assumed by such Partner and liabilities to which such distributed property is subject, (3) such Partner's share of losses or items thereof (including expenditures which can neither be capitalized nor deducted for tax purposes, organization and syndication expenses not subject to amortization, and loss on sale or disposition of Partnership property, whether or not disallowed under the rules of Code Section 267 or 707), (4) the amount of any liabilities of such Partner assumed by the Partnership, and (5) the amount of any basis decrease in Partnership property attributable to investment credit allocated to such Partner (the aggregate of such charges is hereinafter sometimes referred to as the "Partner's Capital Charges"). To the extent that a Partner's Capital Credits exceed such Partner's Capital Charges, such excess is hereinafter referred to as a "positive balance". To the extent that a Partner's Capital Charges exceed such Partner's Capital Credits, such excess is hereinafter referred to as a "deficit balance".

(ii)  Upon the sale or exchange of an interest in the Partnership, (1) if such sale or exchange causes a termination of the Partnership within the meaning of Section 708(b)(1)(B) of the Code, the income tax consequences of the deemed distribution of Partnership property and the deemed immediate contribution of Partnership property to a new partnership (which for all other purposes continues to be the Partnership) shall be governed by the relevant provisions of the Code and the regulations promulgated thereunder, and the Capital Accounts of the Partnership shall be redetermined in accordance with this Agreement; or (2) if such sale or exchange does not cause a termination of the Partnership within the meaning of Section 708(b)(1)(B) of the Code, the Capital Account of the selling or exchanging Partner will be carried over to the transferee Partner to the extent it relates to the transferred interest.

(iii)  If, after capital is contributed pursuant to Sections 6(a), (b) above, and subject to the provisions of Section 6(b), money or property in other than a de minimus amount is contributed to the Partnership in exchange for an interest in the Partnership but the Partnership is not liquidated, the Capital Accounts of the Partners shall be adjusted based on the fair market value of partnership property at the time of such contribution or distribution (taking into account Code Section 7701(g)) and the unrealized income, gain, loss or deduction inherent in such Partnership property which has not previously been reflected in the Capital Accounts shall be allocated among the Partners as if there had been a taxable disposition of the Partnership property at its fair market value on such date. The fair

7

MID 00864

10/05/2005 11:51 FAX                    JUPITER REALTY CORP                          ☒010

3 7 1 5 0 1 0 6

market value of contributed, distributed or revalued property shall be agreed to among the Partners or, if there is no such agreement, shall be determined by appraisal. If property of the Partnership has a fair market value different than its tax basis to the Partnership at the time of contribution, distribution or reevaluation so that the fair market value rather than tax basis of such property is used to determine the Capital Accounts of the Partnership, depletion, depreciation, amortization and gain or loss with respect to such property shall be computed on the basis of its fair market value using the same method and period as used for tax purposes and the Capital Accounts of the Partners shall be adjusted for their respective shares of such depletion, depreciation, amortization, and gain or loss on the basis of fair market value rather than tax basis. Depletion, depreciation, amortization, and gain or loss for tax purposes shall be allocated to each Partner for tax purposes, to the maximum extent possible, to eliminate any disparity between the Capital Accounts of the Partners as if they had been accounted for using tax basis and the Capital Accounts computed using the fair market value of such property. For this purpose, the Capital Account using the tax basis of a Partner who receives a distribution giving rise to a special basis adjustment to Partnership property under Code Section 734(b) shall be adjusted in an amount corresponding to such basis adjustment.

(iv)  Nothing herein shall be construed to impose upon any Partner an obligation to restore a deficit Capital Account upon liquidation or dissolution of the Partnership.

7.  Profits, Losses and Distributions.

(a)  The Profits and Losses of the Partnership, other than Profits and Losses from an event which could give rise to Net Capital Proceeds (whether or not any net capital proceeds are actually generated) shall be allocated for each fiscal year on the books of the Partnership and for federal income tax purposes to and among the Partners in accordance with their respective Interests as shown on Exhibit A hereto.

(b)  The Partnership shall make quarterly distributions (commencing with the calendar quarter subsequent to the one in which the Partnership was formed) of all the Cash Flow generated by the business operations of the Partnership, less such amount set aside for the restoration or creation of Reserves; Cash Flow shall be distributed to and among the Partners in accordance with their respective Interests as shown on Exhibit A hereto.

(c)  Profits from an event which could give rise to Net Capital   Proceeds (whether or not net capital proceeds are actually generated) shall be allocated in an amount equal to the

8

10/05/2005 11:51 FAX                JUPITER REALTY CORP                               ☑011

3 7 1 5 0 1 0 6

Net Capital Proceeds generated from such event in accordance with the provisions of Section 7(e); provided that if the Net Capital Proceeds generated exceed the Profits from the event, the amount of Profits allocated to each Partner with a positive balance in his capital account (determined immediately prior to the event) shall be reduced in proportion to those positive balances until the Profit allocated pursuant to this sentence equals the total profit to be allocated. Any remaining Profit shall first be allocated to the Partners with deficit balances in their Capital Accounts (determined prior to the allocation set forth in the immediately preceding sentence) in proportion to those deficit balances until those balances are equal to zero, and then shall be allocated among the Partners in accordance with their Interests as shown on Exhibit A hereto.

(d)  Losses from an event which would give rise to Net Capital Proceeds (whether or not any Net Capital Proceeds are actually generated) shall be allocated first, to and among those Partners having positive balances in their Capital Accounts (determined immediately prior to the event) in proportion to and to the extent of such positive balances; and second, to and among the Partners in accordance with their respective Interests in cash distributions as shown on Exhibit A hereto.

(e)  Net Capital Proceeds of the Partnership shall be distributed in the following order of priority:

(i)  If the event generating Net Capital Proceeds is not incident to or does not result in the liquidation of the Partnership, Net Capital Proceeds shall be allocated and distributed to and among the Partners in accordance with their Interests in cash distributions as shown on Exhibit A hereto.

(ii)  If the event generating Net Capital Proceeds is incident to results in the liquidation of the Partnership, Net Capital Proceeds therefrom shall be allocated in accordance with Section 10(c), anything herein to the contrary notwithstanding.

(f)  Tax credits shall be allocated to and among Partners in accordance with their Interests. The amount of any recapture of tax credits (including but not limited to investment tax credits) shall be allocated to the Partners.

(g)  No Partner shall have priority over any other Partner either as to return of capital or as to Profits, Losses, or Capital Contributions.

8.  Management of Partnership Affairs.

MID 00866

10/05/2005 11:51 FAX                    JUPITER REALTY CORP                    ☒012

8 7 1 5 0 1 0 6

(a)  The General Partners shall have full, exclusive and complete authority and discretion in the management and control of the business of the Partnership for the purposes herein stated and shall make all decisions affecting the business of the Partnership except as provided in Section 8(g).  The decision of either of the General Partners shall bind the Partnership.

(b)  By way of extension and clarification of the grant of authority in Section 8(a) hereof and not in limitation thereof, the General Partners are specifically authorized and empowered on behalf of the Partnership, except as expressly prohibited by Section 9(g), to:

(i)  acquire interests in properties and investments of every kind and description including, but not limited to the Property;

(ii)  expend the Partnership's capital and revenues in furtherance of the purposes of the Partnership;

(iii)  manage, operate and develop any Partnership properties or investments, and enter into Partnership and operating agreements with others upon such terms, provisions and conditions as the General Partners shall approve; provided, however, that the expenses of operating Partnership properties and investments shall be billed directly to the Partnership and shall not include indirect expenses of the General Partners such as the salaries of its officers and employees and its overhead;

(iv)  enter into and execute (1) agreements and any and all documents and instruments customarily employed in connection with the acquisition, sale, development, and operation of Partnership property, (2) agreements, commitments and any and all documents and instruments customarily employed in financing, (3) receipts, releases and discharges, and (4) all other instruments deemed by the General Partners to be necessary or appropriate to the proper operation or development of Partnership properties or to perform effectively and properly their duties or exercise their powers hereunder.

