UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JERICHO GROUP, LTD.,

                        Plaintiff,

       -against-

MIDTOWN DEVELOPMENT, L.P., EDWARD
IMPERATORE and MAURICE STONE,

                      Defendants.

-------------------------------------------------------------X

No. 07-CV-1792 (RCC) (DCF)

ECF CASE

# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO REMAND ACTION
# TO THE SUPREME COURT, NEW YORK COUNTY

HERZFELD & RUBIN, P.C.
ATTORNEYS FOR PLAINTIFF
40 WALL STREET
NEW YORK, NEW YORK 10005

TABLE OF CONTENTS

THE FACTS REGARDING DEFENDANTS' SUCCESSIVE NOTICES OF REMOVAL ....... 1

ARGUMENT ..................................................................................................................... 3

I   DEFENDANTS' REQUEST FOR LEAVE TO FILE YET ANOTHER REMOVAL
    NOTICE SHOULD BE DENIED .................................................................................. 3

II  IF DEFENDANTS ARE PERMITTED TO FILE A THIRD NOTICE  OF REMOVAL,
    JERICHO IS ENTITLED TO DISCOVERY  BEFORE THE REMAND MOTION IS
    DETERMINED ............................................................................................................ 7

III THE COURT SHOULD IN ANY EVENT ABSTAIN FROM ADJUDICATING THIS
    CASE  ....................................................................................................................... 12

    A.   There Is Indisputably A Contemporaneous Case  In The New York State Courts, As
    Required  By The Colorado River Abstention Doctrine .................................................... 12

    B.   Remand Of This Case, Rather Than Dismissal, Is Sought ........................................... 13

    C.   The Colorado River Factors Weigh In Favor Of Abstention ........................................ 13

         1.   Avoidance of Piecemeal Litigation ............................................................. 14

         2.   Issues of State Law .................................................................................... 15

         3.   Protection of Rights of The Party Choosing the Federal Forum .............................. 15

         4.   The Order In Which Jurisdiction Was Obtained ....................................................... 16

         5.   Jurisdiction Over A Res ...................................................................................... 16

         6.   Inconvenience of Forum ................................................................................... 17

    D.   Defendants' Effort At Forum Shopping Also Weighs In Favor Of Abstention .......... 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JERICHO GROUP, LTD.,

No. 07-CV-1792 (RCC) (DCF)

                   Plaintiff,

ECF CASE

      -against-

MIDTOWN DEVELOPMENT, L.P., EDWARD
IMPERATORE and MAURICE STONE,

                 Defendants.
-------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO REMAND ACTION
### TO THE SUPREME COURT, NEW YORK COUNTY

      This memorandum is submitted on behalf of plaintiff Jericho Group, Ltd.,

("Jericho"), in further support of its motion to remand this action to the Supreme Court, New

York County. As shown below, defendants have failed to shoulder their heavy burden of

demonstrating that this case belongs in this Court.

### THE FACTS REGARDING DEFENDANTS'
### SUCCESSIVE NOTICES OF REMOVAL

      Defendant Midtown Development, L.P. ("Midtown") is a New York Limited

Partnership. Defendants represented to this Court, in their original Notice of Removal and an

Amended Notice of Removal, that at the time this action was commenced in the State court and

at the time of removal, "Midtown's only general partners were and are Arthur E. Imperatore and

Edward W. Ross." See paragraph 6 of the Amended Notice of Removal, annexed as Exhibit G

to March 29, 2007 affidavit of Herbert Rubin in support of this motion (emphasis added). The

status of these individuals as citizens of New Jersey and Illinois was cited in support of the

Court's diversity jurisdiction over this matter.

Upon being confronted with evidence inconsistent with this representation in plaintiff's moving papers, defendants have been forced to acknowledge in their opposing papers that the representation was completely false. Arthur Imperatore and Edward Ross were <u>not</u> Midtown's only general partners at the times specified. Indeed, they were not general partners at all, nor were they even limited partners of Midtown. Instead, according to defendants' new version of the facts, Midtown's "only" general partner is another partnership, Jerrart Venture, the constituent components of which consist of a labyrinthine combination of partnerships, a corporation, trusts and limited liability companies, as well as individuals.

