UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
                                                            x

JERICHO GROUP, LTD.,

      Plaintiff,

   -against-                               07 Civ. 1792 (CM)(DCF)

MIDTOWN DEVELOPMENT, L.P., EDWARD
IMPERATORE and MAURICE STONE,

      Defendants.

                                                            x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/08

ORDER REOPENING CASE, DENYING MOTION FOR
AN AWARD OF ATTORNEYS' FEES AGAINST
DEFENDANTS AND CLOSING CASE AGAIN

McMahon, J.:

     This case – part of the long-runnning saga of litigation among these parties over certain developable real estate parcels in Manhattan – was remanded to the New York State Supreme Court some five months ago.

     The original Notice of Removal indicated that there was complete diversity, in that, inter alia, none of the general or limited partners of Midtown Development, L.P., was a resident of New York.

     After plaintiff moved to remand, defendants filed papers in opposition, which revealed that Midtown had a significantly more complicated ownership structure. One of its limited partners was arguably a citizen of New York. Defendants nonetheless urged that the case should remain in this court . They argued that the New York resident, Tanya Wexler – who had succeeded to a limited partnership interest in WR West Side Associates, one of the partners of Midtown's real general partner (Jerrart Venture) – was not actually a limited partner of WR West Side, because that entity's partnership agreement had never been amended to substitute her name for the original limited partner, the Tanya Wexler Trust. The Trust had been dissolved once Ms. Wexler attained a certain age and Ms. Wexler came into its assets – one of which was the partnership interest in WR Associates. As Ms. Wexler's Trust dissolved in 1997, and she had been treated as a limited partner for a decade, I disagreed with defendants' hyper-technical argument, concluded that Ms. Wexler's residency in New York destroyed diversity, and remanded the case.

Since that time, as I understand it, the Appellate Division: First Department has for the second time reversed an order of the New York State Supreme Court (Ramos, J.) and entered judgment in favor of defendants in a companion case, dismissing each and every one of Jericho's substantive claims. One or more of those claims are, if memory serves, identical to one or more of the claims asserted in this lawsuit.

Some 81 days after the order remanding the case was signed on January 17, 2008 – and shortly after the Appellate Division's decision came down – this court received from plaintiff (represented by new counsel) a motion seeking leave to reopen this case for the sole purpose of obtaining sanctions, in the form of $50,000 in attorneys' fees for the work done in getting the case remanded. The moving and reply papers submitted on behalf of plaintiff are couched in a tone that no lawyer ought to use when proffering arguments to a court (describing an opponent's position as "pathetic" is one example of what I mean). The papers also contain errors that are incomprehensible coming from a person with the educational attainments of an attorney (belittling an argument propounded by plaintiff's counsel with the anti-French exclamation "What Gaul!").

I am reopening the case so that I can deny the application for attorneys' fees.

Plaintiff seeks the fee award under three theories, which I will discuss seriatim.

### (1) 28 U.S.C. § 1447(c)

28 U.S.C. § 1447 (c) provides, in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." This court was well aware of this sentence when it signed the order remanding the case; it should not have gone unnoticed that I did not make provision for any costs or attorneys' fees in that order.

However, it is well settled that costs and attorneys' fees pursuant to § 1447(c) can be awarded after entry of a remand order. Bryant v. Britt, 420 F.3d 161 (2d Cir. 2001). The question that naturally arises is: How long after?

The Second Circuit has expressly declined to address that question, Bryant, *supra*, 420 F.3d at 165 n.4. However, most courts that have considered the question treat a remand order as the equivalent of a final judgment – because it terminates the case in the district court – and have ruled that Fed. R. Civ. P. 54(d)(2)(B) sets the outer limit for applying for an award of attorneys' fees. Under Rule 54(d), a litigant has fourteen days after the "entry of judgment" to make a motion for attorneys' fees, "unless otherwise provided by statute or order of the court." Decisions from the only two Circuit Courts of Appeal to consider the matter impose a fourteen day limit on post-remand applications for attorneys' fees. Mints v. Educ. Testing Serv., 99 F.3d 1253, 1259 (3d Cir. 1996); Stallworth v. Greater Cleveland Reg'l Transit Auth., 105 F.3d 252, 257 (6th Cir. 1997). So do most of the district court decisions addressing the issue. Danner v. Tower Acquisition, LLC, 2007 WL 1521201, at *1 n.1 (M.D. Pa. May 22, 2007); Great Am. Leasing Corp. v. Rohr-Tippe Motors, Inc., 387 F. Supp. 2d 992, 999 (N.D. Iowa 2005); Husko v. Geary