(v)  sell, lease, exchange or otherwise dispose of all or any portion of the property or the Partnership's assets and investments upon such terms and conditions and for such consideration as the General Partners deem appropriate; provided, however, that no real estate commissions will be paid to Affiliates of any General Partner by the Partnership and provided further that the General Partners will advise the Partners of any proposed sale and give them an opportunity to comment thereon;

10

10/05/2005 11:51 FAX                    JUPITER REALTY CORP                    ☒013

37150106

(vi)   borrow money from banks, other lending institutions and other lenders for any Partnership purpose, and in connection therewith to issue notes, debentures and other debt securities and to pledge, mortgage or hypothecate the Property or assets of the Partnership to secure repayment of the borrowed sums; and to execute and deliver to the holder or holders of loans secure by mortgages on the Property or assets of the Partnership agreements for a deed or deeds in lieu of foreclosure, and do any other things and execute any other documents in connection therewith;

(vii)  employ or retain such individuals, firms or corporations, including a General Partner acting on his own behalf and his Affiliates, for the operation and management of the Property or assets, including, without limitation, supervisors or managing agents, building caretakers, accountants, attorneys, appraisers, architects, engineers and other experts, on such terms and at such compensation as the General Partners shall determine; provided however, that any contract entered into with a General Partner or his Affiliates shall not be less favorable than, and any charges for property or services shall not be in excess of, such terms or charges customarily imposed by non-Affiliates in the same line of business and in the same geographic area; and provided further that such contracts with Affiliates shall have a provision permitting termination by the Partnership upon not more than 60 days notice without penalty;

(viii) employ a Partnership secretary or a Partnership manager to operate under the direction of the General Partners, at the expense of the Partnership;

(ix)   commence, defend and settle actions at law or in equity at the expense of the Partnership;

(x)    hold title to the Property in the name of a land trust, General Partner or any other Person or entity as nominee or agent on behalf of the Partnership, but the name in which the Property is held shall in no way change the interest of the Partnership in the Property; and

(xi)   be reimbursed for all expenses incurred in conducting the Partnership business, all taxes paid by the General Partner in connection with the Partnership business, and all costs associated with the development, organization and operation of the Partnership.

(xii)  to become a general partner of a general or limited partnership which shall own and operate the Property and/or other property.

11

MID 00868

8 7 1 5 0 1 0 6

(c)   The General Partners, their agents and employees shall not be liable or responsible or accountable in damages or otherwise to the Partnership or any of the Partners or their successors or assigns for any acts performed or within the scope of the authority conferred on the General Partners and such agents and employees by this Agreement, including the execution and delivery of deeds in lieu of foreclosure, provided that the General Partners or such agents or employees shall act in good faith and shall not be guilty of willful misconduct or gross negligence.

(d)   Each of the Partners hereby constitutes and appoints Edward W. Ross as the "tax matters partner" of the Partnership for all purposes, pursuant to Sections 6221-6231 of the Internal Revenue Code.   The Partnership shall not be obligated to pay any fees or other compensation to the tax-matters partner in his capacity as such, provided that the Partnership shall reimburse the tax-matters partner for any and all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and other professional fees) incurred by it in its capacity as a tax-matters partner.   The Partnership shall indemnify, defend, and hold the tax-matters partner harmless from and against any loss, liability, damage, cost or expense (including reasonable attorneys' fees) sustained or incurred as a result of any act or decision concerning Partnership tax matters and within the scope of such Partner's responsibilities as tax-matters partner.

(e)   In the event of a distribution of properties made in the manner provided in Section 734 of the Code or in the event of a transfer of any interest in the Partnership permitted by this Agreement made in the manner provided in Section 743 of the Code, the General Partners, on behalf of the Partnership, shall, at the request of any Partner, file an election under Section 754 of the Code in accordance with the procedures set forth in the applicable regulations promulgated thereunder.

(f)   In the event the General Partners determine that additional equity funds are necessary for the operation of the business and affairs of the Partnership and that such funds would most appropriately be obtained by additional equity capital from limited partners, the Partnership may sell additional limited partnership interests in the Partnership to investors ("Additional Limited Partners") on such terms and conditions as the General Partners shall determine, with such Additional Limited Partners having such rights and obligations as the General Partners shall determine.   In furtherance of the foregoing, each Partner hereby agrees and consents to the decrease in the Interests in Profits, Losses, Cash Flow and Net Capital Proceeds allocated to all of the Partners subject to the conditions herein set forth.   Such additional interests may be prior to or on a parity with the interests of the Limited

12

10/05/2005 11:51 FAX                    JUPITER REALTY CORP                    ☑015

3 7 1 5 0 1 0 6

Partners; provided, however, that (i) any dilution of the Interests in Profits, Losses, and cash distributions of the Partners shall be made on a pro rata basis (before giving effect to clause (ii) hereof); and (ii) the General Partners shall first offer the Partners the right to subscribe for a proportionate share, pro rata to their respective Interests, in such additional interests for a 30-day period after the General Partners provide written notice to the Limited Partners of the availability of such additional Interests, and prior to offering said Interests to others.

(g)   Neither the General Partners nor any Affiliates of the General Partners shall have the authority to:

(i)   receive from the Partnership a rebate or give up or participate in any reciprocal business arrangements which would enable them or any Affiliate to do so;

(ii)  do any act in contravention of this Partnership Agreement;

(iii)  confess a judgment against the Partnership in connection with any threatened or pending legal action;

(iv)  possess any Partnership property or assets or assign the rights of the Partnership in specific Partnership property for other than a Partnership purpose;

(v)   without the consent of a majority of eighty per cent (80%) in Interests held by the Limited Partners as a group, cause the Partnership to purchase or lease any property or interests in which the General Partners or their Affiliates have an interest;

(vi)  without the consent of a majority of eighty per cent (80%) in Interests held by the Limited Partners as a group, cause the Partnership to acquire property or interests from any other limited partnership in which the General Partners or any of them or their Affiliates have an interest;

(vii)  cause the Partnership to pay any real estate commissions to the General Partners or Limited Partners or any of them or their Affiliates on resale of Partnership property;

(viii) cause the Partnership to sell or lease to a General Partner any of its properties;

(ix)  cause the Partnership to make any loans to Participants or Affiliates;

13

MID 00870

10/05/2005 11:52 FAX                    JUPITER REALTY CORP                    @016

8 7 1 5 0 1 0 6

(x) cause the Partnership to acquire any properties in exchange for interests in the Partnership; or

(xi) commingle the Partnership's funds with those of any other person or employ or permit another to employ such funds or assets in any manner except for the exclusive benefit of the Partnership.