Plaintiff Jericho is a citizen of New York. Defendants assert in their opposing papers that none of the numerous entities and individuals who have direct or indirect interests in Midtown is a citizen of New York, except for one individual whose citizenship is claimed to be irrelevant for purposes of determining if diversity exists. According to defendants, these purported facts warrant the filing of a Second Amended Notice of Removal to "supplement" or "clarify" what was contained in the two prior Notices (see opposing Memorandum of Law, pp. 14-15), and the retention of jurisdiction by this Court. As shown below, no such permission to "clarify" the flagrantly false representations in the earlier Notices should be granted. Further, as is also shown below, even if remand were not required based on the initial false Notices of Removal, Jericho would be entitled to discovery regarding the relevant facts before determination of the remand motion.

**ARGUMENT**

**I**

**DEFENDANTS' REQUEST FOR LEAVE TO FILE YET
ANOTHER REMOVAL NOTICE SHOULD BE DENIED**

It is axiomatic that generally, a notice of removal must be filed, and if necessary, amended, within thirty days after the receipt of the initial state court pleading. 28 U.S.C. § 1446; Wyant v. National Railroad Passenger Corp., 881 F.Supp. 919, 924 (S.D.N.Y. 1995). After this thirty-day period, a party may not amend its notice of removal to remedy a substantive defect. Wyant, 881 F.Supp at 924 (quoting Stuart v. Adelphi Univ., 1994 U.S. Dist. LEXIS 11803 (S.D.N.Y. 1994). Moreover, this thirty day time limitation is a strictly applied rule of procedure and, as such, un-timeliness is a ground for remand. Forum Insurance Co. v. Texarkoma Crude and Gas Co., 1993 U.S. Dist. LEXIS 8463 (S.D.N.Y. 1993).

Thus, "[c]ourts generally agree" that, subsequent to the expiration of the thirty days, "leave to amend a notice of removal should be given *only* when the proposed amendments are technical in nature or merely serve to clarify what was contained in the original notice for removal." Wyant, , 881 F.Supp at 924 (internal quotations omitted, emphasis added). It is clear that with the passage of the thirty day time frame, leave to make amendments, such as the one that Midtown now proposes, that seek to remedy a fundamental defect and attempt to add new ground for removal, should not be granted. Id.; Conticommodity Services Inc. v. Lemme, 1983 U.S. Dist. LEXIS 18851 (S.D.N.Y. 1983).

At the outset of this removal proceeding, it was, exclusively, defendants' burden to establish their entitlement to a federal forum by competent proof. R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F. 2d 651, 655 (2d Cir. 1979). Defendants, as the removing parties, were given this heavy burden because removal jurisdiction "implicates significant

3

federalism concerns and abridges the deference courts generally give to a plaintiff's choice

forum." Frontier Insurance Co. v. Nac Reinsurance Corp., 111 F.Supp.2d 376, 378 (S.D.N.Y.

2000) (quoting Caterpillar v. Williams, 482 U.S. 386, 391-392 (1987); In re NASDAQ Market

Makers Antitrust Litigation, 929 F. Supp. 174, 178 (S.D.N.Y. 1996)).

   In order for defendants to overcome these hurdles, it was their obligation to prove

complete diversity. If defendants' notice left the court with any doubt that complete diversity

existed, by necessity the court would be required to rule against removeability. See Lupo v.

Human Affairs International, Inc., 28 F. 3d 269, 274 (2d Cir. 1994). Pursuant to the U.S.

Supreme Court's ruling in Carden v Arkona Assocs., as a partnership, defendants had to show

that every one of Midtown's general and limited partners were diverse from Jericho in order to

prove complete diversity. 494 US 185 (1990). Failure to do so would clearly require remand.

See Lupo, 28 F. 3d at 274.