Elec., Inc., 316 F. Supp. 2d 664, 668-69 (N.D. Ill. 2004); Watson v.Charleston Hous. Auth., 83 F. Supp. 2d 709, 710 (S.D. W. Va. 2000); Toledo Police Patrolmen's Ass'n v. City of Toledo, 167 F. Supp. 2d 975, 977 (N.D. Ohio 2001). In fact, plaintiff did not cite the court to a single case supporting its position that it could return to federal court whenever it chose to seek attorneys' fees following remand (although there is one such case, not binding on this court, to which *defendants'counsel* appropriately called the court's attention: Sinclair v. City of Rochester, 2007 WL 3047096, at *3 (W.D.N.Y. Oct. 18, 2007)). The one case plaintiff did cite – Toledo Police Patrolmen's Ass'n , *supra* – contains a clear and concise summary of why the fourteen day rule should apply to litigants in plaintiff's position: "Allowing a state court litigant to return to federal court whenever he may feel like doing so for the sole purpose of raising a fee claim multiplies litigation."

I could not agree more. While an argument can be made that a remand order ought not be treated as the equivalent of a judgment for purposes of Rule 54(b)'s fourteen day rule,[1] the effect of *not* applying the rule is to subject a case to being reopened at any time – even years later – in order to press for an award of attorneys' fees. The longer it takes to apply for such an award, the greater the danger that the plaintiff's purpose in making the application is not entirely savory.

I thus conclude that plaintiff's application is untimely.

However, it also lacks merit.

### (2) 28 U.S.C. § 1927

This section of the Judicial Code provides, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 sanctions are awarded against attorneys, not against parties.

The first issue to be addressed is whether an award of attorneys' fees incurred in connection with a remand can be made pursuant to § 1927, when another section of the Judicial Code, § 1447(c), makes specific provision for an award of attorneys' fees upon remand of a wrongfully removed case. Whatever the answer to that question may be (and I need not answer

---

[1] As the Second Circuit noted in Bryant, 420 F.3d at 165 n.4, the word "judgment" as used in the Federal Rules "includes a decree and any order from which an appeal lies." No appeal lies from an order remanding the case. 28 U.S.C. § 1447(d). However, as the Third Circuit recognized in Mints, the better argument is that a remand order is the equivalent of a decree, because both a decree and a remand order are final orders, which terminate a case. The phrase "any order from which an appeal lies" obviously refers to the relatively small category of interlocutory orders that can be appealed. If there is a 14 day limit on seeking an award of attorneys' fees after entry of an order that, while appealable, is non-final, there certainly ought to be a 14 day limit on the right to seek such an award after entry of an order that is so utterly and completely final as to be non-appealable.

it), one thing seems clear: when counsel's allegedly "unreasonable and vexatious" conduct consists of wrongful removal, the standard against which an application for § 1927 attorneys' fees must be judged can be no different than the one that applies specifically to removal cases. That standard was announced by the United States Supreme Court in <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132 (2005), where the Court said: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) *only* where the removing party lacked an objectively reasonable basis for removal." <u>Id.</u> at 141 (emphasis added).

<u>Martin</u>'s objective standard echoes the law in this Circuit concerning attorneys' fees in cases remanded to state court; the Second Circuit held long ago that, "[A]wards of costs and attorneys fees are not to be predicated under the new section 1447(c) on bad faith removal," <u>Morgan Guar. Trust Co. v. Republic of Palau</u>, 971 F.2d 917, 923 (2d Cir. 1992).