(h) The General Partners shall use their best efforts, and devote such time as may be necessary to carry out the business of the Partnership and shall promptly take all action which they, in their sole discretion, may deem necessary or appropriate for the organization of the Partnership, investment of Partnership funds and protection of the Property. In particular, the General Partners shall use their best efforts to:

(i) perfect the Partnership by filing a certificate of limited partnership for record in the office of the register of deeds for the counties where the Partnership may be deemed to conduct business;

(ii) cause the Partnership to obtain and keep in force insurance of such types, including but not limited to fire and extended coverage and public liability insurance, in such amounts and with such carriers as will, in the judgment of the General Partners, adequately protect the Partnership and the Property, and to satisfy any judgment, decree, decision, settlement, damage or other loss, first, out of any insurance proceeds available therefor, and second, from Partnership assets and income;

(iii) cause the Partnership to remain in compliance with all statutes and regulations governing the Partnership and its business operations and to cause all Partnership reports, documents and income tax returns to be prepared and timely filed with the appropriate authorities;

(iv) open and maintain bank accounts in the name of the Partnership, deposit therein all funds of the Partnership, arrange for withdrawals only upon the signature of the General Partners and/or their designee or designees, and use such funds solely for the business of the Partnership; provided, however, that any funds not currently needed in the operation of the Partnership business shall be maintained in such interest-bearing accounts insured by an agency of the federal government or invested in such short term obligations (maturing within one year) as may be designed by the General Partners;

(v) not resign as a General Partner, subject to the provisions of Sections 9(e) and 10(b) hereof;

14

MID 00871

10/05/2005 11:52 FAX                    JUPITER REALTY CORP                        ☒017

8 7 1 5 0 1 0 6

(vi) maintain at the expense of the Partnership complete and accurate records and books of account in which shall be entered fully all transactions and expenditures of the Partnership; furnish to the Limited Partners (1) annual reports including information necessary for the preparation of Partners' income tax returns (to be furnished within 75 days after the end of each calendar year), (2) a summary of Partnership activities, of compensation paid to the General Partners and their Affiliates, of distributions of Cash Flow and Net Capital Proceeds to Limited Partners, of proceeds from disposition of property and investments, and of lease payments, (3) a statement of reserves from the gross proceeds of the Partnership's offering, (4) audited Financial Statements prepared by an accountant to be furnished within 90 days after the year end, and (5) annual management statements respecting any property owned by the Partnership within 30 days following the end of each fiscal year of the Partnership.

(i) All the Partners hereby ratify, affirm, acknowledge and agree to be bound by all acts performed or to be performed and contracts entered into or to be entered into on behalf of the Partnership and in the negotiation for properties to be acquired by the Partnership. No party, including a bank or other lending institution, shall be required to inquire as to the purposes for which an act is performed, a contract is entered into or funds are used, it being conclusively presumed that such are to be and shall be used for purposes authorized under this Agreement.

(j) The General Partners, their employees, designees, nominees, officers and directors shall not be liable, and shall be entitled to indemnity (to the extent of the Partnership's assets), for any liability, costs and expenses including reasonable attorneys' fees incurred as a result of any act performed in good faith and within the scope of the authority conferred by this Agreement, or any omission or error in judgment, unless caused by misconduct or negligence.

9.  Rights of Limited Partners.

(a) No Limited Partner, as such, shall take part in the management, conduct or control of the business of the Partnership, or have any power to sign for or bind the Partnership.

(b) Subject to the provisions of Section (6)(b), no Limited Partner shall be subject to assessment or personal liability for any debts or losses of the Partnership in excess of the amount of his Capital Contribution plus his share of undistributed Cash Flow and Net Capital Proceeds.

15

MID 00872

10/05/2005 11:52 FAX                    JUPITER REALTY CORP                    ☒018

# 8 7 1 5 0 1 0 6

(c)    Upon dissolution, each Limited Partner shall have
the right to receive only cash (and not other property) of the
Partnership in return for his Capital Contribution or as to
Profits, Losses, or cash distributions, and if the Partnership
property remaining after the payment or discharge of debts and
liabilities of the Partnership is insufficient to return said
Capital Contributions, the Limited Partners shall have no
recourse against the General Partners or any other Limited
Partner.

(d)    The Limited Partners or their representatives shall
have the right to inspect and copy during normal business hours
any Partnership books, records and such documents as the General
Partners may execute, to have on demand true and full information
of all things affecting the Partnership and a formal account of
Partnership affairs whenever circumstances render it just and
reasonable, and to obtain upon written request and for a proper
purpose a list of names, addresses, Capital Contributions and
Interests of each Limited Partner.

(e)    In the event that a General Partner shall become
bankrupt, or refuse or be unable to act as a General Partner, the
Partners, pursuant to the provisions of Section 10(b) below, may
immediately elect a new and substitute General Partner, who shall
succeed to all the rights of said General Partner pursuant to the
terms of this Agreement.

(f)    Each Limited Partner agrees that he shall not,
directly or indirectly, hypothecate, pledge, grant a security
interest in, transfer or assign his Interest in the Partnership,
except as provided in Section 9(h) and (i).

(g)    Transfers shall be recognized when consented to as
effective on the last day of the calendar month following receipt
by the General Partners of the above-mentioned documents and
fee.    Except as otherwise provided in Section 6(g)(ii), the
Profits, Losses and Cash Flow of the partnership for the year of
transfer shall be allocated between the transferor and the
transferee on a calendar month basis in proportion to the number
of calendar days that each such holder was recognized as the
owner of the Interest transferred during the year without regard
to the date, amount or receipt or any distribution which may have
been made with respect to the Interest transferred; provided that
any Profits or Losses on an event which could give rise to Net
Capital Proceeds shall be allocated to the Partners on the date
such event occurs.

(h)    Upon the death or legal incompetency of an
individual Limited Partner, or upon the bankruptcy, dissolution
or cessation to exist as a legal entity of a Limited Partner not
an individual, the legally authorized representative shall
succeed to all of the rights granted by this Agreement to such
Limited Partner.

MID 00873

3 7 1 5 0 1 0 6

(i) Except as hereinafter provided, no Partner may make any transfer of his Interest in the Partnership or any part thereof other than by <u>bona fide</u> sale. In the event of a contemplated <u>bona fide</u>, <u>inter vivos</u> sale by a Partner of all or any part of his Interest in the Partnership, each of the other Partners shall have the prior right to purchase said Interest or said part thereof in the manner hereinafter provided:

(i) the selling Partner shall forthwith give the Partnership and all the other Partners a true and complete copy of the offer to purchase and written notice of the name and address of the offerer and the price and all terms and conditions of the proposed sale;

(ii) each of the non-selling Partners may, within fifteen (15) days after the mailing of the selling Partner's notice, give notice to the selling Partner and to the remaining Partners, of his desire to exercise his option to purchase his pro rata share (based on the ratio of his Interest in Profits to the aggregate of all Partners, other than the selling Partner's Interest in Profits) of the selling Partner's Interest or portion thereof as is within the contemplated sale upon the terms and conditions and at the price specified in the selling Partner's notice, is hereby granted to the Partners who exercised such first option to acquire (pro rata as among themselves in accordance with their Interests in Profits as of the date of the giving of the original notice) the share to which a Partner has not exercised his first option;

(iii) unless the remaining Partners shall have exercised their options within said 45-day period in such a manner as to purchase all of such offered Interest of the selling Partner, the selling Partner shall be free to dispose of such Interest for an additional period of thirty (30) days but only in the manner and on the terms stated by him in his original notice to the Partnership and the other Partners; in the event that the selling Partner fails to dispose of said Interest or portion thereof during such period, the provisions hereof shall be applicable to any further contemplated disposition by said Partner of his Interest or any portion thereof;

(iv) no purported assignment of any Partner's Interest shall be valid unless made in accordance with the terms and provisions of this Agreement and if such assignment is to a Person not theretofore a party to this Agreement, such assignee shall prior to making of such assignment execute and deliver to the General Partners an instrument in writing signifying his consent (1) to be bound by the terms of this Agreement as then amended and (2) to accept as a

17

10/05/2005 11:52 FAX                    JUPITER REALTY CORP                    ☒020

8 7 I 5 0 I 0 6

Partner all the terms and provisions of this Agreement as then amended, and shall execute and deliver an amendment to the certificate of the Partnership reflecting the assignee's interest as a Partner. The continuing and surviving Partners shall accept as a Limited Partner in this Partnership any assignee who has succeeded to an Interest in the Partnership in accordance with this subparagraph. The assignee of a General Partner's Interest pursuant to this subparagraph shall hold such Interest as a Limited Partner unless the other Partners consent to such assignee becoming a General Partner pursuant to Section 10(b).