   It is now clear from its untimely attempt to amend that defendants did in fact fail

to establish that the various entities that comprise Midtown's partnership structure were diverse

from Jericho. Defendants' original Notice of Removal and their first Amended Notice of

Removal not only falsely identified Midtown's general partners, but failed to identify any of at

least thirty other entities and individuals whose citizenship is now claimed to be relevant to the

diversity analysis. Thus on their face, defendant's original and first amended petitions were

clearly inadequate to confer removal jurisdiction and, as stated before, this failure is grounds for

remand. See Id.; See also Conticommodity Services, Inc., 1983 U.S. Dist. LEXIS 18851.

   Defendant's failure is analogous to the removing party's failure, in

Conticommodity, to properly state his own State of residency in his removal notice. 1983 U.S.

Dist. LEXIS 18851. Rather than stating that he was a resident of New Jersey, the removing

4

papers improperly stated that he was a citizen of New York. <u>Id</u>.  In fact, the other party was also

a resident of New York. <u>Id</u>.  After thirty days had passed the removing party sought to amend his

Notice of Removal arguing, as do defendants, that the factual underpinnings necessary for

federal jurisdiction did in fact exist. <u>Id</u>.  However, this Court stated:

> "defendant seeks to do more than to merely round out existing allegations
> which are incomplete in his original petition.  Defendant seeks to file an
> amendment which controverts his original petition. … [D]efendant's
> proposed amendment is more analogous to the assertion of an entirely new
> ground for removal than it is to a clarification or amplification of an ill-
> pleaded allegation.  <u>Defendant seeks leave to delete a ground for remand
> and insert in its stead a proper jurisdictional allegation which will provide
> a ground for removal.  This court finds this impermissible.</u>" <u>Id</u>.

(emphasis added).

Here too, defendants seek leave to delete a ground for remand and insert in its

stead a proper jurisdictional allegation which will provide a ground for removal.  This attempt is

impermissible.  Manifestly, they "seek[ ] to do more than merely round out existing allegations

which are incomplete."  As in <u>Conti Commodity</u>, "defendant seeks to file an amendment which

controverts his original petition."  This is may not do.

Midtown's pretense that their proposed amendments are a "supplement" to their

allegations of diversity is sheer sham.  The four cases that they cite at pp. 14 and 15 of their

memorandum as supporting claims of a "supplement" clearly are inapplicable.  Rather than

supporting defendants they support the motion to remand.

In <u>Cox v. Livingston</u> five plaintiffs with "closely related claims" <u>commenced</u> a

diversity action in the United States District Court for the Southern District of New York. 407 F.

2d 392. One of the plaintiffs improperly pleaded the amount in controversy and moved to amend

his <u>complaint</u>. Thus, <u>Cox</u> in no way addresses the issue at hand, namely, can defendants be

granted leave to amend their <u>Notice of Removal</u>.  Furthermore, the <u>Cox</u> court did not have to

deal with the important consideration of deference to the plaintiff's choice of forum because there the plaintiffs chose to file their claims federal court. Compare to <u>Frontier Insurance Co. v. Nac Reinsurance Corp.</u>, 111 F.Supp. 2d 376, 378 (S.D.N.Y. 2000) (stating that the removing party bears a heavy burden of proving federal jurisidctiion because federal courts must be ever mindful of giving  deference to the courts of plaintiff's choice forum.)

In <u>Grow Group, Inc. v. Jandernoa</u>, another of defendants' cases, defendants' Notice of Removal failed to give proper information regarding plaintiff corporation's principal place of business and citizenship. 1995 U.S. Dist. LEXIS 1686. This mistake was largely due to the plaintiff corporation's failure to properly set forth these facts in its Summons with Notice (no complaint had been filed). <u>Id.</u> Additionally, although the notice to remove did state the parties' citizenship at the time of removal, it did not meet the largely technical requirement of reciting diversity at the time of case commencement. <u>Id</u>. The <u>Grow</u> court allowed defendant to amend because "considerations of justice favor permitting amendment of the removal notice since no complaint has been filed in this action and the Summons with Notice provided only limited information." <u>Id.</u> Here, a complaint has been filed.  Even more to the point, defendants' defective removal notice fails to provide information that <u>only</u> defendant Midtown possesses. Midtown can only blame itself for not being honest and forthright about its true Partnership structure. And defendants cannot now seek to change a clearly defective removal notice to provide new ground for removal.