It would thus be impossible to conclude that defendants' attorneys had multiplied the proceedings in a removed case "unreasonably and vexatiously" under § 1927 unless the record showed that they lacked an objective basis for removal.[2]

On the present record, I cannot conclude that the Jones Day firm, and specifically Attorney Geremia (who, as plaintiff concedes, authored the Removal Petition – *see* Rimberg Reply Decl. at ¶ 5), lacked an objectively reasonable basis to file the notice of removal. Mr. Geremia represents to the Court that, when he prepared the Notice of Removal, the only partnership document in his possession – the first amendment to the limited partnership agreement – showed that Midtown had two general partners and one limited partner, none of whom was a citizen of New York. (Geremia Decl. ¶¶ 5, 7-8.) Mr. Geremia also declares, under penalty of perjury, that the second amendment to the partnership agreement, which showed an entirely different ownership structure, was not among the documents that defendant Midtown sent to Jones Day.

I credit Mr. Geremia's declaration on these points. Indeed, from the tenor of the papers that were filed in response to the remand motion, it is obvious that Mr. Geremia was quite distressed when he learned, after he removed the case, that a further amendment to Midtown's partnership agreement had radically altered the partnership's ownership structure. But what he learned after removal is of no moment. Considering only the documents he had in his possession at the time he prepared the Notice of Removal, Attorney Geremia had an objectively reasonable basis for removing the action. I thus cannot conclude that the filing of the Notice of Removal multiplied the litigation unreasonably and vexatiously, or that Mr. Gemeria knowingly made a

---

[2] I have no reason to decide whether there is any substantive difference between the "objectively reasonable" standard announced in <u>Martin</u> and the "entirely meritless" standard applied in this Circuit to arguments that are the subject of fee awards under § 1927, *see* <u>Revson v. Cinque & Cinque</u>, 221 F.3d 71, 79 (2d Cir. 2000). If there is any difference, "objectively reasonable" appears to be a higher standard than "entirely meritless." If that is so, the court's finding on the <u>Martin</u> question necessarily means that the argument propounded by counsel here was not "entirely meritless."

false statement to this court.[3]

I also find that Attorney Geremia had an objectively reasonable basis for arguing, once he learned of the true state of affairs, that Tanya Wexler's succession to the rights of a limited partner of Midtown did not destroy diversity. I did not find the argument particularly persuasive – especially given the length of time that Ms. Wexler had been treated as a limited partner by WR West Side – but that does not mean Mr. Geremia had no objective basis to assert it.

As for the law firm of Phillips Nizer, who are also counsel of record for defendants and responsible for all litigation decisions, nothing in the opposition to the instant motion addresses its situation. I am sure the omission was not accidental. Frankly, I doubt very much that defendant Edward Imperatore was unaware, when the Notice of Removal was filed by Jones Day, that Midtown's ownership structure had changed back in 1987. And if Mr. Imperatore was aware of the real ownership structure, Jones Day was aware of it, because Mr. Imperatore is (according to the firm's web site) the managing partner of Phillips Nizer's New Jersey office. A partnership is charged with the knowledge of all of its partners.

However, even assuming Phillips Nizer (through Edward Imperatore) possessed the true jurisdictional facts at the time the erroneous Notice of Removal was filed, I cannot assess attorneys' fees against them under § 1927. For even if the truth had been revealed at the outset, there was still an objectively reasonable (if ultimately unpersuasive) argument in favor of finding that Tanya Wexler's coming of age did not destroy complete diversity.

Of course, <u>Martin</u> does allow an award of attorneys' fees in connection with a remand when "unusual circumstances" make it appropriate to ignore the objective reasonableness standard. There are indeed unusual circumstances in this case (defined loosely to include the totality of the litigation among these parties), but all of them suggest that it is plaintiff that has unreasonably and vexatiously multiplied litigation – by commencing this lawsuit, for one thing, and by wasting my time with this motion, for another. So in an exercise of my discretion, there is no way that I would award attorneys' fees to Jericho under § 1927.