(j) Section 9(i) shall not be applicable to any of the following:

(i) an _inter vivos_ gift by a Partner of a portion of or all of his Interest in the Partnership to his spouse, children, grandchildren, parents or brothers or sisters, or to a trust for their benefit, provided such donee executes and delivers prior to the making of such gift the consent and assumption and amendment which is referred to in Section 9(i)(iv) above and provided further that the donee of an Interest of a General Partner shall hold such Interest as a Limited Partner unless the other Partners consent to such donee becoming a General Partner pursuant to Section 10(b);

(ii) a transfer resulting from the death of a Partner, in which event his entire Interest shall pass under the provisions of his last will and testament, or if such Partner shall have died intestate, to his personal representatives, but subject, however, to all the terms and provisions of the Agreement as then amended. If such Partner's Interest is specifically bequeathed, the legatee shall become a Limited Partner upon the execution and delivery of the consent and assumption referred to in Section 9(i)(iv) above. In the event such Partner's Interest passes to his administrators or to his executors and/or trustee under his will, such persons collectively shall become a Limited Partner in the Partnership. In the event that any such administrator, executor and/or trustee shall desire to sell such Interest or portion thereof to any third person, then compliance must be had with the provisions of Section 9(i) hereof, provided that if any such administrator, executor and/or trustee distributes any Interest in kind to the heirs, legatees or beneficiaries as the case may be, then such administrator, executor, and/or trustee need not first offer such Interest to the other Partners as provided in Section 9(i) hereof and such heirs, legatees, or beneficiaries as the case may be, collectively shall succeed to all of the rights, benefits and obligations of such Interest upon their execution and delivery of the consent assumption referred to in Section 9(i)(iv) above. Any

18

10/05/2005 11:52 FAX                    JUPITER REALTY CORP                    ☒021

87150106

transferee of an Interest of a General Partner pursuant to this subparagraph shall hold such Interest as a Limited Partner unless the other Partners consent to such transferee becoming a General Partner pursuant to Section 10(b);

(iii) a transfer resulting from the dissolution and liquidation or partial liquidation of a trust, corporation or partnership (limited or general) that is a Partner, pursuant to which the entire Interest of the Partner is distributed to its beneficiaries, shareholders or partners, as the case may be; in the event such Partner's Interest passes as aforesaid, the recipients of such Interest shall be and become substitute Limited Partners upon execution of a counterpart or Amendment to this Agreement. Any transferee of an Interest of a General Partner shall hold such Interest as a Limited Partner unless the other Partners consent to such transferee becoming a General Partner pursuant to Section 10(b);

(iv) a transfer to any other Partner. Any transferee of an Interest of a General Partner shall hold such Interest as a Limited Partner unless the other Partners consent to such transferee becoming a General Partner pursuant to Section 10(b);

(v) a transfer to members of any Partner's family or to any trust the beneficiaries of which are members of any Partner's family. Any transferee of an Interest of a General Partner shall hold such Interest as a Limited Partner unless the other Partners consent to such transferee becoming a General Partner pursuant to Section 10(b); or

(vi) a transfer to a corporation or partnership controlled or under the common control of, or private foundation created by, any of the persons referred to in (i), (iv) or (v) above. Any transferee of an Interest of a General Partner, shall hold such Interest as a Limited Partner unless the other Partners consent to such transferee becoming a General Partner pursuant to Section 10(b);

(k) The parties intend that the exercise of any rights granted to Limited Partners by this Agreement shall be deemed action affecting only the agreement among the partners and not an action affecting the management and control of the business or otherwise inconsistent with Illinois statutes and law. The exercise of any such right, at the option of the General Partners, shall be conditioned upon the prior receipt by the General Partners of an opinion of legal counsel for the Limited Partners (such counsel to be chosen by the Limited Partners holding a majority of the Interests) satisfactory in form and substance to the General Partners, to the effect that such exercise will neither affect the Limited Partners' limited

19

MID 00876

10/05/2005 11:53 FAX                    JUPITER REALTY CORP                    ☑022

3 7 1 5 0 1 0 6

liability nor have an adverse tax or other legal impact upon the Limited Partnership.

10. Term, Dissolution, Winding-Up and Liquidation.

(a)  The Partnership shall terminate upon (i) December 31, 2036; (ii) the disposition of all Partnership interests in the Property, real estate and other assets, or (iii) the written consent of the General Partners and of Limited Partners owning a majority of 80 per cent of the Interests held by the Limited Partners as a group to dissolve the Partnership or to compel the sale of all or substantially all of the Partnership's assets.

(b)  The  death,  legal  incompetency,  bankruptcy, dissolution (except by way of merger, consolidation or corporate reorganization), assignment for benefit of creditors, withdrawal, retirement, expulsion or transfer of interest of any Partner, shall not cause the dissolution of the Partnership, but instead shall cause the successor in Interest of said Partner to become subject to the terms of this Agreement; provided, however, that a successor to the Interest of a General Partner shall become a Limited Partner with respect to said Interest and a substitute General Partner may be elected by the written consent of Partners owning a majority of the Interests in Profits of the Partners as a group; provided further that the spouse of a General Partner shall  not  be  eligible  for  election  as  a  substitute  General Partner.

(c)  Upon  the  dissolution  of  the  Partnership,  the General Partners shall wind up the affairs and sell or otherwise dispose at fair value of all of the assets of the Partnership as promptly  as  is  consistent  with  obtaining  the  fair  value thereof.  Following the payment of or provision for, all debts and  liabilities  of  the  Partnership  and  all  expenses  of liquidation, and subject to the right of the General Partners to set up such cost reserves as they deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership, the proceeds of the liquidation and any other funds of the Partnership shall be distributed to the Partners in the ratio of the Capital Account balances of each Partner after adjustment of such Capital Accounts for any Profit or Loss in the year of liquidation, any profit or loss realized or to be realized on any property sold or disposed of as part of the liquidation, and any profit or loss which would be realized if any property distributed in kind had been sold at its fair market value by the Partnership.

11.  Power of Attorney.  Each Limited Partner hereby irrevocably makes, constitutes and appoints the General Partners, with full power of substitution, as his true and lawful attorney-in-fact, for him and in his name, place and stead and for his use and benefit to make, execute, acknowledge, file and record the

MID 00877

10/05/2005 11:53 FAX                     JUPITER REALTY CORP                          ☑023

87150106

Agreement, certificates of limited partnership, all amendments thereto, certificates of doing business under an assumed name, or any other certificate, consent, or other instrument that may be required to be filed by the Partnership or the Partners under the laws of any state or other jurisdiction, and any other instruments or documents which may be required by law or which the General Partners deem advisable to file, including, but not limited to, any documents which may be required to effect the continuation of the Partnership, the admission of a substitute Limited Partner, the admission of an Additional Limited Partner, or the dissolution and termination of the Partnership, provided such is in accordance with the terms of this Agreement. It is expressly intended by each of the Limited Partners that the Power of Attorney granted under this Section 11 is coupled with an interest, is irrevocable, shall not be affected by, and shall survive (i) the subsequent transfer or assignment by any Limited Partner of the whole or any portion of his Interest until such time as all actions necessary to effect the substitution of the transferee or assignee thereof shall have been performed, including, but not limited to the execution, acknowledgement and filing of any and all necessary instruments; (ii) the performance of all actions to effectuate the liquidation and winding up of the affairs of the Partnership and to clear title to Partnership property; and (iii) to the extent permitted by law, the subsequent death, legal incompetency, incapacity, disability, merger, bankruptcy, receivership or dissolution of a Limited Partner. In case of a conflict between the provisions of this Agreement (and any amendments hereto) and any document executed or filed by the General Partners pursuant to the Power of Attorney granted herein, this Agreement shall govern. The Power of Attorney is intended to provide a simplified method for execution of documents and not to deprive a Limited Partner of any of his rights.