<u>Stuart v. Adelphi University</u> also cited by defendants, allowed an untimely amendment that merely clarified statements made in the original notice of removal regarding service of process and removal consent regarding individual defendants. 1994 U.S. Dist. LEXIS 11803. Clearly, here, defendants attempt much more than to clarify "statements regarding service

6

of process." They seek a radical, wholesale revision of their diversity allegations. If defendants have failed to provide this necessary information until now, they cannot do so now in this untimely manner.

In CBS, Inc. v. Snyder, the last case on which defendants rely, the court allowed the removing party to cure a defect by an untimely amendment of his removal notice, to make the routine recital that the respective citizenships of CBS and Snyder did not change between the time the proceeding was commenced and the time it was removed. 762 F.Supp. 71, 75 (S.D.N.Y.1991). Again, the defect discussed therein was the merest technicality. The removing party had properly stated the citizenship of the parties at the time of commencement. Here, there was a complete misstatement of the facts regarding Midtown's various partners. The citizenship of said partners is the critical fact that determines the citizenship of Midtown. Carden v Arkona Assocs., 494 US 185 (1990). Midtown's complete misstatement of these critical facts in such a fundamental flaw that it cannot now be cured by an untimely amendment.

## II

### IF DEFENDANTS ARE PERMITTED TO FILE A THIRD NOTICE OF REMOVAL, JERICHO IS ENTITLED TO DISCOVERY BEFORE THE REMAND MOTION IS DETERMINED

Should the Court determine that remand is not required because of the misrepresentations in defendants' prior removal notices, Jericho asks that a decision on its remand motion be deferred until Jericho can conduct discovery with respect to various facts asserted in defendants' papers bearing on the diversity issue. There is ample precedent for following such a course. See Center for Radio Information, Inc. v. Herbst, 876 F.Supp. 523, 524 (S.D.N.Y. 1995), where this Court observed that before ruling on a remand motion it had held a

7

hearing "after permitting the parties to engage in discovery" on jurisdictional issues, "[b]ecause the factual issues pertaining to defendants' citizenship were very much in dispute ...." The Court in Herbst made reference to Navedo v. Pathmark, 1986 U.S. Dist. Lexis 16298 (S.D.N.Y., December 18, 2006), where the court granted plaintiff's request for discovery on the issue of defendants' principal place of business after the case was removed from State court. Discovery was also allowed before a remand motion was decided in Matter of Staying the Arbitration and Vacating a Notice of Intention to Arbitrate Between Armen Digital Graphics, Ltd. and Amalgamated Lithographers of America, Local One, 1997 U.S. Dist. Lexis 11938 (S.D.N.Y., August 8, 1997), at *6.

      Jericho should be granted the right to discovery here for several reasons. First, in this action the Supreme Court found fraud by Midtown on both state courts as well as upon Jericho. See ¶5 of Herbert Rubin's moving affidavit on this motion, and Exhibit E thereto. This finding, together with Midtown's initial failure to properly identify its own general partners, provides substantial reason to question the accuracy of all its new jurisdictional facts and purported supporting documents. In addition, while defendants submit various documents to substantiate certain of the facts alleged by defendants, they do not submit such support for other alleged facts. Among the claimed facts which are not documented and are supported only by declarations from relatives or business associates of defendants are the following:

      a)    The principal place of business of Consolidated Rail Corporation, Midtown's only limited partner, is in Philadelphia.

      b)    The general partner of Hadrian Properties, Ltd., one of the partners in Jerrart Venture, a Midtown general partner, is Hadrian Properties LLC.

c)       Arthur Imperatore, a New Jersey resident, is the sole member of Hadrian Properties LLC.

d)       The principal place of business of Fafner Enterprises, Inc., another general partner of Hadrian Properties, Ltd., is in Edgewater, New Jersey.

e)       Hadrian Properties LLC and Fafner Enterprises, Inc. are the only partners in Jerrart Venture (despite the fact that Exhibit B to the declaration of Arthur Imperatore, Sr. was signed in November, 1992 by Armand Pohan as a general partner of Hadrian Properties, Ltd.).