### (3) New York State Judiciary Law § 487

The New York State Judiciary Law provides that an attorney who (1) is guilty of any deceit or collusion, with intent to deceive the court or any party, or who (2) willfully delays his client's suit with a view to his own gain, commits a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he "forfeits to the party injured treble damages, to be recovered in a civil action." Plaintiff asks that this court award three time the attorneys' fees it incurred in obtaining remand of the wrongly removed action.

---

[3] The fact that defendant Edward Imperatore testified, at a deposition attended by Attorney Geremia, about the entities that had an ownership interest in Midtown under the second amendment proves nothing. I credit Mr. Geremia's statement that, at the time he prepared the Notice of Removal, he did not know of the existence of the second amendment to the limited partnership agreement.

This court has no jurisdiction to grant the requested relief.

Judiciary Law § 487 is not a vehicle for awarding sanctions, either in this court or in the New York State courts. It is principally a *criminal* statute. It goes without saying that this court has no jurisdiction to punish counsel for defendants for a violation of New York State law.

Moreover, § 487 provides that the treble damages attorneys' fees are "forfeited" and may only be awarded in "a civil action." While a criminal conviction is not a necessary predicate to the commencement of a civil action, <u>Schindler v. Issel & Schrage, P.C.,</u> 262 A.D.2d 226 (1st Dep't 1999), such an action would have to be brought against the violator of § 487 – the attorney – not against the attorney's clients. I would have no jurisdiction over such an action, were one to be brought, because (i) there is no federal question involved and (ii) there is not complete diversity of citizenship between plaintiff and the persons who would have to be named as defendants in that civil action – the two law firms, both of which have many partners who are citizens of New York.

Finally, I cannot take cognizance of plaintiff's civil forfeiture claim under any principle of supplemental jurisdiction, as plaintiff suggests I do, for two reasons.

First, supplemental jurisdiction in a diversity case (as this case ostensibly was) can be exercised only, "In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title . . . ." 28 U.S.C. § 1367(b). As plaintiff successfully argued, this court did not have original jurisdiction over this action. Ergo, I cannot exercise supplemental jurisdiction in this action.

Second, assuming (contrary to fact position) that I did have original jurisdiction over the instant lawsuit, the form of supplemental jurisdiction I would have to exercise is so-called "pendent party" jurisdiction, since the two law firms would need to be added as parties in order to assert a claim against them under Judiciary Law § 487. Pendent party supplemental jurisdiction does not exist in diversity cases ". . . against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332 [i.e., when there is no diversity]." Since, as noted above, the law firms are not completely diverse from plaintiff, they could not be added as pendent parties in a diversity case.

I fault defendants and their counsel for their negligence is not knowing who Midtown's partners were at the time they removed this case, but the costs they have incurred in responding to this motion is more than sufficient punishment.

If, having reopened this matter, I were going to sanction anyone for unreasonably and vexatiously multiplying this litigation – not to mention litigation generally – it would be plaintiff. As my law clerks have better things to do, I have wasted an entire precious working day wading through three briefs, multiple affidavits, and six inches of exhibits submitted by hystrionic attorneys on behalf of an overly litigious client in order to dispose of this motion. However, I do not wish to waste the additional time it would take to make a record and findings about plaintiff's

purpose in filing the instant motion, which would be necessary to overcome the Second Circuit's aversion to sanctions under 28 U.S.C. § 1927. *See, e.g.*, <u>Revson v. Cinque & Cinque, P.C.</u>, 221 F.3d 71, 79 (2d Cir. 2000) (in order to impose sanctions, district court must "find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."). I will, therefore, refrain from sanctioning either side. I warn the parties that anyone who files another piece of paper with this court in this action WILL be sanctioned, and severely.

        The Clerk of the Court is directed to close this file again – forever.

Dated: May 22, 2008

_____
                                                        U.S.D.J.


BY ECF TO ALL COUNSEL