    12.   _Expenses and Fees of General Partners_.  The General Partners may charge the Partnership for any direct expenses incurred by them in connection with the Partnership's business and all allocable portions of expenses (other than overhead) incurred in connection with both Partnership and other activities, such allocation to be determined on any basis selected by the General Partners consistent with good accounting practices.

    13.   _Amendments_.  Special meetings may be called and amendments to this Agreement may be proposed upon notice by the General Partners or by Limited Partners owning not less than ten percent (10%) of the Interests held by all Partners as a group. Within ten (10) days following such notice, the General Partners shall submit to all the Limited Partners a verbatim statement of any proposed amendment, an opinion of legal counsel as to the legality and effect of such amendment, and the General Partners' recommendations as to the proposed amendment. A vote shall be

MID 00878

10/05/2005 11:55 FAX                    JUPITER REALTY CORP                         @024

0 7 1 5 0 1 0 6

taken at such special meeting or ballots may be submitted by mail. Such amendment shall be approved and become part of this Agreement upon the affirmative vote of all of the General Partners and all of the Limited Partners.

(14) <u>Miscellaneous</u>.

(a) All article and section headings in this Agreement are for convenience of reference only and are not intended to qualify the meaning of any provision.

(b) All pronouns and variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

(c) This Agreement may be executed in two or more counterparts, and all so executed shall constitute one agreement, binding upon each party and his successors in Interest independently and immediately upon execution of this Agreement by a Partner.

(d) This Agreement, and the application or interpretation thereof, shall be governed, exclusively by its terms and by the laws of the State of Illinois.

(e) If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

(f) All notices, requests and demands herein required or permitted to be given or made shall be deemed to be effectively served and delivered when delivered personally or when deposited in the United States certified mail, postage prepaid, return receipt requested, and

> if intended for the Partnership, addressed to the Partnership at the principal office of the Partnership, and

> if intended for a Partner, addressed to the Partner at his address appearing below his name on the signature pages hereof.

or to any such other person and/or at such other address designated by written notice given to the Partnership and all Partners in accordance herewith.

22

MID 00879

10/03/2005 11:53 FAX                    JUPITER REALTY CORP                    ☒025

## 8 7 1 5 0 1 0 6

IN WITNESS WHEREOF the parties have sworn to and caused this Agreement to be executed as of February 2, 1987.

GENERAL PARTNERS

_____
Jerrold Wexler
2800 North Lake Shore Drive
Chicago, Illinois  60657

_____
Edward W. Ross
1240 North Lake Shore Drive
Chicago, Illinois  60610

LIMITED PARTNERS

_____
Jerrold Wexler, as nominee
2800 North Lake Shore Drive
Chicago, Illinois 60657

_____
Edward W. Ross, as nominee
1240 North Lake Shore Drive
Chicago, Illinois  60610

_____
Edward G. Imperatore
Arcorp Properties
Pershing Road
Weehawken, New Jersey  07087

23

MID 00880

8 7 1 5 0 1 0 6

## EXHIBIT A

| GENERAL PARTNERS | INTEREST |
|---|---|
| Jerrold Wexler | 1.0% |
| Edward W. Ross | 1.0% |

| LIMITED PARTNERS | |
|---|---|
| Edward W. Ross, as nominee | 48.0% |
| Jerrold Wexler, as nominee | 48.0% |
| Edward G. Imperatore | 2.0% |

10/03/2006 11:03 FAX          JUPITER REALTY CORP                    ☒027

## EXHIBIT B

## PARCEL 17  I  5 0 I 0 6

BEGINNING at a point in the northerly line of West 38th Street distant 340'-7" westerly from the corner formed by the intersection of the westerly line of Tenth Avenue with the northerly line of West 38th Street;

1. Running thence westerly, along the northerly line of West 38th Street, 109'-5";

2. thence northerly, parallel with the westerly line of Tenth Avenue, 98'-9" to the center line of block;

3. thence easterly, parallel with the northerly line of West 38th Street and along the center line of block, 50'-0";

4. thence northerly, parallel with the westerly line of Tenth Avenue, 46'-4";

5. thence easterly, parallel with the southerly line of West 39th Street, 7'-0";

6. thence northerly, parallel with the westerly line of Tenth Avenue, 7'-0";

7. thence westerly, parallel with the southerly line of West 39th Street, 7'-0";

8. thence northerly, parallel with the westerly line of Tenth Avenue, 45'-5" to a point in the southerly line of West 39th Street;

9. thence easterly, along the southerly line of West 39th Street, 96'-8";

10. thence southerly, along a line forming an angle of 79 -19'-10" on its westerly side with the preceding course, 200'-11 3/4" to the point or place of BEGINNING.

Reserving unto Seller the following described parcel as an easement for railroad transportation purposes:

All that portion of the below described parcel lying below an upper inclined plane having an elevation of 23.61 at the northerly line of West 38th Street, and an elevation of 21.86 at the southerly line of West 39th street bounded and described as follows:

BEGINNING at a point in the northerly line of West 38th Street distant 346'-0" westerly from the corner formed by the intersection of the westerly line of Tenth Avenue with the northerly line of West 38th Street;

1. Running thence westerly, along the northerly line of West 38th Street, 57'-0";

2. thence northerly, along a line forming an angle of 79 -17'-17" on its easterly side with the preceding course, 201'-0" to a point in the southerly line of West 39th Street;

3. thence easterly, along the southerly line of West 39th Street, 57' 0";

871 50106

MID 00882

8 7 | 5 0 | 0 6          87150106

STATE OF ~~ILLINOIS~~ ──) NEW JERSEY
                        ) SS
COUNTY OF ~~C O O K~~ ──) HUDSON

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that EDWARD G. IMPERATORE, personally known to me to the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act as a Limited Partner for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this 18th day of _March_, 198~~8~~.

Commission Expires: $4/0/90$

_____
Notary Public

LISA CACCAVALE-SOTO
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 10, 1990

DEPT-01 RECORDING            $29.25
T#1111  TRAN 3935 03/20/87 11:37:09
#8205 # A *—87—150106
COOK COUNTY RECORDER

10/05/2005 11:53 FAX                    JUPITER REALTY CORP                                    029

3 7 1 5 0 1 0 6

STATE OF ILLINOIS          )
                           )  SS
COUNTY OF C O O K          )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that JERROLD WEXLER, personally known to me to the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, as both a General Partner and a Limited Partner, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this _____ day of _____, 1987.

Commission Expires: _August 21, 1989_____

_Christine Quefeld_
Notary Public

STATE OF ILLINOIS          )
                           )  SS
COUNTY OF C O O K          )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, do hereby certify that EDWARD W. ROSS, personally known to me to the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, as both a General Partner and a Limited Partner, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this _____ day of _____, 1987.