f)       The only partners in R-Win Venture, allegedly a limited partner in Midtown's general partner WR West Side Associates, other than Edward Ross, are Renee Ross, Ilene Ross, Nancy Ross Agostini, and William Ross.

g)       The sole trustee of the Jerrold Wexler Revocable Trust dated January 29, 1992, allegedly a limited partner in WR West Side Associates, is Susan Wexler Mazzoni.

h)       The sole trustee of The Susan Wexler Trust Number 18, allegedly a limited partner in WR West Side Associates, is Dr. Gregory Ciakajlo.

i)       The sole members of Javid LLP, supposedly a limited partner in WR West Side Associates, are David Kipness and Jeffrey Wolfson.

Discovery is particularly necessary regarding defendants' allegation that Tanya Wexler, who asserts in her declaration that she was the sole beneficiary of Tanya Wexler Trust No. 18 and was assigned the interests of that Trust when it terminated in 1997. Defendants assert that among those interests was a limited partnership interest in WR West Side Associates, a partner in Midtown's partner Jerrart Venture. Tanya Wexler is admittedly a citizen of New York. Defendants contend, however, that her citizenship need not be considered for diversity purposes because while she has been treated as a limited partner in WR West Side Associates

9

"for all purposes, including for purposes of tax reporting," she has never been formally

substituted as a limited partner in the WR West Side partnership.

      In support of this contention, defendants point to <u>United National Insurance Co v.</u>

<u>Waterfront N.Y. Realty Corp.</u> 907 F.Supp. 663, 669-71 (S.D.N.Y. 1995), a case drawing a

distinction between the acquisition of an interest in a limited partnership and actually being made

a limited partner. The court in that case ruled, on the facts before it, that the citizenship of the

transferee of such an interest did not matter for diversity purposes. Defendants also point to

paragraphs 9(h) and 9(j)(iii) of the WR West Side Associates partnership agreement (Exhibit A

to the Declaration of Edward Ross). Paragraph 9(h) reads as follows:

>     (h)    Upon the death or legal incompetency of an
> individual Limited Partner, or upon the bankruptcy, dissolution or
> cessation to exist as a legal entity of a Limited Partner not an
> individual, the legally authorized representative shall succeed to all
> of the rights granted by this Agreement to such Limited Partner.

Paragraph 9(h) of the agreement must be read in conjunction with paragraph 9(f):

>     (f)    Each Limited Partner agrees that he shall not,
> directly or indirectly, hypothecate, pledge, grant a security interest
> in, transfer or assign his Interest in the Partnership, except as
> provided in Section 9(h) and (i).

Paragraph 9(i) provides that "[e]xcept as hereinafter provided," no partner may

transfer his interest in the partnership other than by bona fide sale, and sets forth the conditions

to be met if there is to be such a sale. Paragraph 9(j) of the agreement provides that "[s]ection

9(i) shall not be applicable to any of the following ...." "The following" includes paragraph

9(j)(iii), the second paragraph of the agreement cited by defendants, which reads in pertinent

part:

>     (iii)    a transfer resulting from the dissolution and
> liquidation or partial liquidation of a trust, corporation or
> partnership (limited or general) that is a Partner, pursuant to which

10

the entire Interest of the Partner is distributed to its beneficiaries, shareholders or partners, as the case may be; in the event such Partner's Interest passes as aforesaid, the recipients of such Interest shall be and become substitute Limited Partners upon execution of a counterpart or Amendment to this Agreement.

If Tanya Wexler's New York citizenship is taken into account, the granting of Jericho's remand motion will be mandated. Defendants' argument that her citizenship can be ignored is based on their claim that no "counterpart or Amendment" to the agreement making Tanya Wexler a substitute limited partner was executed. Discovery is necessary on this issue with respect to the following:

a) Construction of the agreement. Paragraph 9(h) provides that upon dissolution or cessation to exist as a legal entity of a Limited Partner (in this case, supposedly the Tanya Wexler Trust Number 18), "the legally authorized representative shall succeed to all other rights granted by this agreement to such Limited Partner." However Paragraph 9(i) makes reference to provisions "hereinafter," i.e. following paragraph 9(h), concerning transfers of partnership interest other than by sale, including paragraph 9(j)(iii) on which defendants rely. Paragraph 9(h), which precedes paragraph 9(i), can thus be construed as providing an independent basis for transfer of rights granted to a limited partner, including the right to be a limited partner. There is, at least, ambiguity on this issue.