Commission Expires: _August 21, 1989_____

_Christine Quefeld_
Notary Public

10/05/2005 11:54 FAX                    JUPITER REALTY CORP                    ☎030

3 7 1 5 0 1 0 6

## PARCEL III

**BEGINNING** at a point in the northerly line of West 47th Street distant 125'-0" westerly from the corner formed by the intersection of the westerly line of Tenth Avenue with the northerly line of West 47th Street;

1.  Running thence westerly, along the northerly line of West 47th Street, 100'-0";

2.  thence northerly, parallel with the westerly line of Tenth Avenue, 200'-10" to a point in the southerly line of West 48th Street;

3.  thence easterly, along the southerly line of West 48th Street, 100'-0";

4.  thence southerly, parallel with the westery line of Tenth Avenue, 200'-10" to the point or place of BEGINNING.

Reserving unto Seller the following described parcel as an easement for railroad transportation purposes:

All that portion of the below described parcel lying below an upper inclined plane having an elevation of 27.87 at the northerly line of West 47th Street, and an elevation of 30.00 at the southerly line of West 48th street bounded and described as follows:

BEGINNING at a point in the northerly line of West 47rd Street distant 145'-3" westerly from the corner formed by the intersection of the westerly line of Tenth Avenue with the northerly line of West 47th Street;

1.  Running thence westerly, along the northery line of West 47th Street, 56'0";

2.  thence northerly, parallel with the westerly line of Tenth Avenue, 200'-10" to a point in the southerly line of West 48th Street;

3.  thence easterly, along the southerly line of West 48th Street, 56'-0";

4.  thence southerly, parallel with the westerly line of Tenth Avenue, 200'-10" to the point or place of BEGINNING.

Elevations refer to datum used by the Topographical Bureau, Borough of Manhattan which is 2.75 feet above the United States Coast and Geodetic Survey Datum, mean sea level, Sandy Hook, New Jersey.

4.   thence southerly, along a line forming an angle of 89 -17'-17" on its westerly side with the preceding course, 201'-0" to the point or place of BEGINNING.

Elevations refer to datum used by the Topographical Bureau, Borough of Manhattan which is 2.75 feet above the United States Coast and Geodetic Survey Datum, mean sea level, Sandy Hook, New Jersey.

## PARCEL II

BEGINNING at a point in the northerly line of West 43rd Street distant 125'-0" westerly from the corner formed by the intersection of the westerly line of Tenth Avenue with the northerly line of West 43rd Street;

1.   Running thence westerly, along the northerly line of West 43rd Street, 100'-0";

2.   thence northerly, parallel with the westerly line of Tenth Avenue, 200'-10" to a point in the southerly line of West 44th Street;

3.   thence easterly, along the southerly line of West 44th Street, 100'-0";

4.   thence southerly, parallel with the westerly line of Tenth Avenue, 200'-10" to the point or place of BEGINNING.

Reserving unto Seller the following described parcel as an easement for railroad transportation purposes:

All that portion of the below described parcel lying below an upper inclined plane having an elevation of 17.08 at the northerly line of West 43rd Street, and an elevation of 19.18 at the southerly line of West 44th street bounded and described as follows:

BEGINNING at a point in the northerly line of West 43rd Street distant 145'-10" westerly from the corner formed by the intersection of the westerly line of Tenth Avenue with the northerly line of West 43rd Street;

1.   Running thence westerly, along the northerly line of West 43rd Street, 56'-0";

2.   thence northerly, along a line forming an angle of 89 -54'-40" on its easterly side with the preceding course, 200'-10" to a point in the southerly line of West 44th Street;

3.   thence easterly, along the southerly line of West 44th Street, 56'-0";

4.   thence southerly, along a line forming an angle of 89 -54'-40" on its westerly side with the preceding course, 200'-10" to the point or place of BEGINNING.

Elevations refer to datum used by the Topographical Bureau, Borough of Manhattan which is 2.75 feet above the United States Coast and Geodetic Survey Datum, mean sea level, Sandy Hook, New Jersey.

10/05/2005 11:54 FAX                    JUPITER REALTY CORP                                    ☑032

FIRST AMENDMENT TO

<u>WR WEST SIDE ASSOCIATES LIMITED PARTNERSHIP AGREEMENT</u>

This instrument constitutes the first amendment to the Partnership Agreement of WR West Side Associates Limited Partnership, an Illinois limited partnership, dated as of February 2, 1987.

1.  Effective February 2, 1987, Jerrold Wexler transferred and assigned all of his 48% limited partnership interest in the Partnership, which he held as nominee, to the following-named persons, who are admitted to the Partnership as substitute limited partners pursuant to the terms of the Partnership Agreement, effective as of February 2, 1987:

| | |
|---|---|
| To--Howard R. Koven and Philip Rootberg, not personally, but as Successor Trustees of Susan Wexler Trust No. 18 | 11.125% |
| Howard R. Koven and Philip Rootberg, not personally, but as Successor Trustees of Tanya Wexler Trust No. 18 | 11.125% |
| Howard R. Koven, not personally, but as Trustee of JW Family Trusts Number 1 through 20 | 22.25 % |
| Ira A. Kipnis | 1.75 % |
| Irving J. Markin | 1.75 % |
| Total | 48.000% |

2.  Effective February 2, 1987, Edward W. Ross transferred and assigned all of his 48% limited partnership interest in the Partnership, which he held as nominee, to the following-named persons, who are admitted to the Partnership as substitute

12/29/93E-GREEN-WESTSIDE.AME

MID 00887

10/05/2005 11:54 FAX                    JUPITER REALTY CORP                    ☒033

limited partners pursuant to the terms of the Partnership
Agreement, effective as of February 2, 1987:

|                      |         |
|----------------------|---------|
| To--R-WIN Venture    | 44.5 %  |
| Ira A. Kipnis        | 1.75 %  |
| Irving J. Markin     | 1.75 %  |
|                Total | 48.000% |

3.    Effective as of January 1, 1991, Jerrold Wexler
withdrew as a general partner and transferred and assigned to
Jerrold Wexler or his successor(s), not personally, but as
Trustee or as Successor Trustee(s) of the Jerrold Wexler
Declaration of Trust dated October 15, 1990, a 1.0% general
partnership interest in the Partnership.

4.    Jerrold Wexler or his successor(s), not personally, but
as Trustee or as Successor Trustee(s) of the Jerrold Wexler
Declaration of Trust dated October 15, 1990, is admitted to the
Partnership as a substitute general partner pursuant to the terms
of the Partnership Agreement, effective as of January 1, 1991.

5.    Effective December 23, 1992, Howard R. Koven, not
personally, but as Trustee of JW Family Trusts 1-20, transferred
and assigned to Philip Rootberg, not individually, but as
Successor Trustee of the Third Restatement of the Jerrold Wexler
Revocable Trust dated January 29, 1991 (the "JW Revocable
Trust"), all of said trust's 22.25% limited partnership interest
in the Partnership.

6.    Effective December 23, 1992, Philip Rootberg, not
individually, but as Successor Trustee of the JW Revocable Trust,

2

10/05/2005 11:54 FAX                    JUPITER REALTY CORP                    ☑034

is admitted to the Partnership as a substitute limited partner
pursuant to the terms of the Partnership.