b) The transactions by which the Tanya Wexler trust No. 18 was dissolved and Tanya Wexler acquired her limited partnership interest. The applicability of the contractual language to the transactions at issue can only be determined if the details of the transactions are known.

c) The details as to Tanya Wexler's treatment "as a limited partner ... for all purposes, including for purposes of tax reporting." The breadth of this phrase can constitute a

11

waiver of the requirements of paragraph 9(j)(iii), assuming, arguendo, their applicability in this case. For example, if tax related forms under penalty of perjury or other criminal sanction, were generated by the partnership indicating that Tanya Wexler was a limited partner, this fact would evidence an affirmative relinquishment, or relinquishment by operation of law, of any right to require an amendment to the agreement to give Ms. Wexler the status of a partner.

**III**

**THE COURT SHOULD IN ANY EVENT
ABSTAIN FROM ADJUDICATING THIS CASE**

**A.     There Is Indisputably A Contemporaneous Case
In The New York State Courts, As Required
By The Colorado River Abstention Doctrine**

As is set forth in Jericho's moving memorandum of law, the Colorado River abstention doctrine can be applied "where a concurrent state proceeding is pending …." Wiggin & Co. v. Ampton Investments, Inc., 66 F. Supp. 2d 549, 541 (S.D.N.Y. 1999). It is indisputable that there is a state proceeding pending in New York concurrent with this one. As is explained in the moving affidavit of Herbert Rubin, in February, 2007, Justice Ramos of the Supreme Court, New York County vacated the judgment dismissing Jericho's prior action against defendant Midtown based on defendants' fraud in the same transaction which forms the basis for the present case. Midtown's appeal of Justice Ramos' decision is scheduled to be heard during the June, 2007 term of the Appellate Division, First Department. In addition, a motion to clarify Justice Ramos' February, 2007 decision is currently *sub judice* before Justice Ramos.

Given the unquestionable fact of the pendency of a concurrent state court action, defendants seize on language from Justice Ramos' decision finding that Midtown had committed fraud by making repeated assertions that there is no "complaint pending" in the state courts. See

12

pp. 17, 18, 20 and 21 of defendants' memorandum.  Defendants' choice of this language only

reinforces the conclusion that there is a pending state action meeting the Colorado River

standard.  The essence of the Colorado River standard is that decisions in the two separate

actions may be in conflict which would create not only an unseemly but a severe embarrassment

to the judicial process.  The conflicts could result not only in direct conflict but conflict by

reason, for example, of the collateral estoppel effect of the one case on the other.

**B.      Remand Of This Case, Rather**
**          Than Dismissal, Is Sought**

          In arguing against abstention, Midtown relies on the following language from the

Supreme Court's Colorado River Decision, 424 U.S. at 818-819: "the circumstances permitting

the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of

wise judicial administration are considerably more limited than the circumstances appropriate for

abstention .... Only the clearest of justifications will warrant dismissal ...." See p. 16 of

defendants' memorandum.  In asserting, based upon the foregoing quotations, that Jericho's

burden here is greater than in abstention cases where dismissal is not sought, defendants' ignore

the fact that remand, rather than dismissal, is the relief sought by Jericho.  Thus the authorities

regarding the more drastic relief of dismissal are simply not in point.

**C.      The Colorado River Factors**
**          Weigh In Favor Of Abstention**

          As Jericho explained in its prior memorandum, a substantial preponderance of the

six Colorado River factors indicate that this court should abstain from hearing this case and

remand it to the state court.