    7.    Exhibit A of the Agreement is deleted and Exhibit A
attached hereto is substituted therefor.

    8.    As amended hereby, the Agreement shall remain in full
force and effect.


Dated:    December 28, 1992


Philip Rootberg, not
personally, but as Trustee of
the Jerrold Wexler Declaration
of Trust dated October 15,
1990


Edward W. Ross


Edward G. Imperatore


Howard R. Koven


Philip Rootberg, not
personally, but as successor
trustees of Susan Wexler Trust
No. 18


R-WIN VENTURE

By: _____
        Edward W. Ross
        General Partner


Ira A. Kipnis


Irving J. Markin


Howard R. Koven


Philip Rootberg, not
personally, but as successor
trustees of Tanya Wexler Trust
No. 18


[Signatures continued on following page]


3


MID 00889

10/03/2003 11:54 FAX                    JUPITER REALTY CORP                              035

Philip Hootberg, not
personally but as successor
trustee of the Third
Restatement of the Jerrold
Wexler Revocable Trust dated
January 29, 1991

[Signatures continued from preceding page]

4

MID 00890

## EXHIBIT A

| GENERAL PARTNER | INTEREST |
|---|---|
| Philip Rootberg, not personally, but as Successor Trustee of the Jerrold Wexler Declaration of Trust dated October 15, 1990 | 1 % |
| Edward W. Ross | 1 % |

| LIMITED PARTNERS | |
|---|---|
| R-WIN Venture | 44.5 % |
| Philip Rootberg, not personally, but as Successor Trustee of the Third Restatement of the Jerrold Wexler Revocable Trust dated January 29, 1992 | 22.25 % |
| Howard R. Koven and Philip Rootberg, not personally, but as Successor Trustees of Susan Wexler Trust No. 18 | 11.125% |
| Howard R. Koven and Philip Rootberg, not personally, but as Successor Trustees of Tanya Wexler Trust No. 18 | 11.125% |
| Ira A. Kipnis | 3.5 % |
| Irving J. Markin | 3.5 % |
| Edward G. Imperatore | 2 % |
| Total | 100% |

# EXHIBIT B
# TO ROSS DECLARATION

EISENBERG TANCHUM & LEVY
675 THIRD AVENUE
NEW YORK, NEW YORK 10017

(212) 599-0777

TELECOPIER: (212) 599-0770

MICHAEL L. TANCHUM
RICHARD D. EISENBERG
STEWART L. LEVY

JAMES E. DOHERTY

ELLIOTT D. HEFLER
LETTY M. TANCHUM
OF COUNSEL

September 10, 1999

Ms. Polly Alpert
Jupiter Realty Corporation
919 North Michigan Avenue
Suite 1500
Chicago, Illinois  60611

Re: Tanya Wexler

Dear Polly:

This will confirm that, as we discussed yesterday, Tanya Wexler Trust #18 has terminated and that the interests in W.R. West Side Associates Limited Partnership and in any other partnerships formerly held by Tanya Wexler Trust #18 are now held by Tanya Wexler.  I would appreciate it if you would change your records accordingly.

Best regards.

Sincerely,

Richard D. Eisenberg

RDE/rle

cc:     Tanya Wexler

rde\H:\MDM-WP\23032\LTR\23032LTR.119

# EXHIBIT C
# TO ROSS DECLARATION

## WR WEST SIDE ASSOC L.P.

### ASSIGNMENT OF LIMITED PARTNERSHIP INTEREST AND
### SUBSTITUTION AS LIMITED PARTNER

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Assignor"), a limited partner in WR WEST SIDE ASSOC L.P., an Illinois limited partnership (the "Partnership"), does hereby assign and transfer to:

IRA A. KIPNIS, TRUSTEE, THE IRA A. KIPNIS LIVING
TRUST DATED FEBRUARY 26, 2002
(hereinafter "Assignee")

a 3.5000000% limited partnership interest in the Partnership standing in the name of Assignor on the books of the Partnership, and hereby declares Assignor's intention that Assignee become a substitute limited partner in Assignor's place with respect to the limited partnership interest hereby transferred.

Assignor does hereby irrevocably constitute and appoint the General Partner of the Partnership attorney in fact to transfer the said limited partnership interest on the books of the Partnership and to take any and all other actions necessary to make such substitution.

The effective date of the foregoing assignment and substitution for tax and all other purposes shall be:

March 15, 2002

ASSIGNOR:

Signature: _____
Ira A. Kipnis

Date: March 25, 2002

## CONSENT TO ASSIGNMENT AND SUBSTITUTION
## AND POWER OF ATTORNEY

The undersigned hereby accepts the assignment and substitution set forth above, agrees to become a limited partner of WR WEST SIDE ASSOC L.P., an Illinois limited partnership (the "Partnership"), and agrees to abide by all of the terms of the Amended and Restated Agreement of Limited Partnership dated as of _____ (the "Partnership Agreement") as if the undersigned had been an original signatory thereto.

In connection therewith, the undersigned specifically grants a power of attorney to the General Partner of the Partnership in conformance with Section _____ of the Partnership Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Consent to Assignment and Substitution as of the date indicated below.

| | |
|---|---|
| Signature: | _____ |
| Print Name: | Ira A. Kipnis, Trustee, The Ira A. Kipnis Living Trust Dated February 26, 2002 |
| Street | 209 East Lake Shore Drive, Apt. #5E |
| City, State, Zip: | Chicago, IL 60611 |
| Tax .ID Number: | 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 |
| Date: | March 25, 2002 |

## CONSENT OF GENERAL PARTNER

The undersigned, General Partner of the Partnership, hereby consents to the foregoing assignment and substitution.

WR WEST SIDE ASSOC L.P.

By     _____
       *Print name and title*

# EXHIBIT D
# TO ROSS DECLARATION

## CONSENT TO ASSIGNMENT AND SUBSTITUTION
## AND POWER OF ATTORNEY

The undersigned hereby accepts the assignment and substitution set forth above, agrees to become a limited partner of WR WEST SIDE ASSOC L.P., an Illinois limited partnership (the "Partnership"), and agrees to abide by all of the terms of the Amended and Restated Agreement of Limited Partnership dated as of _____ (the "Partnership Agreement") as if the undersigned had been an original signatory thereto.

In connection therewith, the undersigned specifically grants a power of attorney to the General Partner of the Partnership in conformance with Section _____ of the Partnership Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Consent to Assignment and Substitution as of the date indicated below.

Signature:
Print Name:        David I. Kipnis, Member
                   JAVID LLC, an Illinois limited liability company

Street             2141 West Churchill Street

City, State, Zip:  Chicago, IL 60647

Tax .ID Number:    20-0134350

Date:              August 11, 200

## CONSENT OF GENERAL PARTNER

The undersigned, General Partner of the Partnership, hereby consents to the foregoing assignment and substitution.

WR WEST SIDE ASSOC L.P.

By _____
   *Print name and title*

## WR WEST SIDE ASSOC L.P.

## ASSIGNMENT OF LIMITED PARTNERSHIP INTEREST AND SUBSTITUTION AS LIMITED PARTNER

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Assignor"), a limited partner in WR WEST SIDE ASSOC L.P., an Illinois limited partnership (the "Partnership"), does hereby assign and transfer to:

### JAVID LLC
An Illinois Limited Liability Company
(hereinafter "Assignee")

a 3.5000000% limited partnership interest in the Partnership standing in the name of Assignor on the books of the Partnership, and hereby declares Assignor's intention that Assignee become a substitute limited partner in Assignor's place with respect to the limited partnership interest hereby transferred.

Assignor does hereby irrevocably constitute and appoint the General Partner of the Partnership attorney in fact to transfer the said limited partnership interest on the books of the Partnership and to take any and all other actions necessary to make such substitution.