13

## 1. **Avoidance of Piecemeal Litigation**

As previously stated, the potential for inconsistent and mutually contradictory assertions, and the existence of duplicative litigation, are to be considered in applying the "piecemeal litigation" factor of the Colorado River test. See pp. 10-11 of Jericho's moving memorandum. Jericho pointed out that, because the conduct which Justice Ramos found to constitute fraud warranting vacatur of the judgment against Jericho is the same conduct alleged by Jericho to have misled it into deciding not to purchase real estate which is the subject of this litigation, there is the potential for an inconsistency between a decision of the Appellate Division affirming the finding, already made by Justice Ramos, that Midtown defrauded Jericho and the courts, and a contrary determination in this action. Such inconsistent rulings might generate additional wasteful litigation as to matters of collateral estoppel and res judicata, and, since the individual defendants here are not parties to the state court action, would also create a risk of inconsistent outcomes not preventable by these doctrines. In addition, if the Appellate Division affirms the vacatur of the judgment, logic dictates that it will also vacate its dismissal of the complaint in the Original Action. In such event, simultaneous litigation in two forums would result, which would be avoided by abstention.

In response, defendants resort to their argument that there is "no complaint pending" in the state courts. This assertion obviously does not address the real piecemeal litigation concerns raised by Jericho. Defendants then illogically dispute the proposition that if the Appellate Division affirms Justice Ramos' vacatur of the state court judgment, it would reverse the dismissal of the state court complaint. The judgment and dismissal of the complaint are obviously inextricably intertwined. Thus if the vacatur of the judgment based on fraud is upheld, allowing the dismissal of the complaint to stand would be an absurdity. Finally,

14

defendants ignore altogether the possibility that trial of the fraud claims here would lead to a result inconsistent with Justice Ramos' findings of fraud, if upheld. Accordingly, Jericho's showing with respect to the piecemeal litigation factor has not been refuted.

### 2. Issues of State Law

The absence of Federal law weighs "slightly in favor of abstention" where, as here, the state law issues are neither novel or complex. Mouchantaf v. International Modeling and Talent Assoc., 368 F.Supp 2d 303, 308 (S.D.N.Y. 2005) Defendants' assertion, at p. 23 of their memorandum, that the presence of state law issues which are neither novel or complex "weighs heavily against abstention" (emphasis added), is unsupported by any authority and simply wrong. The language quoted by defendants from Prosperity Realty, Inc. v. Haco-Canon, 724 F.Supp. 254, 257, i.e., that non-novel and non-complex state law issues "do not militate strongly against the exercise of federal jurisdiction"(emphasis added) – is completely consistent with the rule that such state law issues militate slightly in favor of abstention. The court in Carruthers v. Flamm, 388 F. Supp. 2d 360, 377 (S.D.N.Y. 2005), also cited by defendants, enunciated the same rule as the Mouchantaf court, supra, in stating that because the state law issues before it were neither complex nor novel, the absence of federal claims "weighs only slightly in favor of abstention." The absence of federal law here thus supports Jericho's abstention motion.

### 3. Protection of Rights of The Party Choosing the Federal Forum

As shown at page 12 of Jericho's moving memorandum, if the rights of the party choosing the federal forum (typically plaintiff, here defendants) will be adequately protected in the state court, this factor favors abstention. Defendants' choice of a heading for their argument on this factor - - "Midtown's Rights Will Be Protected In This Court" (Opp. Mem. p.24) - - thus

makes no sense. In asserting that the "adequacy of the state Forum does not weigh <u>heavily</u> in favor of dismissal pursuant to <u>Colorado River</u>," Id., (quoting from <u>In re Asbestos Litigation</u>, 963 F.Supp. 247, 253 (S.D.N.Y. 1997)) (emphasis added), defendants acknowledge that this factor favors abstention in this case. (Defendants also ignore, again, that remand rather than dismissal is sought here.) Defendants' suggestion that as purported non-residents they might actually be treated unfairly by the New York court cannot be taken seriously.