The effective date of the foregoing assignment and substitution for tax and all other purposes shall be:

August 11, 2003

ASSIGNOR:

Signature: _____

Alfred R. Lipton, Trustee, Ira A. Kipnis Living Trust dated February 26, 2002

Date: August 11, 2003

# EXHIBIT E
# TO ROSS DECLARATION

# RANDALL & KENIG LLP

*455 North CityFront Plaza Drive*
*NBC Tower*
*Suite 2510*
*Chicago, Illinois 60611*
*Telephone: 312 / 822-0800 • Fax: 312 / 822-0215*

February 21, 2006

**Benjamin J. Randall**
**312/845-2510**
brandall@randall-law.com

***Via Overnight Delivery***
Mr. Edward Ross
c/o WR West Side Associates L.P.
401 North Michigan, 13th Floor
Chicago, Illinois 60611

Re:    WR West Side Associates L.P.

Dear Ed:

As Trustee of the Irving J. Markin Revocable Trust I have assigned all interest in WR West Side Associates to Irv's children.

Enclosed are the following Assignment of Limited Partnership Interest agreements for the above mentioned limited partnership dated as of December 30, 2005, by and between Benjamin J. Randall, as Trustee of the Irving J. Markin Revocable Trust, Assignor, assigning all of the three point five percent (3.5%) partnership interest in the Partnership to the following Assignees:

1.    Anna Garber – 1.167%
2.    Jack Markin – 1.166%
3.    Kate Coleman – 1.167%

The Assignments contain the address of each Assignee.

Should you have any questions, please do not hesitate to call.

Very truly yours,

Benjamin J. Randall

BJR/sdk
Enclosures
cc:    Anna Garber
       Jack Markin
       Kate Coleman

BRANDALL/568897.1 February 21, 2006 (2:24pm)

## ASSIGNMENT AND ASSUMPTION OF LIMITED PARTNERSHIP INTEREST

**THIS ASSIGNMENT AND ASSUMPTION OF LIMITED PARTNERSHIP INTEREST** (hereinafter referred to as the "Assignment") is made as of the 30th day of December, 2005 by and between Benjamin J. Randall not personally or individually but solely as trustee under the Irving J.Markin Revocable Trust pursuant to a Trust Agreement dated December 14, 1995 (hereinafter referred to as "Assignor") and Anna Garber whose address is 37 Clyde Street, Newton, Massachusetts 02460 (hereinafter referred to as "Assignee").

### W I T N E S S E T H:

**WHEREAS**, Assignor is a limited partner of WR West Side Associates, L. P., an Illinois limited partnership (hereinafter referred to as the "Partnership"); and

**WHEREAS**, Assignor owns a Three point Five Percent (3.5%) limited partnership interests in and to the Partnership (said interest is hereinafter referred to as the "Assignor's Interest"); and

**WHEREAS**, Assignor pursuant to the Trust Agreement establishing the Irving J.Markin Revocable Trust desires to transfer to Assignee one-third of Assignor's Interest which is a One point One Six Seven Percent (1.167%) Interest in the Partnership (hereinafter referred to as the "Assigned Interest").

**NOW, THEREFORE**, in consideration of Ten and No/100 Dollars ($10.00) in hand paid and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.  <u>Assignment of Assigned Interest</u>. Assignor does hereby assign and transfer to Assignee the Assigned Interest.

2.  <u>Acceptance of Assignment</u>. Assignee hereby accepts the foregoing assignment of the Assigned Interest and Assignee hereby assumes all obligations related to Assigned Interest accruing from and after the date hereof.

**IN WITNESS WHEREOF**, the parties hereto have executed this Assignment as of the day and year first above written.

ASSIGNOR:

Benjamin J. Randall, not personally
but solely as Trustee under the
Irving J. Markin Revocable Trust

ASSIGNEE:

Anna Garber

BRANDALL/568604.1

## ASSIGNMENT AND ASSUMPTION OF LIMITED PARTNERSHIP INTEREST

**THIS ASSIGNMENT AND ASSUMPTION OF LIMITED PARTNERSHIP INTEREST** (hereinafter referred to as the "Assignment ") is made as of the 30th day of December, 2005 by and between Benjamin J. Randall not personally or individually but solely as trustee under the Irving J. Markin Revocable Trust pursuant to a Trust Agreement dated December 14, 1995 (hereinafter referred to as "Assignor") and Jack Markin whose address is 1181 Savannah Road Mt. Horeb, Wisconsin 53572 (hereinafter referred to as "Assignee").

## W I T N E S S E T H:

**WHEREAS**, Assignor is a limited partner of WR West Side Associates, L. P., an Illinois limited partnership (hereinafter referred to as the "Partnership"); and

**WHEREAS**, Assignor owns a Three point Five Percent (3.5%) limited partnership interests in and to the Partnership; and

**WHEREAS**, Assignor pursuant to the Trust Agreement dated December 14, 1995 establishing the Irving J. Markin Revocable Trust desires to transfer to Assignee one-third of Assignor's Interest which is a One point One Six Six Percent (1.166%) Interest in the Partnership (hereinafter referred to as the "Assigned Interest").

**NOW, THEREFORE**, in consideration of Ten and No/100 Dollars ($10.00) in hand paid and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.    <u>Assignment of Assigned Interest</u>.  Assignor does hereby assign and transfer to Assignee the Assigned Interest.

2.    <u>Acceptance of Assignment</u>.  Assignee hereby accepts the foregoing assignment of the Assigned Interest and Assignee hereby assumes all obligations related to Assigned Interest accruing from and after the date hereof.

**IN WITNESS WHEREOF**, the parties hereto have executed this Assignment as of the day and year first above written.

ASSIGNOR:

Benjamin J. Randall, not personally but solely as Trustee under the Irving J. Markin Revocable Trust

ASSIGNEE:

Jack Markin

BRANDALL/568604.1

## ASSIGNMENT AND ASSUMPTION OF LIMITED PARTNERSHIP INTEREST

**THIS ASSIGNMENT AND ASSUMPTION OF LIMITED PARTNERSHIP INTEREST** (hereinafter referred to as the "Assignment") is made as of the 30th day of December, 2005 by and between Benjamin J. Randall not personally or individually but solely as trustee under the Irving J.Markin Revocable Trust pursuant to a Trust Agreement dated December 14, 1995 (hereinafter referred to as "Assignor") and Kate Coleman whose address is 1410 N. State Pkwy, Apt. 9B Chicago, Illinois 60610 (hereinafter referred to as "Assignee").

### W I T N E S S E T H:

**WHEREAS**, Assignor is a limited partner of WR West Side Associates, L. P., an Illinois limited partnership (hereinafter referred to as the "Partnership"); and

**WHEREAS**, Assignor owns a Three point Five Percent (3.5%) limited partnership interests in and to the Partnership (said interest is hereinafter referred to as the "Assignor's Interest"); and

**WHEREAS**, Assignor pursuant to the Trust Agreement establishing the Irving J.Markin Revocable Trust desires to transfer to Assignee one-third of Assignor's Interest which is a One point One Six Seven Percent (1.167%) Interest in the Partnership (hereinafter referred to as the "Assigned Interest").

**NOW, THEREFORE**, in consideration of Ten and No/100 Dollars ($10.00) in hand paid and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.     <u>Assignment of Assigned Interest</u>. Assignor does hereby assign and transfer to Assignee the Assigned Interest.

2.     <u>Acceptance of Assignment</u>. Assignee hereby accepts the foregoing assignment of the Assigned Interest and Assignee hereby assumes all obligations related to Assigned Interest accruing from and after the date hereof.

**IN WITNESS WHEREOF**, the parties hereto have executed this Assignment as of the day and year first above written.

ASSIGNOR:

Benjamin J. Randall, not personally but solely as Trustee under the Irving J. Markin Revocable Trust

ASSIGNEE:

Kate Coleman

BRANDALL/568604.1