### 4. The Order In Which Jurisdiction Was Obtained

Since the litigation now pending in the New York courts was begun in 2004, and extended proceedings therein with which Justice Ramos is fully familiar have been held, this factor favors abstention. See pp. 11 and 12 of Jericho's moving memorandum. Defendants avoid the facts again by contending that there is only one "pending complaint." Defendants further argue that "in the removal context, the state court necessarily is the first to obtain jurisdiction, but that does not mean a federal court should abstain from deciding every case that is removed to it." This *reductio ad absurdum* contention is based on a patently false premise. Where two actions are pending (a precondition to <u>Colorado River</u> abstention), the state court is <u>not</u> necessarily the first to obtain jurisdiction "in the removal context." It is perfectly possible to remove a state court action commenced <u>after</u> a parallel federal action, in which case the order of commencement factor would weigh against abstention. The opposite is true here.

### 5. Jurisdiction Over A Res

Defendants are wrong again in arguing that a notice of pendency such as that filed by Jericho does not create a case where the "assumption of Jurisdiction over a res" factor may be applied. See <u>Roeder v. Rogers</u>, 206 F.Supp.2d 406, 415 (W.D.N.Y. 2002, where the court found that a state court action to quiet title and for trespass, in which plaintiff has filed a notice of

16

pendency, "<u>does</u> involve a res over which the state court has assumed jurisdiction ...." (emphasis added). There is no doubt, therefore, that there is a res over which the state court has assumed jurisdiction. No reason has been adduced to justify divestment of jurisdiction over that res.

### 6. <u>Inconvenience of Forum</u>

Jericho and defendants both acknowledge that this is a neutral factor in this case.

In sum, contrary to defendants' contentions, the relevant factors here <u>do</u> weigh in favor of abstention.

### D.    **Defendants' Effort At Forum Shopping**<br>**Also Weighs In Favor Of Abstention**

In removing this case, defendants were obviously attempting to escape from Justice Ramos, who found that Midtown had committed fraud. In <u>Great South Bay Medical Care, P.C. v. Allstate Insurance Co.</u>, 204 F.S.2d 492, 499 (E.D.N.Y. 2002), the court, noting that "forum shopping is not to be encouraged," made the following statement:

> It is arguable that the filing of this lawsuit ... for the specific purpose of taking advantage of a favorable federal interpretation of state law, rather than being subject to a possibly disadvantageous state court interpretation, counsels against the exercise of jurisdiction. See <u>Telesco v. Telesco Fuel and Masons' Materials, Inc.</u>, 765 F.2d 356, 363 (2d Cir. 1985) ("reactive" nature of federal litigation may properly influence abstention decision) (quoting <u>Moses H. Cone</u>, 460 U.S. at 17 n.20).

Defendants' invocation of federal jurisdiction here is plainly "reactive," and supports abstention by this court.

## CONCLUSION

Defendants' application to file a Second Amended Notice of Removal should be denied, and Jericho's motion to remand based on the falsity of the prior removal notices should be granted.  If such relief is not afforded, Jericho should be permitted to conduct discovery with respect to defendants' alleged jurisdictional facts.  Remand is in any event proper based in the Colorado River abstention doctrine.

Dated: New York, New York
       April 20, 2007

Respectfully submitted,

HERZFELD & RUBIN, P.C.


By:  /s/ Herbert Rubin
     Herbert Rubin (HR 8484)
     Attorneys for Plaintiff
     40 Wall Street
     New York, New York 10005
     (212) 471-8500

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
JERICHO GROUP, LTD.,                          :        No. 07-CV-1792 (RCC) (DCF)
                                              :
                    Plaintiff,                :        ECF CASE
                                              :
   - against –                                :
                                              :
MIDTOWN DEVELOPMENT, L.P.,                     :
EDWARD IMPERATORE and                          :
MAURICE STONE,                                 :
                                              :
                    Defendants.                :
--------------------------------------------------X

### CERTIFICATE OF SERVICE

On April 20, 2007, PLAINTIFF'S REPLY MEMORANDUM OF LAW IN

SUPPORT OF ITS MOTION TO REMAND, were served on the following counsel for

defendants through the Court's CM/ECF system:

> JONES DAY
> 222 East 41st Street
> New York, New York 10017
>
> PHILLIPS NIZER LLP
> 666 Fifth Avenue
> New York, New York 10103

Dated: New York, New York
       April 20, 2007

                                        /s/  Charles A. Crum
                                        Charles A. Crum (CC9919)